# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Federal Trade Commission, et al. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:20-cv-01113-GJP |
| v. | : | |
| | : | |
| Thomas Jefferson University, et al. | : | |
| | : | |
| Defendant. | : | |
| | : | |

## NONPARTY SHANNONDELL, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO QUASH AND/OR MODIFY SUBPOENAS

AND NOW, comes Shannondell, Inc. ("Shannondell"), a Pennsylvania corporation and a nonparty to the above-styled action, by and through their attorneys, Latsha Davis & Marshall, P.C. and files this Memorandum of Law in Support of its Motion to Quash and/or Modify the subpoenas issued by Plaintiff, Federal Trade Commission ("Plaintiff") and Defendant, Albert Einstein Healthcare Network ("Defendant"). For the reasons set forth herein, the subpoena must be modified and quashed.

## I.     PROCEDURAL AND FACTUAL BACKGROUND

On March 30, 2020, Shannondell was served with a subpoena for documents by Defendant that command production of a broad number of documents on April 20, 2020. Plaintiff also served a "piggy-back" subpoena upon Shannondell seeking all documents produced by Shannondell in response to Defendant's subpoena.     See Exhibit "A" attached to Shannondell's Motion.

On or about February 20, 2020, Plaintiff, in conjunction with the Commonwealth of Pennsylvania, acting by and through its Office of Attorney General, petitioned this Honorable Court, pursuant to Section 13(b) of the Federal Trade Commission ("FTC Act'), 15 U.S.C

Section 53(b), and Section 16 of the Clayton Act, 15 U.S.C. Section 26, to enter a stipulated temporary restraining order and grant a preliminary injunction enjoining Defendant Thomas Jefferson University ("Jefferson") and Defendant Albert Einstein Healthcare Network ("Einstein") from consummating their proposed merger wherein Jefferson would become the sole member and Parent of Einstein.

According to the Complaint, Thomas Jefferson University and Albert Einstein Healthcare Network are two leading providers of inpatient general acute care hospital services and inpatient acute rehabilitation services in both Philadelphia County and Montgomery County, Pennsylvania. The Complaint also alleges that Jefferson and Einstein have a history of "direct" and "significant" competition with one another that has resulted in improved quality and services, lower rates, upgraded medical facilities and investment in new technologies. The proposed merger would eliminate the competition between Jefferson and Einstein including inclusion in health insurance companies' hospital network, significantly increase the Defendants' market concentration, and increase Jefferson and Einstein's bargaining leverage with commercial insurers resulting in increased reimbursement rates and higher healthcare costs for employers and patients. The merger would cause significant harm to consumers, and diminish any incentive of Jefferson and Einstein to increase service offerings and improve the quality of healthcare to the detriment of patients. See Complaint, generally, paragraphs 1-19.

Shannondell, Inc., is a Pennsylvania Corporation that operates: (a) a continuing care retirement community with approximately one thousand (1000) independent living units ("CCRC") known as "Shannondell at Valley Forge"; (b) a 184 person personal care home with a 34 person Secure Dementia Unit ("PCH") known as "The Meadows at Shannondell,"; and a 120 bed skilled nursing facility ("SNF") known as "Rehab at Shannondell" (Collectively, the CCRC,

2

PCH, and SNF are herein referred to as the Shannondell "Facilities."). In total, Shannondell serves 1400 elderly residents across its Facilities located in Montgomery County, Pennsylvania.

Shannondell is not a direct competitor of Jefferson or Einstein. Shannondell does not provide general acute care or inpatient hospital services like Jefferson or Einstein. Rather, Shannondell through its SNF admits patients and provides post-acute care and rehabilitation services, skilled nursing care services, therapy and social services. See Attestation of Dan Freed, ¶ 5. The services provided by Shannondell's SNF are not in the same competitive market as those services provided by Defendants' hospitals and their direct competitors in the Greater Philadelphia and Montgomery County area. Rather the services provided by Shannondell's SNF are complementary in nature to the services provided by Defendant. In fact, Shannondell regularly receives patients and accepts referrals of patients from Defendant's hospitals as well as other healthcare providers who provide acute care or hospital services. Attestation of Dan Freed, ¶ 5.

A. **Unreasonable Time Frame to Comply With and Undue Burden Imposed on Shannondell to Respond to the Subpoena Requests Due to Impact of the COVID-19 Crisis**

Since the outbreak of the COVID-19 crisis, Shannondell's staff has been working tirelessly to address the care needs of its residents and to test, prevent, and control the spread of COVID-19. The staff at Shannondell has been working around the clock to ensure the safety and protection of their residents. See Attestation of Dan Freed, ¶. 7.[1]

Residents in retirement communities, independent living facilities, personal care homes and in skilled nursing facilities are the most vulnerable and considered to be the highest risk of being affected by COVID-19 and of resultant severe COVID-19 outcomes due to the congregate nature and age of such elderly populations and also because those individuals may have

---

[1] A true and correct copy of the Attestation of Dan Freed is attached hereto as Exhibit "A."

underlying health conditions and/or may be more susceptible to disease and infection due to compromised immune systems. Id. ¶ 8. Further, given the high risk of spread once COVID-19 enters a CCRC, PCH, or SNF, the Centers for Disease Control and Prevention ("CDC"), the Pennsylvania Department of Health ("DOH") have issued and continued to issue evolving and dynamic standards of clinical care and guidance to facilities like Shannondell regarding infection prevention and control for patients with suspected or confirmed cases of COVID-19. Id., at ¶ 9.

In responding to this unprecedented global outbreak, Shannondell is closely following recommendations from the CDC which is frequently and rapidly changing as the virus spreads in the United States. In compliance with this ever-changing and evolving guidance, Shannondell has been working incessantly and responding immediately and exclusively to the meet the care needs and ensure the safety of its residents and to protect its residents, their families, and its staff from serious illness, complications and death associated with COVID-19. Id. ¶ 10.

### B. The Confidentiality of Shannondell's Trade Secret and Commercial Information

The Information requested in the subpoenas is highly confidential, privileged, and proprietary in nature and includes trade secrets that if disclosed to third parties would cause severe and permanent damage to Shannondell's business. More specifically, the Information requested contains highly confidential information including Shannondell's distinctive business structure, operational model, and organizational plans and strategies designed to maintain its competitive position in the marketplace as well as expand or enhance the services Shannondell already provides. Ex. A. ¶ 22. The Information requested also seeks highly confidential information including financial terms and data regarding the use and operation of Shannondell's Facilities as well as the financial and pricing information and rates that drive each Facility's competitive business model.

4

The Information sought includes confidential and proprietary information including exclusive, fact-specific terms, provisions, and rates, negotiated by Shannondell, in conjunction with its legal counsel, to participate in health care plans with commercial payors and which are part of binding contractual arrangements with those payors as well as other entities, agencies or organization(s) who were party to the specific agreements. The particular data, methods, pricing models, rates, and strategies contained in the Information are the collective result of creative and collaborative process between Shannondell, its ownership and executive personnel, and its legal counsel. The Information is uniquely designed to provide the business model or "blueprint" for the orderly operation of each facility owned and operated by Shannondell. Id. ¶¶ 27-28. The Information requested, as a whole, is treated as highly confidential, is not publicly accessible, is not readily available from other sources, and has not been disclosed to third parties. Id. ¶¶ 23-24.

In order to protect the trade secrets contained within the Information as well as the confidential and proprietary nature of the Information, the Information is not made available to the public. The Information is also not subject to access by almost all of the individual employees of Shannondell. Only management, executive officers, and members (individuals) with an ownership interest in Shannondell are in possession and have access to the Information. The Information has only been shared with our legal counsel or regulatory and governmental agencies to the extent that Information may be required for compliance and/or licensing purposes. Shannondell has also employed additional protective measures to ensure the secrecy and confidentiality of its Information and protect it from disclosure. Shannondell's employees are required to abide by applicable non-disclosure agreements, contractual confidentiality

5

requirements and company privacy requirements and expectations to maintain the confidentiality of its Information.   Id. ¶¶ 25-26.

Collectively, the Information is an organizational blueprint and competitive game plan that has been designed to attempt to ensure that each facility owned and operated by Shannondell obtains and maintains appropriate licenses to operate its Facilities in the Commonwealth of Pennsylvania.   Terms are negotiated in the agreements that not only fulfill regulatory requirements, but also allow Shannondell to gain a strategic and competitive advantage in the specific geographical area where Shannondell operates.   Shannondell has invested significant time, funds, and resources, in obtaining consulting reports, analysis, and in developing and negotiating the terms, conditions, and provisions contained in the Information documents.   As such, each type of Information sought in the subpoenas have independent economic value which comprise an overall business formula designed to attempt to ensure the success and viability of each Shannondell facility.  Id. ¶¶ 29-31.

Disclosure of the Information will likely cause Shannondell to suffer substantial competitive harm because it would reveal confidential information and trade secrets about Shannondell and each of its Facilities, including their business methods, systems, and processes, including how each facility has devised a formula or business plan to allocate resources, finances and labor to develop and manage its operations. Shannondell's competitors would have access to our uniquely negotiated terms, rates, business strategies and operational plans and be able to use the data and documents contained in the Information adversely against Shannondell and its Facilities to their disadvantage and undercut any competitive edge Shannondell and its Facilities have been able to attain in their respective relevant markets.   Id. ¶¶ 34-36.

## II.    LEGAL AUTHORITY AND ARGUMENT

Shannondell is not a party to this litigation. In light of the current COVID-19 pandemic, it should not be required to comply with the unreasonable time to respond as imposed upon it in the subpoenas nor should it be required to respond to the extensive, overly broad document requests as contained in the subpoenas which cause undue burden and expense. Shannondell should also not be required to produce its confidential research and other highly confidential business information and trade secrets to the Plaintiff and Defendant. The information sought by the subpoenas is privileged and protected from production. Disclosure of such information presents a clear danger of irreparable harm to Shannondell.

### A. Legal Standard Applicable to the Court's Inherent Authority to Quash Subpoena

A nonparty such as Shannondell may invoke the inherent power of the Court to secure protection from discovery which seeks confidential or privileged information or which would cause undue burden on the non-party.

In the case of In re Domestic Drywall Antitrust Litigation, MDL No. 2437, 300 F.R.D. 234, 238-239 (E.D. Pa. 2014), the Court detailed the appropriate process for compliance with subpoenas directed to third parties under Fed.R.Civ.P. 45. Smith v. Unilife Corp., No. CIV.A. 13-5101, 2014 WL 6676738, at *1 (E.D. Pa. Nov. 24, 2014). As noted therein, Federal Rule of Civil Procedure 45 provides the rules and corresponding protections for nonparties subject to a subpoena.

When a nonparty receives a subpoena, it may serve a written objection to producing any or all of the requested information by serving a written objection on the party or person designated in the subpoena. In re Domestic Drywall Antitrust Litig., 300 F.R.D. at 238. (E.D. Pa. 2014). After the nonparty objects, it has several options, including: file a motion to quash or

7

modify the subpoena pursuant to Rule 45(d)(3), or seek a protective order pursuant to Rule 26(c). See, e.g., Frank Brunckhorst Co. v. Ihm, No. 12-0217, 2012 WL 4963757, at *5 (E.D. Pa. Oct. 18, 2012) (citing Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1322-23 (Fed. Cir. 1990) (outlining options nonparties have when objecting to a subpoena)).

Rule 45(d)(3)(B) and (C) describe when a court should quash or modify a subpoena, unless the subpoenaing party can show a substantial need for the requested material and the court can specify conditions of production that accommodate the interests of the subpoenaed nonparty. In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 239 (E.D. Pa. 2014). Material protected under Rule 45(d)(3)(B) includes "a trade secret or other confidential research, development, or commercial information" or "an unretained expert's opinion or information that does not describe the specific occurrences in dispute and results from the expert's study that was not requested by a party."

"The serve-and-volley of the federal discovery rules govern the resolution of" a motion to quash. Mycogen Plant Sci., Inc. v. Monsanto Co., 164 F.R.D. 623, 625 (E.D.Pa.1996).

A subpoena under Rule 45 must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1). Green v. Cosby, 314 F.R.D. 164, 169 (E.D. Pa. Mar. 21, 2016); Sinclair Cattle Co. v. Ward, No. 14-CV-1144, 2015 WL 6167488, at *1 (M. D Pa. Oct. 20, 2015). First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013). Thus, as an initial matter, the subpoenaing party must first show that its requests seek discovery of matters which are nonprivileged, relevant to its claims or defenses, and proportional to the needs of the case, within the meaning of Federal Rule of Civil Procedure 26(b)(1). Mycogen, 164 F.R.D. at 625–26.

15215899v1

If the subpoena is within the general scope of discovery, then the burden shifts to the subpoenaed nonparty to establish that Rule 45(d)(3) provides a basis to quash the subpoena. DVM Mfg., LLC v. Gallagher, No. CV 16-6369, 2017 WL 3401279, at *1 (E.D. Pa. Aug. 8, 2017). The subpoenaed nonparty must show that disclosure of the information is protected under Rule 45(d)(3)(A) or (B). In re Domestic Drywall. 300 F.R.D at 239. If the subpoenaed nonparty claims the protections under Rule 45(d)(3)(B) or asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a "clearly defined and serious injury." Id. (citing City of St. Petersburg v. Total Containment, Inc., Case No. 06–cv–20953, 2008 WL 1995298, at *2 (E.D.Pa. May 5, 2008)) (undue burden under Rule 45(d)(3)(A)); In re Mushroom Direct Purchaser Antitrust Litig., Case No. 06–cv–0620, 2012 WL 298480, at *5 (E.D.Pa. Jan. 31, 2012) (disclosure of trade secrets under Rule 45(d)(3)(b)(i)). "This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order." In re Domestic Drywall, 300 F.R.D. at 239; Frank Brunckhorst Co. v. Ihm, Case No. 12–cv–0217, 2012 WL 5250399, at *4 (E.D.Pa. Oct. 23, 2012).

Courts are required to quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). To ensure compliance, the court is authorized to "impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney" responsible for issuing and serving a subpoena who fails to take reasonable steps to avoid imposing undue burden or expense. Fed. R. Civ. P. 45(d)(1).

15215899v1

If the subpoenaed nonparty demonstrates a "clearly defined and serious injury" for a claim of undue burden under Rule 45(d)(3)(A), the Court conducts a balancing test in which it weighs the subpoenaing party's interest in disclosure and the subpoenaed nonparty's interest in non-disclosure to determine whether the burden on the subpoenaed nonparty is, in fact, undue. In re Domestic Drywall, 300 F.R.D. at 239. If the subpoenaed nonparty demonstrates a "clearly defined and serious injury" for a claim of protection under Rule 45(d)(3)(B), an additional step is required. The burden shifts to the subpoenaing party to show "a substantial need for the testimony or material that cannot be otherwise met without undue hardship," Fed.R.Civ.P. 45(d)(3)(C)(i), and demonstrate "that the subpoenaed [nonparty] will be reasonably compensated," id. 45(d)(3)(C)(ii). If the subpoenaing party makes this showing of substantial need, the Court then weighs the interests in the disclosures.

This balancing test requires a Court to weigh (1) the relevance, (2) need, (3) and confidentiality of the requested materials, as well as (4) the harm that compliance would cause the subpoenaed nonparty. Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D.Del.2002) ("[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit."). A court should be "particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty." In re Domestic Drywall, citing Fears v. Wilhelmina Model Agency, Inc., Case No. 02–cv–4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004).

The inherent power of this Court and the specific provisions of Rule 45 provide ample authority for this Court to both modify the timeframe for Shannondell to respond and to quash Plaintiffs' subpoenas. As stated herein, these requests are objectionable and improper for a

10

number of reasons. Shannondell needs this Honorable Court to protect it from the undue burden imposed upon it by the unreasonable time constraints imposed by the subpoenas and the parties given the urgencies faced by Shannondell in responding to COVID-19. Shannondell also needs the Court to protect it from the damage that is certain to occur from production of the documents and disclosure of the information contained therein.

**B.  The Subpoenas Fail to Provide a Reasonable Time for Shannondell to Respond**

Setting aside, for a moment, the relevancy and confidentiality arguments addressed below, and further assuming, for the sake of argument, that Plaintiff and Defendant could show that the requested information and materials in the Subpoenas are within the permissible scope of discovery upon nonparties, the Subpoenas still impose an unreasonable time and undue burden upon Shannondell to compile the voluminous records requested by Plaintiff and Defendant in light of its needs to respond to the resultant impact of the COVID-19 pandemic upon the residents served in its Facilities.

Rule 45 provides, in relevant part, that a Court must quash or modify a subpoena that "fails to allow a reasonable time to comply" and "subject a person to undue burden." F.R.C.P. 45(d)(3)(A).

As stated in the Attestation of Dan Freed, since the outbreak of COVID-19, Shannondell's personnel has been working around the clock implementing testing, safeguards, protocols, and preventative measures, to ensure the safety and protection of its residents and employees. Due to staffing shortages caused by either illness or the needs of Shannondell's employees to care for their children at home due to state-mandated school closures, Shannondell simply does not have the time or manpower needed to address the Subpoena requests. Adding to the onerous burden placed upon Shannondell by the untimely nature of the Subpoenas, the overly

11

broad subpoenas request the compilation of records dating as far back as January 1, 2015 to the present.

Shannondell's first priority is the safety of its residents and employees in combatting, testing, preventing and controlling this deadly virus. Responding to the subpoena requests during the COVID-19 crisis subjects Shannondell to an undue burden. Without this Court's necessary intervention to either modify the timeframe to comply or quashing the subpoenas as a whole, Shannondell will be required to divert its staff from the safety care needs of its residents to prevent the spread of COVID-19 and spend an inordinate amount of time and its vital and limited resources on compiling documents. Such a diversion of crucial resources will be detrimental to the populations that have entrusted their care and safety to Shannondell. To the extent that this Court does not quash the subpoenas as whole, and requires Shannondell to respond to the subpoenas, Shannondell respectfully requests that the Court provide **at least** an additional ninety (90) days from the date of Shannondell's Motion to Quash and/or Modify to compile the documents as may be necessary to respond to the subpoenas. Given the rapidly evolving and dynamic nature of preventive measures and clinical standards required of health care facilities like Shannondell to respond and control the spread of COVID-19 as well as the unknown potential increased safety and care needs of its residents, Shannondell may even require additional time beyond the 90 days requests above to respond to the subpoenas.

### C. The Subpoenas Request Documents That Are Beyond the Permissible Scope of Discovery and Impose and Undue Burden Upon Shannondell

At the outset, the parties have not shown that the information sought in the Subpoenas meet the requisite degree of relevance and need required for nonparty discovery.

Rule 26 requires the subpoenaing party to first show that its requests seek discovery of matters which are nonprivileged, relevant to its claims or defenses, and proportional to the needs

12

of the case. F.RC.P. 26(b)(1). As this Court has previously held, it is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery. <u>Zukoski v. Philadelphia Elec. Co.</u>, No. CIV. A. 93-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994).

The relevance of information requested of Shannondell is suspect at best. This point is initially demonstrated from the averments in the Complaint in this matter. According to counsel for the FTC, facilities that provide skilled nursing services are not part of the Defendants' market of providing inpatient acute rehabilitation services. As specifically stated in the Complaint:

> 49. Other post-acute care services like subacute rehabilitation services provided at ***skilled nursing facilities* are not included in the market for inpatient acute rehabilitation services** because commercial insurers and patients cannot substitute these services for inpatient acute rehabilitation services. Subacute services are offered by a different set of competitors under different competitive conditions that inpatient acute rehabilitation services. In fact, subacute rehabilitation services are often complementary to inpatient acute rehabilitation services.

<u>See</u> Complaint, ¶ 49. Although the Subpoenas, in their overreaching fashion, attempts to include the services provided by skilled nursing facilities like Shannondell in its definition of "Acute Rehab Services" (See Subpoenas, "Definitions" Section), the FTC does not view the services provided by Shannondell as those which are in direct competition with the Defendants. Certainly Shannondell does not provide the same types of acute care hospital services provided by Defendants. In fact, if residents served by Shannondell require acute inpatient services, they are admitted to hospital providers much like the Defendants. Since the FTC avers that the services provided by Shannondell are not directly competing with, but rather are "complementary to" Defendants inpatient acute rehabilitation services," one wonders how the Subpoenas served upon Shannondell are even relevant to the claims and defenses of the parties, or even further, proportional to the needs of their respective cases. Given Plaintiff and

13

Defendant's failure to meet the higher relevancy and need burden required for nonparty discovery, the information sought is not subject to discovery and the Subpoenas must be quashed.

Rule 45(c)(3)(A)(iv) provides that the issuing court must quash a subpoena that subject a person to undue burden. If the subpoenaed non-party claims that disclosure would subject it to an undue burden under Rule 45(d) (3)(A), the Court considers several factors to determine whether the burden on the subpoenaed non-party is in fact undue, including: (1) relevance of the requested materials, (2) the party's need for the documents, (3) the breadth of the request, (4) the time period covered by the request, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the recipient's status as a non-party. Frank v. Honeywell Int'l Inc., No. 15-MC-00172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015)(citing Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc., No. 13–mc–238, 2014 WL 272088, at *4 (E.D.Pa. Jan.24, 2014). "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Avago Techs. U.S., Inc v. IPtronics Inc, 309 F.R.D. 294, 296 (E.D. Pa. 2015); Frank v. Honeywell, supra. (citations omitted). Furthermore, a "court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on a non-party." In re Domestic Drywall, 300 F.R.D. at 239 (quotation omitted); accord Frank Brunckhorst Co. v. Ihm, No. 12–mc–0217, 2012 WL 5250399, at *5 (E.D.Pa. Oct.23, 2012) ("In the case of nonparty deponents, courts recognize that '[d]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents.' "); Grider v. Keystone Health Plan Cent., Inc., No. 05–mc–40, 2005 WL 2030456, at *7 (M.D.Pa. July 28, 2005) ("[I]n cases where

14

a non-party is the subject of discovery requests, courts may impose broader restrictions, particularly where a nonparty is requested to produce documents of another non-party.").

As noted above, it is difficult to conclude, given Plaintiff's view of the "complementary" services provided by Shannondell, that any of the records requested in the subpoenas would be relevant to the claims or defenses of the parties in this antitrust litigation. Further, the subpoenaing parties have not show an actual need for the discovery they seek. It is suspected that Defendant will avail itself to the subpoena authority of this Court to obtain a veritable mountain of records from all other hospitals – its "direct" competitors – located in the Greater Philadelphia and Montgomery County areas. Given the ample evidence produced as a result, Defendant (and Plaintiff) will have ample evidence in their possession to support their defenses and claims. Since the subpoenaing parties cannot establish either relevance or need, this discovery should be denied. See Frank v. Honeywell, 2015 WL 4770965, at *5 (E.D. Pa. Aug. 13, 2015)(citing Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 532 (D.Del.2002) (citing American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 743 (Fed.Cir.1987))

In addressing the remaining factors, the subpoenas are also overly broad. As a prime example, the subpoenas require Shannondell to produce any form of "strategic" documents, over a four-year period that may discuss competition or competitors or market share. See Request No. 7. With the exception of the over-encompassing and overly broad subpoena requests in the Appendices attached to the Subpoenas, none of the requests are defined with any particularity. Instead, as an example, the subpoena, through a wide-reaching net, seeks all documents plans, presentations, reports, advertising, marketing, or other strategic documents that address competition and the services provided by Shannondell. See Requests Nos. 7-9. Shannondell, a nonparty, will be required to spend an inordinate amount of time, effort and expense to scour its

15

records, files, emails and electronic files to produce documents, as well as any underlying drafts or research materials that may be considered responsive to this and other requests. Because of the over-reaching nature of the requests, it is difficult at this time, to estimate the sheer number of man hours that would be required to respond to these requests. An examination of these facts should lend the Court to conclude that the subpoenas pose an undue burden upon Shannondell and must be quashed.

### D. The Subpoenas Seek to Obtain Shannondell's Confidential Research, Proprietary Commercial Information and Trade Secrets

The subpoenas also impose an undue burden upon Shannondell which arises from the requests which would require the disclosure of Shannondell's highly confidential and trade secret information that irreparably damage Shannondell's competitive position in the relevant geographic market.[2]

As noted in Shannondell's Objections that were served upon the subpoenaing parties, Requests Nos. 4, 5, 6, 7, 8, 10, 12, 15, 16, 18, and 19 generally and overbroadly seek privileged, confidential and proprietary information and trade secrets including business operations, plans, presentations, reports, market analysis, and strategies (collectively referred to as "Information") of Shannondell. What the subpoenas ask for is the work product that Shannondell has produced from its research and analysis of the geographic markets in which it operates. The Information sought also infringes severely upon the confidential information obtained and/or

---

[2] Although the averments in the Complaint suggest that Shannondell is not a "competitor" and also not in the same "market" as Defendant, it is presumed that Defendant will argue that the types of broadly and inaccurate defined "Acute Rehab Services" provided by Shannondell's "skilled nursing facility" place it in direct competition with some of the types of services provided by Defendants Einstein and Jefferson and also that the provision of these services place Shannondell in that same market. To the extent that those arguments are raised, and further to the extent that this Court construes that Shannondell is part of Defendant's market or deemed a direct competitor of Defendant, disclosure of the Information would result in substantial harm to Shannondell and an unfair competitive advantage to its competitors. In light of these unknown variables, and for the "further relief" that the Court's April 17, 2020 Stipulated Protective Order allows third parties to seek regarding the disclosure of Protected Information, Shannondell raises the Arguments contained in Section D.

16

developed by Shannondell to remain competitive in those markets.    Even more intrusive, the Subpoenas extend beyond Shannondell's finished work product and also seeks production of its notes and other underlying documents used by Shannondell to prepare its confidential reports and implement its plans and strategies.

Rule 45 specifically provides grounds for quashing a subpoena if it "requires disclosure of privileged or other protected matter"  or if it requires disclosing "a trade secret or other confidential research, development, or commercial information."   Rule 45(c)(3)(A)(iii); 45(c)(3)(B)(i).   What the subpoena seeks clearly falls within the categories of the types of research and confidential information that should be protected from disclosure.

The Information requested in the subpoenas constitutes types of  "information that the producing party has accumulated through its own time and effort"  and it would be unjust "to require a party to turn over the fruit of its labor in discovery without receiving adequate compensation." In re Domestic Drywall, 300 F.R.D. at 241 (E.D. Pa. 2014)(citations omitted). Nearly identical to this Court's analysis of the arguments raised by nonparty Thompson Research Group, LLC ("TRG"), the research and "analysis" of the relevant markets contained "in the reports," either internally produced by Shannondell or paid for by Shannondell through its retention of consultant or other experts, and resultant plans and strategies implemented as a result of those "reports" as part of its competitive game plan, are the types of opinions protected by Rule 45.  Moreover, disclosure of Shannondell's Information will cause a clear and serious injury to Shannondell in two ways.  First, as extensively described in the Attestation of Dan Freed, Defendants could use this information to gain an unfair competitive advantage over Shannondell which would detrimentally and seriously impact Shannondell's ability to remain competitive in the relevant marketplace.    Second, it would allow Defendants to obtain this

17

Information free of charge. The analysis contained in Shannondell's Information is "substantially similar to the market analysis Defendants will need to conduct themselves by retaining (and paying) experts. Id. at 242. Accordingly, the analysis in the reports should be entitled to protection.

In addition to the foregoing, the Information requested in the subpoenas contains confidential research, trade secrets and commercial information developed and protected from disclosure by Shannondell and which holds inherent economic value. When determining whether requested information is a trade secret or otherwise confidential information coming under the protections of Rule 45, courts consider the following relevant factors: (1) the extent to which the information is known outside of Shannondell's business; (2) the extent to which the information is known to Shannondell's other employees; (3) the precautions or measures taken by Shannondell to guard the secrecy of the information; (4) the value of the information (5) the effort or money expended to develop the information; and, (6) the ease or difficulty with which the information could be properly acquired or duplicated. Razor Tech., LLC v. Hendrickson, No. CV 18-654, 2018 WL 2063844, at *10 (E.D. Pa. May 3, 2018) quoting SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1256 (3d Cir. 1985) ).

As set forth in the Attestation of Dan Freed, Shannondell keeps and treats the information as highly confidential. The Information is not subject access by the public and is not disseminated to its employees and is not shared beyond the upper management and ownership tiers for each Facility. Shannondell has undertaken internal precautionary measure to guard the secrecy of the Information and prevent its disclosure to the public or its competitors. These measures include the use of non-disclosure agreements, confidentiality requirements, and privacy policies, procedures and expectations within each organization.

18

Shannondell has invested significant time, effort and organizational resources and expense, to develop this Information to construct a unique business formula and model in order to maintain its competitive position in the marketplace. The Information requested holds inherent economic value to Shannondell as part of an overall business model or formula uniquely designed to attempt to ensure each Facility's viability and success. The Information can only be duplicated if disclosed to Shannondell's competitors.

Disclosure of the Information sought would cause substantial harm to the competitive position of Shannondell and would allow its competitors, including the Defendants who operate within the same geographical market as Shannondell, to make affirmative use of Shannondell's Information to obtain an unfair competitive advantage against Shannondell.

In sum, Shannondell has provided substantial factual support to warrant protection of the Information as afforded under Rule 45.

Last, while Shannondell understands and has been provided with a copy of this Court's April 17, 2020 "Stipulated Protective Order" which provides protections against the <u>distribution</u> of Shannondell's highly confidential information, Shannondell returns to its initial argument contained – namely, that the Information sought by the parties is beyond the permissible scope of discovery such that Shannondell's Information is not subject to disclosure in the first instance.

Plaintiff and Defendant have not shown that the Information sought is either relevant or proportional to the needs of their cases. Moreover, the parties have not demonstrated a substantial need for the Information and have not provided for reasonable compensation to Shannondell if the Information is produced as directed in the subpoenas.

15215899v1

## III.   CONCLUSION

For the reasons set forth herein, and consistent with the inherent power of this Court to quash and/or modify subpoenas in accordance with the specific provisions of Rule 45, Shannondell respectfully request that this Honorable Court quash the subpoenas issued to Shannondell.   Alternatively, to the extent that this Court determines that the subpoenas are permissible and requires Shannondell to respond to the subpoenas, in whole or in part, Shannondell respectfully requests that it be provided an additional ninety (90) days from the date of the filing of its Motion and this supporting Memorandum of Law to respond to subpoena requests.

Respectfully submitted,

LATSHA DAVIS & MARSHALL, P.C.

Dated: April 30, 2020

*/s/ Brian A. McCall*
Kimber L. Latsha
klatsha@ldylaw.com
Attorney I.D. No. 32934
Brian A. McCall
bmccall@ldylaw.com
Attorney I.D. No. 83030
1700 Bent Creek Boulevard, Suite 140
Mechanicsburg, PA 17050
Tel:  (717) 620-2424
Fax: (717) 620-2444
Attorneys for Shannondell, Inc.

15215899v1

| | |
|---|---|
| Federal Trade Commission, et al. | : |
| | : |
| Plaintiff, | : |
| | :     Civil Action No. 2:20-cv-01113-GJP |
| v. | : |
| | : |
| Thomas Jefferson University, et al. | : |
| | : |
| Defendant. | : |
| | : |

## CERTIFICATE OF SERVICE

    I hereby certify on the date set forth below, that the foregoing document was served upon all counsel of record via the Court's CM/EMF system.

By:     */s/ Brian A. McCall*
            Brian A. McCall, Esquire
            Counsel for Shannondell, Inc.

Dated: April 30, 2020

15215899v1