IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION and
COMMONWEALTH OF PENNSYLVANIA,
*Plaintiffs,*

v.

THOMAS JEFFERSON UNIVERSITY and
ALBERT EINSTEIN HEALTHCARE
NETWORK,
*Defendants*.

Civil Action No. 20-01113

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
NONPARTY TOWER HEALTH'S MOTION FOR PROTECTIVE ORDER**

Defendants Thomas Jefferson University ("Jefferson") and Albert Einstein Healthcare

Network ("Einstein") (collectively, "Defendants"), by undersigned counsel, respectfully oppose

the Motion by Nonparty Tower Health ("Tower") for an Additional Broader Protective Order and

Notice to Maintain Highly Confidential Designation.   Tower's Motion fails to satisfy the

requirements for entry of its requested protective order.   First, Tower ignored its duty under Fed.

R. Civ. P. 26(c)(1) and Local Rule 26.1(f) to confer prior to filing, and thus didn't narrow the

issues, which  alone requires denial.   Second, Defendants and Plaintiffs (collectively, "the Parties")

negotiated and agreed to a Stipulated Protective Order that provides third parties ample protections

for their sensitive business information.   Tower has not identified any specific harms that the

Stipulated Protective Order fails to guard against, and thus has not established that "good cause"

requires the Court to grant its Motion.   Tower also prematurely seeks to prevent the Parties from

using the identity of its declarant as evidence, despite its clear relevance to the case.   Beyond the

inappropriate timing of this request, Tower ignores Third Circuit law on the public's right to access

judicial records.   Accordingly, Defendants respectfully ask the Court to deny Tower's Motion.

**BACKGROUND**

Plaintiffs filed their complaint on February 27, 2020, alleging that the merger of Jefferson and Einstein violates Section 7 of the Clayton Act because it would supposedly reduce competition in several alleged markets:  (1) the markets for inpatient general acute care hospital services in the "Northern Philadelphia Area" and "Montgomery Area"; and (2) the market for inpatient acute rehab services in the "Philadelphia Area."   Compl. ¶¶ 52-53, 56.   Defendants dispute these allegations and are engaging in discovery—including from various third parties—in an attempt to gather facts showing, among other things, that Plaintiffs' alleged product and geographic markets have been defined too narrowly and exclude numerous entities that compete, and will continue to compete, with Jefferson and Einstein following their merger.

One of those entities that competes with Jefferson and Einstein is Tower.  During their eighteen-month investigation preceding the filing of the Complaint, Plaintiffs collected extensive discovery from numerous third parties, including Tower.  Mot. at 1-2.  In Tower's case, the Plaintiffs' obtained business and strategic documents, and a declaration from a Tower employee, which were "voluntarily" submitted in support of Plaintiffs' case.  *Id*.  For their part, Defendants issued their own discovery requests to Tower, once they had the ability to do so after Plaintiffs filed this litigation, seeking additional documents and information pertinent to Tower's role as a competitor and responsive to the sworn statements made in the declaration given to Plaintiffs.

The Stipulated Protective Order that the Court entered on April 17 provides several significant protections to third parties like Tower and its declarant.  It defines two categories of protected information, *i.e.*, "Confidential Information" or "Highly Confidential Information," and shields the information designated under these categories from public disclosure, while permitting Plaintiffs, Defendants, and court personnel access to the information in order to prepare and

conduct the case.  Stipulated Protective Order at ¶ 1-2.  In particular, material designated as

Confidential Information may be viewed by the Court and its personnel, Plaintiffs, counsel to

Defendants and their consultants, document vendors, court reporters, and other similar individuals.

*Id*. ¶ 10.  However, such material may not be shared with Defendants' non-attorney employees

unless Defendants first inform the relevant third party in advance and then provide that third party

an opportunity to contest such a plan.  *Id*.  The Stipulated Protective Order also expressly states

that the identities of third parties who submitted information to Plaintiffs during their investigation

must be treated as "Confidential Information" where such treatment is requested.  *Id*. ¶ 7.

Highly Confidential Information is afforded even greater protections.  Documents and

information designated as such may only be viewed by Court personnel, Plaintiffs, Defendants'

outside counsel and related individuals like consultants and vendors, but may not be viewed by

any of Defendants' employees, including their in-house attorneys.  *Id.* ¶ 11.  In all cases, those

who have access to these materials—whether Confidential or Highly Confidential—must refrain

from using them for any purpose other than the current litigation.  *Id*. ¶ 9.

The Parties negotiated these protections in a good faith effort to balance their interest in

preparing the case with the interest of third parties to protect their sensitive business information.

In fact, in a filing last week, Plaintiffs argued to this Court that the Stipulated Protective Order

"adequately protects" third parties' designated information.  (Dkt. 64 at 7.)

Nevertheless, Tower portrays all of these protections as inadequate.  The first sentence of

its Motion seeks to designate the identity of its declarant as Highly Confidential. Mot. at 1.  Setting

aside the problem inherent in using a motion filed on a public docket as a means of communicating

such a confidentiality designation (as opposed to, for example, a confidential email to counsel for

the Parties), this attempted designation contradicts the plain language of Paragraph 7 of the

Stipulated Protective Order, which presumptively designates the identities of third parties such as Tower and its declarant as Confidential Information, as opposed to Highly Confidential.  In effect, Tower seeks entry of a *new* protective order with unprecedented protections.

For their part, Plaintiffs belatedly accede to Tower's demand that the identity of its declarant be treated as Highly Confidential.  (Dkt. 68.)  They do this despite having agreed with Defendants last month in the Stipulated Protective Order that "[t]he identity of a third party submitting such Protected Information shall also be treated as *Confidential Information* for purposes of this Order where the submitter has requested such confidential treatment."  Stipulated Protective Order at ¶ 7 (emphasis added).  Tower's declarant is precisely such a third party. Plaintiffs negotiated, accepted, signed, and submitted to the Court for entry the Stipulated Protective Order containing this language, and then as recently as last week defended it to this Court.  (Dkt. 64 at 7.)  Now, Plaintiffs argue it is "most consistent with the existing Stipulated Protective Order" for the identity of Tower's declarant to be treated as Highly Confidential Information.  But this is not at all "consistent" with Paragraph 7 of the Stipulated Protective Order. It flatly contradicts the Order's clear terms.

Tower also seeks an order preventing disclosure of the identity of its declarant from "those otherwise authorized under Paragraph 11, Subsections (d)-(i)" of the Stipulated Protective Order. Mot. at 1.  The individuals "otherwise authorized" under Paragraph 11, Subsections (d) through (i) include precisely those individuals who *must* access that information for Defendants to prepare their case, including outside counsel, consultants and experts, court reporters, and outside copy vendors.

In addition, and going beyond its use during discovery, Tower prematurely seeks entry of an order that would ensure its declarant's "name or identifying information" could not be "used,

referenced, quoted, or lodged as evidence for any purpose." Mot. at 3. Thus, Tower seeks to bar

any use of the very information it "voluntarily" submitted to Plaintiffs during their investigation.

## LEGAL STANDARD

Under Rule 26(c), a court may enter a protective order in the context of discovery "to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"

upon a showing of good cause, provided that "the movant has in good faith conferred or attempted

to confer with other affected parties in an effort to resolve the dispute without court action." Fed.

R. Civ. P. 26(c)(1). Similarly, Local Rule 26.1(f) instructs that "[n]o motion…pursuant to the

Federal Rules of Civil Procedure governing discovery… shall be made unless it contains a

certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute."

L. Civ. R. 26.1(f); *see also Mariner Health Care v. Indemnity Ins. Co. of N. Am.*, No. 04-MC-

00180, 2005 WL 44521, at *2 n.2 (E.D. Pa. Jan. 7, 2005) (finding that "the intent of Rule 26.1(f)

certainly compels its application" to a discovery dispute involving non-parties).

The party seeking the protective order has the burden of demonstrating good cause.

*Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005); *see also*, *United States ex rel Krahling v.*

*Merck & Co.*, No. 10-4374, 2016 WL 7042203, at *3 (E.D. Pa. Feb. 5, 2016). "[B]road allegations

of harm are not sufficient." *Shingara*, 420 F.3d at 306. When analyzing whether good cause exists,

courts apply a balancing test that weighs the interests of the public and the parties. *See, e.g.*, *Pansy*

*v. Borough of Stroudsburg*, 23 F.3d 772, 783-87 (3d Cir. 1994). This balancing test includes seven

non-exhaustive factors: "1) whether disclosure will violate any privacy interests; 2) whether the

information is being sought for a legitimate purpose or for an improper purpose; 3) whether

disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being

sought over information important to public health and safety; 5) whether the sharing of

information among litigants will promote fairness and efficiency; 6) whether a party benefitting

from the order of confidentiality is a public entity or official; and 7) whether the case involves

issues important to the public." *Shingara*, 420 F.3d at 306 (quoting *Glenmede Trust Co. v.*

*Thompson*, 56 F.3d 476 (3d Cir. 1995)).  Under the third *Pansy* factor, "an applicant for a protective

order whose chief concern is embarrassment must demonstrate that the embarrassment will be

particularly serious."  *Id.* at 307 (citing *Pansy*, 23 F.3d 787)).

## ARGUMENT

**I.  Tower Failed to Confer with Defendants Prior to Filing its Motion and Has Not Appropriately Narrowed the Relevant Issues.**

Tower failed to confer with Defendants prior to filing its Motion.  Multiple federal courts—

including the Eastern District of Pennsylvania—have denied motions for protective orders where

the movant failed to confer prior to filing.  *See, e.g.*, *Casey v. Unitek Global Servs., Inc.*, No. 14–

2671, 2015 WL 539623, at *6 (E.D. Pa. Feb. 9, 2015) (denying a motion for a protective order

because the parties "did not attempt to work out their differences"); *Dong-A Ilbo v. Lim*, No. 08-

2399, 2011 WL 13220703, at *1 n.1 (E.D. Pa. Oct. 25, 2011) (denying a motion for a protective

order in part because defendant "failed to make a good faith effort to resolve discovery disputes

prior to seeking the Court's intervention").

Tower's failure to confer led to a premature motion that seeks unnecessary and unjustified

relief.  Had Tower conferred with Defendants prior to filing the Motion, it could have narrowed

the issues and avoided motion practice based on a misunderstanding of the Protective Order.

For example, in its Motion, Tower specifically asks that the identity of its declarant be

deemed Highly Confidential Information, even though this contradicts the express language of the

Stipulated Protective Order.  *See* Mot. at 1; *see also* Stipulated Protective Order ¶ 7.  Tower also

seeks an additional protective order shielding the identity of its declarant from "those otherwise

authorized under Paragraph 11, Subsection (d)-(i)" of the Stipulated Protective Order, which includes: (d) outside counsel; (e) consultants and experts; (f) court reporters; (g) contractors copying documents; (h) witnesses who may have authored or accessed the info; and (i) other persons by written consent.  In a more revealing passage, Tower asks that the Court ensure that the declarant's "name or identifying information is not disclosed, disseminated, released, exchanged to or with any party in this proceeding."  Mot. at 3.

Tower's request to shield the identity of its declarant from Defendants' outside counsel and their consultants and experts is especially odd.  Here, Tower seemingly seeks to prevent outside counsel from preparing an adequate case.  Tower's efforts to shield the identity of its declarant from court reporters and outside copy vendors also makes little sense.  At best, these requests could be the result of Tower fundamentally misconstruing the terms of the Stipulated Protective Order. But this simply underscores why Tower should have conferred with Defendants prior to filing.

Related, Tower's own conduct seems to undermine its requested relief.  As recently as last week, during negotiations over Defendants' discovery requests, counsel for Tower and outside counsel for Defendant Jefferson openly discussed with one another the identity of Tower's declarant.  Counsel for Tower expressed no concerns at all about Jefferson's counsel's knowledge regarding the identity of the declarant.  Equally confounding, by filing its Motion openly and not under seal, Tower has publicly identified *itself* as a third party who submitted information to Plaintiffs during their investigation, seemingly waiving the protections afforded to that information under Paragraph 7 of the Stipulated Protective Order.  Yet Tower seeks to enhance the protections of that Paragraph with respect to the name of the individual who submitted a declaration.

The agreement between Plaintiffs and Tower to treat the identity of Tower's declarant as Highly Confidential Information, filed with the Court earlier today, further underscores Tower's

failure to confer prior to filing its Motion.  Tower never approached Defendants with such a request

prior to filing their Motion, and never approached Defendants with a proposed resolution during

the entire fourteen-day period in which Defendants expended resources drafting this Opposition

to that Motion.

Tower conceivably could have avoided burdening the Court and the Parties with many of

its contradictory requests had it simply followed the requirements of Rule 26(c)(1) and Local Rule

26.1(f) and conferred with Defendants prior to filing.  It failed to do so, and that failure is

dispositive.

**II.    Tower Has Not Shown that the Narrow Disclosure of the Declarant's Identity Currently Permitted under the Stipulated Protective Order would Cause Significant Harm.**

A Stipulated Protective Order already governs this matter.  Tower has not established

"good cause" under the factors set forth in *Pansy* for modifying the protections already in place.

In the Third Circuit, good cause for entry of a protective order exists when the moving

party "shows that disclosure will result in a clearly defined, specific and serious injury" but

cautions that "broad allegations of harm are not sufficient to establish good cause." *Shingara*, 420

F.3d at 306.  "[A]n applicant for a protective order whose chief concern is embarrassment must

demonstrate that the embarrassment will be particularly serious." *Pansy*, 23 F.3d at 787.

Here, Tower fails to support its requested relief with any sort of affidavit, exhibits, or other

specific facts, such as a sealed or redacted copy of the declaration in question, or an affidavit

illustrating the harms Tower discusses.  Instead, Tower offers conclusory assertions from counsel,

*i.e.*, "exactly the type of broad, unsubstantiated allegation of harm that does not support a showing

of good cause." *Shingara*, 420 F.3d at 307; *see also Doe v. Allentown Sch. Dist.*, No. 06–1926,

2008 WL 5111917, at *3 (E.D. Pa. Dec. 2, 2008) (denying a protective order because movant did

not state with specificity *how* disclosure would lead to embarrassment, but instead "merely state[d]

he will suffer embarrassment in a conclusory fashion"); *Sprinturf, Inc. v. Sw. Recreational Indus., Inc.*, 216 F.R.D. 320, 324–25 (E.D. Pa. 2003) (denying a motion for a protective order because defendants failed to articulate a specific injury but merely made "very generalized conclusions").

And even on that point, Tower appears to contradict itself.  Despite its conclusory argument that disclosure of Tower's declarant to Defendants' counsel would cause that individual embarrassment, Tower nevertheless highlights significant pieces of "identifying information" about the declarant on the face of its brief.  Tower avers that this individual spent "several years working for one of the parties in this matter," concedes that "[t]he local and regional healthcare industries are small and interconnected," and asserts that the individual "would easily be recognized throughout the industry."  Mot. at 4.  It is incongruous that Tower seeks to shield identifying information about the declarant from Defendants' counsel, who operate under the strictures of the rules of professional ethics and an operative protective order, while sharing relevant details like this in a publicly filed document.

In fact, in support of its position Tower cites a merger case that expressly held good cause did *not* exist to prevent disclosure of a third party declarant to defendants' counsel.  In *Sysco*, just as in this case, the FTC sought to enjoin a merger, and had obtained declarations from third parties during its pre-complaint investigation.  *Fed. Trade Comm'n v. Sysco Corp.*, 83 F. Supp. 3d 271, 274 (D.D.C. 2015).  The protective order in that case treated that information as confidential, and the defendants moved for leave to disclose the identity of the declarants to their own employees for purposes of preparing their defense.  In stark contrast to the relief Tower seeks here, the court in *Sysco* expressly granted that motion.  *Id.*

III.    **The Identity of Tower's Declarant is Clearly Relevant.**

Tower also argues that even the limited dissemination of the declarant's name allowed under the Stipulated Protective Order would serve no public interest or any purpose in the case.

Mot. at 4.  We disagree.  This case by its very nature carries significant public interest and public

health and safety concerns.  By the nature of this case and the hospital merger at issue, any facts

relevant to the outcome of this case bear on the public interest and public health to some degree.

Moreover, and as evidenced by Tower's argument that the declarant previously worked for one of

the Parties, the identity of the declarant is highly relevant to whether Defendants could undermine

the assertions in the declaration, either at a deposition or elsewhere.  For that reason, Defendants'

counsel *ought* to be informed as to who this person is so that they may prepare the case.

Related, it is improper for Tower to request that the "name or identifying information" of

the declarant cannot be "used, referenced, quoted, or lodged as evidence for any purpose."  Mot.

at 3.  As Tower concedes, it "voluntarily" submitted the sworn statements in the declaration to

Plaintiffs during their pre-Complaint investigation.  Mot. at 1.  Having done so, it cannot now

argue that part of the information it submitted must remain concealed for all proceedings in the

case, particularly in light of Tower's failure to even attempt to rebut the strong presumption of

public access.  Tower and the declarant relinquished that level of control over the information

when they volunteered it to Plaintiffs.  Defendants may or may not seek to enter that information

as evidence at a later time; if they did, the Court would then need to decide the issue by applying

the more stringent standard in this Circuit for judicial records.  *In re Avandia Mktg.*, 924 F.3d 662,

672 (3d Cir. 2019).   In the meantime, Defendants should not be hamstrung during the discovery

phase of the case by Tower's premature and unsupported request.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Tower's

motion.

10

Dated: May 21, 2020

/s/  Virginia A. Gibson
Virginia A. Gibson (ID# 32520)
Stephen A. Loney, Jr. (ID# 202535)
HOGAN LOVELLS US LLP
1735 Market Street, Floor 23
Philadelphia, PA 19103
Telephone:  267-675-4600
Facsimile:  267-675-4601
virginia.gibson@hoganlovells.com
stephen.loney@hoganlovells.com

Robert F. Leibenluft (admitted *pro hac vice*)
Leigh L. Oliver (admitted *pro hac vice*)
Justin W. Bernick (admitted *pro hac vice*)
Kimberly D. Rancour (admitted *pro hac vice*)
Kathleen K. Hughes (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone:  202-637-5600
Facsimile:  202-637-5910
robert.leibenluft@hoganlovells.com
leigh.oliver@hoganlovells.com
justin.bernick@hoganlovells.com
kimberly.rancour@hoganlovells.com
kathleen.hughes@hoganlovells.com

*Counsel for Defendant Albert Einstein Healthcare Network*

Respectfully submitted,

/s/ Paul H. Saint-Antoine
Paul H. Saint-Antoine  (ID# 56224)
John S. Yi  (ID# 318979)
FAEGRE DRINKER BIDDLE & REATH
LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone:  215-988-2700
Facsimile:  215-988-2757
paul.saint-antoine@faegredrinker.com
john.yi@faegredrinker.com

Kenneth M. Vorrasi (admitted *pro hac vice*)
John L. Roach, IV (admitted *pro hac vice*)
Jonathan H. Todt  (admitted *pro hac vice*)
Alison M. Agnew (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH
LLP
1500 K Street, NW, Suite 1100
Washington, DC  20005
Telephone:  202-842-8800
Facsimile:  202-842-8465
kenneth.vorrasi@faegredrinker.com
lee.roach@faegredrinker.com
jonathan.todt@faegredrinker.com
alison.agnew@faegredrinker.com

Daniel J. Delaney (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH
LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone: 312-569-1000
Facsimile: 312-569-3000
daniel.delaney@faegredrinker.com

*Counsel for Defendant Thomas Jefferson University*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2020, a true and correct copy of the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users in this action.

/s/ John L. Roach IV
John L. Roach IV

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION and COMMONWEALTH OF PENNSYLVANIA, *Plaintiffs,* <br><br> v. <br><br> THOMAS JEFFERSON UNIVERSITY and ALBERT EINSTEIN HEALTHCARE NETWORK, *Defendants*. | Civil Action No. 20-01113 |

**[PROPOSED] ORDER**

AND NOW, this _____ day of _____, 2020, upon consideration of Nonparty Tower Health's Motion For an Additional Broader Protective Order and Notice to Maintain Highly Confidential Designation, and any response or opposition filed thereto, it is hereby **ORDERED** that Nonparty Tower Health's Motion For an Additional Broader Protective Order and Notice to Maintain Highly Confidential Designation is **DENIED**.

_____
Gerald J. Pappert
United States District Judge