# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| Federal Trade Commission and Commonwealth of Pennsylvania | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   2:20-cv-01113-GJP |
| Thomas Jefferson University and Albert Einstein Healthcare Network | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    Independence Blue Cross c/o Michael Zipfel
                       1901 Market Street, Philadelphia, PA 19103

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A.

| Place: Faegre Drinker Biddle & Reath LLP    One Logan Square, Suite 2000    Philadelphia, PA 19103 | Date and Time:    05/25/2020 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/24/2020

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ Paul H. Saint-Antoine |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendant
Thomas Jefferson University                                        , who issues or requests this subpoena,
are :Paul H. Saint-Antoine, Faegre Drinker Biddle & Reath LLP, One Logan Square, Ste. 2000, Philadelphia, PA
19103-6996 E-mail: paul.saint-antoine@faegredrinker.com Phone: (215) 988-2700; Fax: (215) 988-2757

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:20-cv-01113-GJP

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## INSTRUCTIONS

For the purpose of these Requests, the following Instructions shall apply:

A.      Unless otherwise specified, this request calls for the production of documents written, prepared, created, sent, or received from January 1, 2016, through the date this subpoena is received.

B.      If you have produced documents responsive to this Subpoena to the Plaintiffs in the course of the Merger Review, those documents need not be produced again so long as You identify such documents by Bates range or comparable means in your response to this Subpoena.

C.      For each request, You are to produce entire documents including all attachments, enclosures, cover letters, memoranda, and appendices.  Copies that differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) shall be treated as separate documents and produce separately.  Each draft of a document is a separate document.  A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

D.      Where a claim of privilege or other protection from discovery is asserted in objecting to any request or sub-part thereof, and any document is withheld (in whole or in part) on the basis of such assertion, You shall provide a log (the "Privilege Log") in Microsoft Excel format that identifies, where available:

       a.   the nature of the privilege or protection from discovery (including but not limited to attorney-client, work product, and deliberative process) that is being claimed with respect to each document;

b.  the type of each document;

c.  the date of each document

d.  the author of each document;

e.  the addresses and recipients of each document (including those recipients cc-ed or bcc-ed);

f.  a description of each document containing sufficient information to identify the general subject matter of the document and to enable defendants to assess the applicability of the privilege or protection claimed; and

g.  the identity of and any production Bates numbers assigned to any attachment(s), enclosure(s), cover letter(s), or cover email(s) of each document, including the information outlined in subsections (a) through (g) above for each such attachment, enclosure, cover letter, or cover email.

Attachments, enclosures, cover letters, and cover emails shall be entered separately on the Privilege Log.  The Privilege Log shall include the full name, title, and employer of each author, addressee, and recipient, denoting each attorney with an asterisk. Submit all non-privileged portions of any responsive document (including non-privileged or redactable attachments, enclosures, cover letters, and cover emails) for which a claim of privilege is asserted, noting where redactions to the documents have been made.

E.      If You assert that part of the request is objectionable, respond to the remaining parts of the request to which You do not object.  For those portions of any document request to which You object, please state the reasons for such objection and describe the documents or categories of documents that are not being produced.  If no documents are responsive to a particular request, You must state that no responsive documents exist.

5

F.      These document requests shall not be deemed to call for identical copies of documents.  "Identical" means precisely the same in all respects; for example, a document with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

G.      The documents responsive to these requests are to be produced as they were kept in the ordinary course of business and are to be labeled in such a way as to show which files and offices they came from.

H.      The specificity of any single request shall not limit the generality of any other request.

I.      Unless clearly indicated otherwise: (a) the use of a verb in any tense shall be construed as the use of that verb in all other tenses; (b) the use of the feminine, masculine, or neuter genders shall include all genders; and (c) the singular form of a word shall include the plural and vice versa.

J.      Provide all electronically stored information ("ESI") in standard, single-page Group IV TIFF format with searchable text and metadata in a Concordance or similar load file. Also, provide any spreadsheet or presentation files, including Microsoft Access, Excel, and PowerPoint files, as well as audio, audiovisual, and video files, in their native formats. Provide all hard copy documents as image files with searchable OCR text and unitize the hard copy documents to the extent possible (i.e., multi-page documents shall be produced as a single document and not as several single-page documents). Hard copy documents shall be produced as they are kept, reflecting attachment relationships between documents and information about the file folders within which the document is found. The use of global deduplication at the family level is permitted, but you must produce all custodian and path values.   Produce the metadata for any responsive ESI with the

responsive data, including the following fields: all custodians, author(s), recipient(s), copy recipient(s), blind copy recipient(s), subject, file sent date/time, file creation date/time, file modification date/time, file last accessed date/time, beginning bates, ending bates, parent beginning bates, attachment(s) beginning bates, hash value, application type, file type, file name, file size, all file paths, and all folder paths. Documents produced in native format shall be accompanied by a native link field. Those documents written in a language other than English must be translated into English; submit the foreign language document, with the English translation attached thereto.

K.      These requests are continuing in nature, and You must supplement Your responses pursuant to Federal Rule of Civil Procedure 26(e).  Defendants specifically reserve the right to seek supplementary responses and the additional supplementary production of documents before the hearing.

## DEFINITIONS

Unless otherwise noted, the following definitions shall apply to this these Requests:

1.      "Acute Rehab Services" means physical rehabilitation services provided to patients at inpatient rehabilitation hospitals, inpatient rehabilitation units within hospitals, and/or skilled nursing facilities.  These services include physical therapy, occupational therapy, and speech therapy.

2.      "Administrative Proceeding" means the Federal Trade Commission Adjudicative Proceeding, *In re Thomas Jefferson University, et al.*, FTC Docket No. 9392.

3.      "AG" means the Pennsylvania Office of the Attorney General, its employees, attorneys, accountants, economists, staff, consultants, experts, agents, and representatives, and specifically includes any third party representative or agent, wherever located, acting or

purporting to act on behalf of or assisting the AG in connection with the Merger Review, as defined below.

4.      "All" and "each" shall be construed as all and each.

5.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

6.      "Any" means each and every.

7.      "Commercial health insurance" means any insurance plan or product not administered by the Government, including, but not limited to, managed Medicaid and managed Medicare plans.  "Commercial population" means the populations covered by such commercial health insurance plans.

8.      "Communication" or "communications" means all modes of conveying or transmitting information, including but not limited to telephone calls, e-mails and all other forms of electronic communication and electronic messaging, letters, memoranda, conversations, interviews, meetings, hearings, notices, agreements, and other written, electronic or spoken language or graphics between two or more persons, however transmitted or stored.

9.      "Complaint," as used herein, means the complaint filed in *Federal Trade Commission, et al. v. Thomas Jefferson University, et al.*, No. 2:20-cv-01113 (E.D. Pa.) and any amended complaints that may be filed.

10.     "Concerning," "related to," "relating to," or "regarding" mean analyzing, alluding to, concerning, considering, commenting on, consulting, comprising, containing, describing, dealing with, discussing, evidencing, identifying, involving, reporting on, relating to, reflecting, referring to, regarding, studying, mentioning, or pertaining to, in whole or in part.

11.     "Declaration" means the Declaration of Paul Staudenmeier dated November 7, 2019 provided to the FTC.

12.     "Defendants" means Jefferson and/or Einstein.

13.     "Document" or "documents" are defined as broadly as those terms are construed under Rule 34 of the Federal Rules of Civil Procedure, and are meant to include, but are not limited to, all tangible and intangible modes of communicating, conveying, or providing any information such as writings, letters, correspondence, communications, notes, witness statements, transcripts, letters, memoranda, drawings, graphs, charts, photographs, discs, computer recordings, electronic mail, spreadsheets, data, databases, and any other data compilations from which information can be obtained, as well as drafts and any non-identical copies.

14.     "Einstein" means Albert Einstein Healthcare Network and its predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives.

15.     "FTC" means the Federal Trade Commission, its employees, attorneys, accountants, economists, staff, consultants, experts, agents, and representatives, and specifically includes any third party representative or agent, wherever located, acting or purporting to act on behalf of or assisting the FTC in connection with the Merger Review, as defined below.

16.     "Identify" shall mean (a) regarding an individual, the individual's full name, present address (or, if unknown, the last known address), telephone number, business address and telephone number, and place of employment and position; and (b) regarding an entity, the name under which the entity customarily does business, its address, its telephone number, and, if

known, the identity of the individual believed to have the most knowledge with respect to the matters in the relevant Request.

17.     "Interviewed" or "interviews" means any communications, verbal or otherwise, not specifically identified in deposition transcripts or declarations by or on behalf of the Plaintiffs with any individual or entity other than Jefferson or Einstein regarding the Proposed Transaction.

18.     "Investigation" means the FTC's investigation into the Transaction.

19.     "Jefferson" means Thomas Jefferson University and its predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives.

20.     "Litigation" means the case *Federal Trade Commission, et al. v. Thomas Jefferson University, et al.*, No. 2:20-cv-01113 (E.D. Pa.).

21.     "Merger Review" means the FTC's and AG's investigative review of the Proposed Transaction, FTC File No. 181-0128, including but not limited to, this Litigation and the Administrative Proceeding.

22.     "Narrow network" means any commercial health insurance plan offered in an area in which any health providers located in that area are excluded from participation.

23.     "Person" (or "person") means any natural person, corporation, association, organization, firm, company, partnership, joint venture, trust, estate, or other legal or governmental entity, whether state or federal, whether or not possessing a separate juristic existence.

24.     "Greater Philadelphia Area," as used herein, means the following counties in Pennsylvania:  Philadelphia, Bucks, Chester, Delaware, and Montgomery; and the following counties in New Jersey:  Burlington, Camden, Gloucester, and Mercer.

25.     "Plaintiffs" (or "plaintiffs") means the Federal Trade Commission and the Commonwealth of Pennsylvania.

26.     "Proposed Transaction" (or "Transaction"), as used herein, means the merger of Jefferson and Einstein pursuant to the System Integration Agreement entered on September 14, 2018 as described in the Complaint.

27.     "Price" means any price, charge, contracted rate, or cost to insurers, health plans, patients, or other customers.

28.     "Third Party" means any person other than the FTC, the Commonwealth of Pennsylvania, Jefferson, or Einstein.

29.     "Tiered network" means any commercial health insurance plan in which members pay different out-of-pocket expenses or access different benefits for different "in-network" health providers within the plan.

30.     "You" (or "you") or "Yours" (or "yours") means Independence Blue Cross, LLC, its domestic and foreign parents (including but not limited to Independence Health Group, Inc.), predecessors, divisions, subsidiaries, affiliates, partnerships, joint ventures, employees, attorneys, accountants, economists, staff, consultants, experts, agents, and representatives, and specifically includes any third party representative or agent, wherever located, acting or purporting to act on behalf of or assisting Independence Blue Cross in its involvement with the FTC's Investigation or the Litigation.

## DOCUMENT REQUESTS

1.      A copy of each organizational chart and personnel directory for Independence Blue Cross, LLC in effect since January 1, 2018.

2.      All documents relating to the Proposed Transaction, the Merger Review, the Investigation, the Administrative Proceeding, or this Litigation, including but not limited to, all documents and communications relating to Your communications with Plaintiffs, the potential effect of the Transaction on Your business or the business of any other healthcare provider, and/or any efforts by You to oppose, prevent, delay, or terminate the proposed Transaction

3.      All documents and communications relating to, referenced in, reviewed for, or that form the basis for the statements made in Your Declaration (including any drafts) and all documents reflecting communications between You and Plaintiffs or any other party related to the Declaration.

4.      Documents and data sufficient to identify each commercial, Managed Medicaid, and Managed Medicare product You offer in the Greater Philadelphia Area, including the providers who are in each product, the prices that such healthcare providers are paid pursuant to such products, the benefit plan design for each product, and the annual enrollment for each product.

5.      All documents assessing, discussing, describing or analyzing the advantages, disadvantages and benefits of each health system, hospital, or other facility that provides inpatient services, outpatient services, or Acute Rehab Services in the Greater Philadelphia Area for purposes of its inclusion in any healthcare network You or Your competitors provide.

6.      All documents that You rely on or utilize to prepare for negotiations for a contract or contract renewal for each healthcare provider that provides inpatient general acute care

services, outpatient services, or Acute Rehab Services in the Greater Philadelphia Area for purposes of its inclusion in any healthcare network for You or Your competitors.

7.      Documents and communications relating to the formation, strategy, and development of each of the commercial networks You offer in the Greater Philadelphia Area, including but not limited to, documents and communications reflecting Your pricing and negotiation strategies with general acute care and Acute Rehab Services providers, documents discussing or analyzing the desirability and attractiveness of such providers for inclusion in Your commercial networks, documents discussing or analyzing the differences or gaps between Your commercial networks and Your rivals' networks, documents discussing the extent to which providers are competitors or substitutes, documents reflecting or discussing the cost or quality of healthcare providers, and documents and communications reflecting Your rationale for including or excluding any healthcare provider from a product or network in the Greater Philadelphia Area.

8.      Documents and communications discussing or analyzing healthcare providers in the Greater Philadelphia Area that You, employers, or Your members view as comparable or substitutable with Jefferson (including any of its facilities) or Einstein (including any of its facilities) with respect to the services and/or geographic coverage that each offer.

9.      All documents and communications related to or discussing Your "bargaining position" or "bargaining power," as those terms are used in paragraph 10 of the Declaration, relative to either Jefferson or Einstein.

10.     Documents or data sufficient to show patient travel patterns and distances patients will travel for inpatient general acute care services or Acute Rehab Services in the Greater Philadelphia Area.

11.     Documents sufficient to show the incentives You create in order to direct patients to certain healthcare facilities in the Greater Philadelphia Area for care including, by way of example, financial incentives You provide to healthcare providers (e.g., physicians) and/or financial incentives You provide to patients (e.g., tiered networks or forms of value-based insurance design).

12.     Documents discussing, analyzing, or reflecting the prices for Jefferson, Einstein, and other healthcare providers in the Greater Philadelphia Area when participating in the commercial products You offer, including any historical analyses of or data describing hospitals' or health systems' pricing over time, from January 1, 2016 to the present.

13.     Documents related to Your strategy and rationale for reimbursement changes in Your contract with Einstein, including but not limited to any rationale related to Einstein's proposed acquisition by Jefferson.

14.     Documents related to Your strategy and rationale for, and the impact on reimbursement paid to, Einstein due to the actual or attempted reclassification of Einstein Medical Center Philadelphia from an academic medical center to a high-end community hospital, and the actual or attempted reclassification of Einstein Medical Center Montgomery from a high-end community hospital to a standard community hospital, or other similar actual or attempted classification changes.

15.     Documents sufficient to show the prices each general acute care hospital or healthcare provider in the Greater Philadelphia Area charges You for inpatient general acute care services, outpatient services, physician services, or Acute Rehab Services, separately for each of Your commercial health insurance products sold primarily to employer groups and other plan sponsor or to individuals not receiving coverage through Medicare or Medicaid programs.

14

16.     Documents and data sufficient to show inpatient facility claims, including but not limited to Acute Rehab Services claims associated with either inpatient rehabilitation facilities or skilled nursing facilities, by individual patient for each of the health care facilities who participated in any of Your products in the Greater Philadelphia Area from January 1, 2016 to the present, including information on each patient's five-digit patient zip code, Case Mix Group ("CMG"), Resource Utilization Group ("RUG"), and other relevant procedure and diagnosis codes, as well as payments associated with each claim (allowed amounts, charges etc.). A full list of requested claims data fields can be found in Appendix 1. To the extent any of this information has already been produced to Plaintiffs, we are willing to meet and confer.

17.     Documents and communications reflecting the prices and terms in which You or any Third Party healthcare providers of general acute care or Acute Rehab Services in the Greater Philadelphia Area are or were willing to participate in any of Your actual or contemplated tiered network or narrow network commercial products, including but not limited to Your PPO Tiered Network product, Your Keystone HMO Proactive product, and Your Keystone 65 Focus product.

18.     All documents related to instances in which a provider proposed that it would agree to accept lower rates in exchange for a preferred benefit tier if You agreed to place either Jefferson or Einstein in a less preferential benefit tier, as part of a negotiation process generally described in paragraph 6 of Your Declaration.

19.     Documents discussing the financial condition of hospitals in the Greater Philadelphia Area, including the impact of that financial condition on the prices paid to the hospital, on the quality of services provided at the hospital, on Medicare and/or Medicaid patient populations, and on the hospital's likelihood of insolvency.

20.     Documents related to Your assessment of Einstein's financial condition or analysis of the impact of Einstein's possible financial deterioration or failure on reimbursement rates or provider services in the Greater Philadelphia Area.

21.     Documents or data sufficient to show physician referral patterns in the Greater Philadelphia Area for inpatient general acute care services, outpatient services, or Acute Rehab Services, including any analyses of trends in or the expected future of how these referral patterns may change.

22.     All documents related to Your use of pre-certification for any acute rehab admission at an inpatient rehab facility ("IRF"), including but not limited to Your ability to steer patients from one IRF to another or from an IRF to another post-acute care provider, including but not limited to, a skilled nursing facility ("SNF").

23.     All documents related to the scope and composition of the Acute Rehab Services provider network You believe is necessary to serve your members in the Greater Philadelphia Area.

24.     All documents relating to the marketing of Acute Rehab Services to Your members in the Greater Philadelphia Area, including all documents relating to communications with insurance brokers, employers, or members regarding plans or strategies to market post-acute services to Your members.

25.     All documents reflecting Your ability to bargain for or negotiate lower rates for Acute Rehab Services provided by Jefferson's Magee Rehabilitation Hospital due to the presence of Einstein's MossRehab, and all documents reflecting Your ability to bargain for or negotiate lower rates for Acute Rehab Services provided by Einstein's MossRehab due to the presence of Jefferson's Magee Rehabilitation Hospital, as described in paragraph 31 of Your Declaration.

26.     Documents and data sufficient to show the extent to which Your members residing in the Greater Philadelphia Area obtain Acute Rehab Services in New Jersey or elsewhere outside of the Greater Philadelphia Area.

27.     All documents related to contracting with SNFs to provide Acute Rehab Services in the Greater Philadelphia Area.

28.     Documents and communications discussing or analyzing Your competitors or competition in the sale of commercial health insurance, Managed Medicare, or Managed Medicaid products in the Greater Philadelphia Area, including, but not limited to, market shares by product or customer segment and competition from Health Partners Plans.

29.     Documents discussing Your plans to acquire, control, or affiliate with healthcare providers and physicians in the Greater Philadelphia Area.

30.     Documents and communications discussing the Delaware Valley Accountable Care Organization ("DVACO"), including but not limited to, Your analysis of the DVACO as a possible provider in Your health plans and whether to contract (and on what terms) with the DVACO for participation in Your health plans.

31.     Documents and communications discussing Your participation in the request for proposal the DVACO issued to select a third party administrator for Jefferson's employee medical benefits plan, including but not limited to Your efforts and strategies to retain Your role as the third party administrator for Jefferson's employee medical benefits.

32.     Documents reflecting the actual and/or projected impact of the closure of any general acute care or acute rehab hospital, including but not limited to Hahnemann University Hospital, St. Joseph's Hospital, and Mercy Philadelphia Hospital, on patient access and pricing

for inpatient general acute care services, outpatient services, or Acute Rehab Services in the Greater Philadelphia Area.

33.     Documents and communications related to Your strategy and rationale for any proposed or contemplated merger, affiliation, joint venture, or other transaction among You, Temple University and/or Temple University Health System ("Temple"), and Einstein, including but not limited to all communications with any consultants hired by You and/or Temple.

34.     Documents and communications that You, Your employees, and/or Your agents had with Einstein or its employees, including but not limited to Einstein President and CEO Barry Freedman, regarding any contemplated, potential, or actual merger, affiliation, joint venture, or other transaction between the University of Pittsburgh Medical Center and Einstein, including the dates of Your communications and the persons involved.

35.     Documents and communications that You, Your employees, and/or Your agents had with any federal, state, or local government employee regarding any contemplated, potential, or actual merger, affiliation, joint venture, or other transaction with Einstein and any entity, including but not limited to Jefferson, Temple, and the University of Pittsburgh Medical Center, including the dates of Your communications and the persons involved.

36.     Documents sufficient to sufficient to identify all meetings and/or telephone conferences, whether scheduled or ad hoc, at which the proposed Einstein and Jefferson transaction was discussed, including the identification of all participants involved in such communications.

37.     Documents and communications (including text messages) that You, Your employees, and/or Your agents had with Jefferson or its employees, including but not limited to Stephen K. Klasko, regarding Your contract negotiations with Jefferson (and any of its facilities),

including but not limited to, the potential termination of Jefferson's contract(s) with You, and Your participation in the request for proposal process with the DVACO.

38.     Documents and communications related to Your strategy and rationale for Your contract negotiations with Jefferson and the potential termination of Jefferson's contract(s) with You.

39.     Documents and communications related to any limit of patient lives that You place on Jefferson's or Einstein's participation in Your Keystone Managed Medicaid product.

40.     All documents related to Your contract negotiations with Tower Health, including but not limited to the contract dispute that occurred in 2017 and is referenced in the October 6, 2017 Philadelphia Inquirer article by Bob Fernandez, entitled *Uncertainty for 120,000 ends as Independence Reaches Deal with Tower Health*.[1]

---

[1] https://www.inquirer.com/philly/business/crisis-for-120k-patients-passes-as-independence-reaches-deal-with-tower-health-20171006.html.

# **Appendix 1**

Claims Data Requests:

| | |
|---|---|
| 1 | Submit (in electronic, machine readable format), for each inpatient admission or discharge at any general acute care hospital, inpatient rehabilitation facility, or skilled nursing facility that participated in any of your products in the Greater Philadelphia Area that occurred in the period January 1, 2016 to the present: |
| 1(a) | A unique patient identifier and a unique inpatient admission identifier |
| 1(b) | The identity of the general acute care hospital, inpatient rehabilitation facility, or skilled nursing facility at which the patient received the inpatient care, the address of the facility (including the ZIP code), and any facility identification number used for reimbursement purposes |
| 1(c) | The patient's city, town, or village of residence; the patient's county of residence; and the patient's 5-digit ZIP code of residence |
| 1(d) | The patient's Gender and Age in years |
| 1(e) | The date of admission and date of discharge |
| 1(f) | The primary Diagnosis Related Group ("DRG" or "MSDRG") associated with the patient's admission and the version for the reported Diagnosis Related Group |
| 1(g) | The primary and secondary ICD9 or ICD10 diagnosis or procedure codes associated with the patient's admission |
| 1(h) | For services rendered at a rehabilitation facility or skilled nursing facility, the HIPPS code, case mix group ("CMG"), resource utilization group ("RUG"), tier within the CMG or RUG, and designated weight associated with the tier, associated with the patient's admission |
| 1(i) | The source of the patient (e.g., transfer or referral from another provider), including the identity of any transferring or referring provider and, for general acute care admissions, whether the source or point of origin of admission was the hospital's emergency department |
| 1(j) | The specific name and type (e.g., HMO, POS, PPO, etc.) of the health plan product |

1(k)  The identity of any secondary sources of payment and amounts paid by those sources

1(l)  The billed charges of the facility, the allowed amount under the patient's health plan, and the amount actually paid by the health plan

1(m)  Any additional amounts paid or to be paid by the patient to the facility under the patient's health plan, including (and listed separately):

1(m)(i)  the deductible amount;

1(m)(ii)  the copay amount, and

1(m)(iii)  the coinsurance amount;

1(n)  The type of admission (e.g., admitted through emergency room, admitted through physician referral)

1(o)  The patient's status (e.g. normal discharge, deceased, transferred to another inpatient rehabilitation facility) upon discharge

1(p)  The name,  National Provider Identification (NPI) number, and specialty area of practice of the admitting physician, referring physician, and treating physician associated with the claim

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br><br>and<br><br>**COMMONWEALTH OF PENNSYLVANIA**<br><br><br>Plaintiffs,<br><br>v.<br><br>**THOMAS JEFFERSON UNIVERSITY**<br><br>and<br><br>**ALBERT EINSTEIN HEALTHCARE NETWORK**<br><br><br>Defendants. | No. 2:20-cv-01113-GJP |

## STIPULATED PROTECTIVE ORDER

Plaintiffs Federal Trade Commission ("FTC" or "Commission") and the Commonwealth of Pennsylvania (collectively with the FTC, "Plaintiffs") and Defendants Thomas Jefferson University and Albert Einstein Healthcare Network (collectively, "Defendants"), by and through their respective counsel, have stipulated, pursuant to Federal Rule of Civil Procedure 26(c), to the terms of this Protective Order.  Discovery in this action may yield documents and information of a sensitive and confidential nature, including business, commercial, financial, and trade secret information of Defendants or third parties.  The Court finds that good cause exists for entry of a

1

protective order in this Litigation to prevent unauthorized disclosure and use of such sensitive and confidential information during and after the course of the Litigation. **IT IS THEREFORE ORDERED THAT** for the purpose of protecting the interests of the parties and third parties in the above-captioned matter against improper use and disclosure of Confidential Information or Highly Confidential Information (together, "Protected Information") produced in connection with this matter, this Protective Order ("Protective Order") shall govern the handling of all Protected Information as hereafter defined.

1. As used in this Order, "Confidential Information" shall refer to any document or other information that contains (i) information prohibited from disclosure by statute; (ii) research, development, technical, commercial, or financial information that the party has maintained as confidential; (iii) medical information concerning any individual; or (iv) sensitive personal information, including, but not be limited to, an individual's Social Security number, taxpayer identification number, financial information, credit card or debit card number, driver's license number, state-issued identification number, passport number, date of birth (other than year), and any sensitive health information identifiable by individual, such as an individual's medical records.

2. As used in this Order, "Highly Confidential Information" shall refer to any document or other information that contains (i) specific cost, rates, reimbursements, pricing, sales, revenue, reimbursement plans, or margin information relating to the producing party or a customer of the producing party; (ii) specific plans for capacity expansion or reduction; (iii) information that reveals trade secrets; (iv) specific payor contracts; (v) specific payor claims data; (vi) specific marketing and advertising data or plans that identify specific competitors or customers; or (vii) proprietary strategies or policies related to competition that have been kept confidential by the

2

producing party, the disclosure of which poses a substantial risk of causing significant competitive injury to current or future commercial or financial interests of the producing party, or a party to the litigation.

3.          The parties, in conducting discovery from third parties, shall provide to each third party a copy of this Order.  Nothing in this Order shall be construed as limiting any rights of a third party from seeking other or further relief from this Court regarding the disclosure of Protected Information.

4.          The parties and any third parties, in complying with informal discovery requests, disclosure requirements, or discovery demands in this proceeding may designate any responsive document or portion thereof as Confidential or Highly Confidential, including documents obtained by them from third parties pursuant to discovery or as otherwise obtained.

5.          A designation of Confidential or Highly Confidential shall constitute a representation in good faith, after determination that the material is not reasonably believed to be already in the public domain, that counsel believes the material so designated constitutes Confidential Information, as defined in Paragraph 1 of this Order, or Highly Confidential, as defined in Paragraph 2 of this Order.

6.          Material may be designated as Confidential or Highly Confidential by placing on or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," or any other similar notice, on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries, or descriptions that contain the Confidential Information or Highly Confidential Information. Confidential Information or Highly Confidential Information contained in electronic data or

documents may also be designated as confidential by placing the designation "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," or any other similar notice, on the face of the CD or DVD or other medium on which the document is produced. The marking "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time the documents are produced or disclosed.

7.        Any documents produced prior to the Court's entry of this Order, including all documents produced during Plaintiffs' investigations (the "Investigations") that preceded this litigation, shall be considered Highly Confidential Information for a period of twenty-one days from the date of entry of this Order. If a producing party wishes to maintain the designation of a document as Highly Confidential, it shall notify the parties in this matter within twenty-one days of entry of this Order. In light of the declared public health emergency resulting from the COVID-19 outbreak, producing parties may request reasonable extensions to this twenty-one day period in order to review prior productions. After twenty-one days of entry of this Order and any extension, any document produced prior to the Court's entry of this Order—including any document produced during the Investigations—that is not designated HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER shall be treated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER. The identity of a third party submitting such Protected Information shall also be treated as Confidential Information for the purposes of this Order where the submitter has requested such confidential treatment.

8.        Deposition testimony is protected by this Order only if designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the record at the time the testimony is taken.

Deposition testimony so designated shall be treated as Confidential Information or Highly Confidential Information protected by this Order until ten days after delivery of the transcript by the court reporter to any party or the witness.  Within ten days after delivery of the transcript, a designating party may serve a Notice of Designation to all parties of record identifying the specific portions of the transcript that are designated Confidential Information or Highly Confidential Information, and thereafter those portions identified in the Notice of Designation shall be protected under the terms of this Order.  The failure to serve a timely Notice of Designation waives any designation of deposition testimony as Confidential Information or Highly Confidential Information that was made on the record of the deposition, unless otherwise ordered by the Court.

9.         Confidential Information or Highly Confidential Information shall not be used or disclosed by the parties, counsel for the parties, or by any other persons identified in Paragraphs 10 and 11 for any purpose whatsoever other than in this litigation.

10.        Confidential Information shall be disclosed only to: (a) the Court presiding over this proceeding and its personnel; (b) the Plaintiffs, Plaintiffs' employees, and personnel who have responsibility for this action; (c) judges and other court personnel of any court having jurisdiction of any appellate proceeding involving this matter; (d) counsel for the parties and employees of counsel who have responsibility for this action; (e) employees of a party, but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of this litigation and only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound and the party has provided advance written notice (including the name and position of the employee(s) seeking access) to the opposing party and the producing party, via electronic mail/PDF, or hand

delivery, at least seven business days prior to disclosure, except that if the producing party has within that time objected in writing to such disclosure; the producing party as the designating party and the receiving party as the challenging party shall follow the dispute resolution process set forth in Paragraph 18(b) and the challenging party shall provide a copy of the producing party's objection and any letters to the Court to Plaintiffs and Defendants; (f) testifying or consulting experts retained by the parties or counsel for the parties to assist in the preparation or hearing of this proceeding, including employees of the firm with which the expert or consultant is associated or independent contractors who are necessary to assist the expert's work, provided that they are not employees of a Defendant and have completed the certification contained in Attachment A, Acknowledgement and Agreement to Be Bound; (g) court reporters and recorders engaged for depositions; (h) contractors hired for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents; (i) any witness or deponent who authored or received the information in question, or otherwise would have had access to the information in question in the ordinary course of business; and (j) other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

11.     Highly Confidential Information shall be disclosed only to: (a) the Court presiding over this proceeding and its personnel; (b) the Plaintiffs, Plaintiffs' employees, and personnel with responsibility for this action; (c) judges and other court personnel of any court having jurisdiction of any appellate proceeding involving this matter; (d) outside counsel of record for the parties and employees of outside counsel who have responsibility for the action, provided they are not employees of a Defendant; (e) testifying or consulting experts retained by the parties or counsel for the parties to assist in the preparation or hearing of this proceeding, including

employees of the firm with which the expert or consultant is associated or independent contractors who are necessary to assist the expert's work, provided that they are not employees of a Defendant and have completed the certification contained in Attachment A, Acknowledgement and Agreement to Be Bound; (f) court reporters and recorders engaged for depositions; (g) contractors hired for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents; (h) any witness or deponent who may have authored or received the information in question, or otherwise would have had access to the Confidential Information or Highly Confidential Information in question in the ordinary course of business; and (i) other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

12.     Disclosure of Protected Information to any person described in Paragraphs 10 and 11 of this Order shall be only for the purposes of this proceeding and the related FTC administrative proceeding, and any appeals of either proceeding, and for no other purpose whatsoever, provided, however, that the Commission may, subject to taking appropriate steps to preserve the confidentiality of such material, use or disclose Protected Information as provided by its Rules of Practice; Sections 6(f) and 21 of the Federal Trade Commission Act; or any other legal obligation imposed upon the Commission.

13.     Notwithstanding any provision in Paragraphs 8, 9, 10, or 12, this Order shall not prevent or restrict outside counsel for any Defendant from providing advice to their clients, and in the course of providing such advice, relying generally on counsel's examination of documents designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."  Such advice, however, cannot

include the disclosure of specific information that has been designated as Confidential Information or Highly Confidential Information.

14. The protections conferred by this Order do not cover any information that through written documentation can objectively be shown is in the public domain at the time of disclosure as a result of publication not involving a violation of this Order.

15. Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information or Highly Confidential Information. Counsel shall maintain copies of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case. If any party becomes aware of the unauthorized disclosure of Confidential Information or Highly Confidential Information, the party must notify the designating party in writing as soon as practicable.

16. An inadvertent failure to designate a document as Confidential Information or Highly Confidential Information does not, standing alone, waive the right to so designate the document; provided, however, that a failure to serve a timely Notice of Designation of deposition testimony as required by this Order, even if inadvertent, waives any protection for deposition testimony. If a party timely designates a document as Confidential Information or Highly Confidential Information after the document was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information or Highly Confidential Information.

17. This Order does not authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information or Highly Confidential

8

Information in connection with a motion, brief, or other submissions to the Court must comply with LCvR 5.1.2.7 and LCvR 7.1 and this Court's policies and procedures. To the extent that a document filed or to be filed under seal or identified on any parties' final pre-hearing exhibit list was originally submitted by a third party, the party including the materials in its papers or final exhibit list shall immediately notify the submitter of such inclusion within one day of such filing.

18.     The designation of any material or document or specific redaction within a document as Confidential Information or Highly Confidential Information is subject to challenge by any party at any time. The following procedure shall apply to any such challenge:

      a.     Meet and Confer. A party challenging the designation of Confidential Information or Highly Confidential Information must do so in good faith and must begin the process by conferring with counsel for the designating party. In conferring, the challenging party must identify the material that the challenging party believes was not properly designated and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within three business days and, if it makes no change in designation, must identify and explain specifically and in writing how the designated material satisfies the definition of either Confidential Information or Highly Confidential Information as set forth in Paragraphs 1 and 2 of this Order.

      b.     Judicial Intervention. If the parties cannot resolve a challenge without court intervention, the disputing parties shall jointly submit a letter to the Court requesting the scheduling of a telephonic conference addressing those disputes that require judicial attention. All parties must cooperate in bringing protective order disputes before the Court, even if a party is a non-challenging party. The challenging party, however, bears the responsibility of preparing and

filing the joint letter with the Court. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the material as Confidential Information or Highly Confidential Information under the terms of this Order.

19.       The Court reserves its inherent power to modify the terms of this agreement and permit the disclosure of information where the interest of justice so requires.

20.       Nothing in this Order limits a party's use or disclosure of its own documents, information, or transcripts of testimony designated as Confidential Information or Highly Confidential Information. Nor does this Order prevent disclosure of Confidential Information or Highly Confidential Information by any party with the consent of the party that designated the Confidential or Highly Confidential Information.

21.       In the event that any Confidential Material or Highly Confidential Material is contained in any pleading, motion, exhibit or other paper filed or to be filed with the Court, the Court shall be so informed by the Party filing such papers, and such papers shall be filed under seal pursuant to the Local Rules of Civil Procedure for the Eastern District of Pennsylvania until such time as the Court orders otherwise or denies permission to file under seal. Any filings containing Confidential Information or Highly Confidential Information shall be redacted for such information and the redacted copy filed publicly and the unredacted version filed under seal. The sealed material shall plainly state on the front page of any bound or stapled document "CONTAINS CONFIDENTIAL MATERIAL PURSUANT TO PROTECTIVE ORDER – FILED UNDER SEAL" and shall be filed only in sealed envelopes which shall be endorsed with the appropriate caption and a statement in the following form: "CONFIDENTIAL – THIS ENVELOPE CONTAINS DOCUMENTS THAT ARE SUBJECT TO A PROTECTIVE ORDER ENTERED

BY THE COURT IN THIS ACTION.  THIS ENVELOPE SHALL NEITHER BE OPENED NOR THE CONTENTS REVEALED EXCEPT BY ORDER OF THE COURT" or substantively similar language.

22.　　　If any party receives a discovery request in any investigation or in any other proceeding or matter that may require the disclosure of Confidential Information or Highly Confidential Information produced by another party or third party in this action, the recipient of the discovery request shall promptly notify the designating party of receipt of such request immediately, and in no event more than three business days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.  The receiving party must also immediately inform in writing the party who caused the subpoena or order to issue in the other investigation, proceeding, or matter that some or all of the material covered by the subpoena or order is the subject of this Order.  In addition, the receiving party must deliver a copy of this Order to the party in the other action that caused the subpoena to issue.  The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information or Highly Confidential Information in the court from which the subpoena or order issued.  The designating party shall bear the burden and expense of seeking protection in that Court of its Confidential Information or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging the receiving party in this action to disobey a lawful directive from another court.  Nothing herein shall limit the applicability of Rule 4.11(e) of the Commission's Rules of Practice, 16 C.F.R. § 4.11(e), to discovery requests in another proceeding that are directed to the Commission.  The obligations set forth in this paragraph remain in force and effect while the party has in its possession, custody, or control, Confidential

Information or Highly Confidential Information by the other party to this case.

23.      The provisions of this Protective Order, insofar as they restrict the communication and use of confidential discovery material, shall, without written permission of the producing party or further order of the Court, continue to be binding after the conclusion of this proceeding, and this Court retains jurisdiction over any disputes arising out of this Protective Order.

24.      Within sixty days after dismissal or entry of final judgment not subject to further appeal, all receiving parties shall return to the producing parties or take all commercially reasonable steps to destroy all Confidential Information or Highly Confidential Information and documents marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" under this Order, including copies as defined in Paragraph 6 of this Order. The foregoing provision shall not apply if the document has been, without restriction as to disclosure, admitted into evidence at any trial or hearing in this proceeding or otherwise filed publicly with the Court.  Outside Counsel for Defendants and Counsel for Plaintiffs may retain (1) attorney work product, including an index that refers or relates to designated Confidential Information or Highly Confidential Information, so long as that work product does not duplicate verbatim substantial portions of Confidential Information or Highly Confidential Information, and (2) one complete set of all documents filed with the Court including those filed under seal.  Any retained Confidential Information or Highly Confidential Information shall continue to be protected under this Order.  An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose or use Confidential Information or Highly Confidential Information.

25.      This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.  Any

violation of this Order by a person or entity subject to it will result in the imposition of a fine and/or

sanctions on that person or entity, as deemed appropriate by the Court.


Dated:  April 17, 2020                                    Respectfully Submitted,


/s/ Mark D. Seidman                                      /s/ Paul H. Saint-Antoine
Mark D. Seidman                                          Paul H. Saint-Antoine  (ID# 56224)
Charles Dickinson                                        John S. Yi  (ID# 318979)
James Weingarten                                         FAEGRE DRINKER BIDDLE & REATH
FEDERAL TRADE COMMISSION                                 LLP
Bureau of Competition                                    One Logan Square, Suite 2000
600 Pennsylvania Avenue, NW                              Philadelphia, PA 19103
Washington, D.C. 20580                                   Telephone:  215-988-2700
(202) 326-3296                                           Facsimile:  215-988-2757
mseidman@ftc.gov                                         paul.saint-antoine@faegredrinker.com
                                                         john.yi@faegredrinker.com
Attorneys for Plaintiff Federal Trade
Commission                                               Kenneth M. Vorrasi (admitted pro hac vice)
                                                         John L. Roach, IV (admitted pro hac vice)
/s/ Tracy Wertz                                          Jonathan H. Todt  (admitted pro hac vice)
TRACY WERTZ, PA 69164                                    Alison M. Agnew (admitted pro hac vice)
JENNIFER THOMSON, PA 89360                               FAEGRE DRINKER BIDDLE & REATH
ABIGAIL WOOD, PA 325273                                  LLP
OFFICE OF THE ATTORNEY GENERAL                           1500 K Street, NW, Suite 1100
COMMONWEALTH OF PENNSYLVANIA                             Washington, DC  20005
Strawberry Square                                        Telephone:  202-842-8800
Harrisburg, PA 17120                                     Facsimile:  202-842-8465
(717) 787-4530                                           kenneth.vorrasi@faegredrinker.com
twertz@attorneygeneral.gov                               lee.roach@faegredrinker.com
                                                         jonathan.todt@faegredrinker.com
Attorneys for Plaintiff Commonwealth of                  alison.agnew@faegredrinker.com
Pennsylvania


                                                         Daniel J. Delaney (admitted pro hac vice)
                                                         FAEGRE DRINKER BIDDLE & REATH
                                                         LLP
                                                         191 N. Wacker Drive, Suite 3700
                                                         Chicago, IL 60606
                                                         Telephone: 312-569-1000

Facsimile: 312-569-3000
daniel.delaney@faegredrinker.com

*Counsel for Defendant Thomas Jefferson University*

/s/ Virginia A. Gibson
Virginia A. Gibson (ID#32520)
Stephen A. Loney, Jr. (ID#202535)
Garima Halhorta (ID#327158)
Alexander Bowerman (ID#321990)
HOGAN LOVELLS US LLP
1735 Market Street, Floor 23
Philadelphia, PA 19103
Telephone: 267-675-4600
Facsimile: 267-675-4601
virginia.gibson@hoganlovells.com
stephen.loney@hoganlovells.com

Robert F. Leibenluft (admitted *pro hac vice*)
Leigh L. Oliver (admitted *pro hac vice*)
Justin W. Bernick (admitted *pro hac vice*)
Kimberly D. Rancour (admitted *pro hac vice*)
Kathleen K. Hughes (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
robert.leibenluft@hoganlovells.com
leigh.oliver@hoganlovells.com
justin.bernick@hoganlovells.com
kimberly.rancour@hoganlovells.com
kathleen.hughes@hoganlovells.com

*Counsel for Defendant Albert Einstein Healthcare Network*

Dated:   4/17/20                    IT IS SO ORDERED.


                                    */s/ Gerald J. Pappert*
                                    Gerald J. Pappert
                                    United States District Judge

ATTACHMENT A

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION** and **COMMONWEALTH OF PENNSYLVANIA** Plaintiffs, v. **THOMAS JEFFERSON UNIVERSITY** and **ALBERT EINSTEIN HEALTHCARE NETWORK** Defendants. | No. 2:20-cv-01113-GJP |

ACKNOWLEDGMENT
AND
AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Protective Order Governing Confidential Information dated April __, 2020 (ECF No. __) in the above-captioned action and attached hereto (the "Protective Order"), understands the terms the Protective Order, and agrees to be bound by the terms of the Protective Order. The undersigned submits to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania in matters

relating to the Protective Order and understands that the terms of the Protective Order obligate him/her to use materials designated as Confidential Information or Highly Confidential Information in accordance with the Protective Order solely for the purposes of the above-captioned action and not to disclose any such Confidential Information or Highly Confidential Information to any other person, firm or concern.

The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business
Address: _____

Date: _____        _____
                              Signature