# EXHIBIT C

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| Federal Trade Commission and Commonwealth of Pennsylvania<br>*Plaintiff*<br>v.<br>Thomas Jefferson University and Albert Einstein Healthcare Network<br>*Defendant* | )<br>)<br>)<br>) Civil Action No.  2:20-cv-01113-GJP<br>)<br>)<br>) |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: Independence Blue Cross, LLC
1901 Market Street, Philadelphia, PA 19103
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Exhibit A attached hereto.

| Place: Faegre Drinker Biddle & Reath LLP<br>One Logan Square, Suite 2000<br>Philadelphia, PA 19103 (or other agreed upon location) | Date and Time:<br>06/22/2020 9:00 am |
|---|---|

The deposition will be recorded by this method:  Stenographic and videographic means

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/26/2020

| CLERK OF COURT | |
|---|---|
| OR | |
| *Signature of Clerk or Deputy Clerk* | Paul H. Saint-Antoine<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant Thomas Jefferson University , who issues or requests this subpoena, are:
Paul H. Saint-Antoine, Esq.  Faegre Drinker Biddle & Reath LLP, One Logan Square, Ste. 2000, Philadelphia, PA 19103-6996
E-mail: paul.saint-antoine@faegredrinker.com Phone: (215) 988-2700; Fax: (215) 988-2757

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:20-cv-01113-GJP

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## **EXHIBIT A TO 30(b)(6) NOTICE**

## **INSTRUCTIONS**

For the purpose of this Notice, the following Instructions shall apply:

A.   Any subject set forth in the disjunctive shall also be read as if it is propounded in the conjunctive, and vice versa.  Any request propounded in the masculine gender shall also be read as if propounded in the feminine and neuter gender, and vice versa.  Any subject set forth in the singular shall also be read as if propounded in the plural, and vice versa.  Any subject set forth in the present tense shall also be read as if propounded in the past tense, and vice versa.

B.   If You object to any subject in whole or in part on the basis of privilege, set forth the subject matter that will be withheld and the nature of the privilege claimed.

C.   If You refuse to provide a designation based in whole or in part on the grounds of burdensomeness, describe in detail the burden imposed and the effort that would be required to provide information responsive to the request.

## **DEFINITIONS**

Unless otherwise noted, the following definitions shall apply to this Notice:

1.   "Acute Rehab Services" means physical rehabilitation services provided to patients at inpatient rehabilitation hospitals, inpatient rehabilitation units within hospitals, and/or skilled nursing facilities.  These services include physical therapy, occupational therapy, and speech therapy.

2.   "Administrative Proceeding" means the Federal Trade Commission Adjudicative Proceeding, *In re Thomas Jefferson University, et al.*, FTC Docket No. 9392.

3.   "AG" means the Pennsylvania Office of the Attorney General, its employees, attorneys, accountants, economists, staff, consultants, experts, agents, and representatives, and

4

specifically includes any third party representative or agent, wherever located, acting or purporting to act on behalf of or assisting the AG in connection with the Merger Review, as defined below.

4. "All" and "each" shall be construed as all and each.

5. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

6. "Any" means each and every.

7. "Commercial health insurance" means any insurance plan or product not administered by the Government, including, but not limited to, managed Medicaid and managed Medicare plans. "Commercial population" means the populations covered by such commercial health insurance plans.

8. "Communication" or "communications" means all modes of conveying or transmitting information, including but not limited to telephone calls, e-mails and all other forms of electronic communication and electronic messaging, letters, memoranda, conversations, interviews, meetings, hearings, notices, agreements, and other written, electronic or spoken language or graphics between two or more persons, however transmitted or stored.

9. "Complaint," as used herein, means the complaint filed in *Federal Trade Commission, et al. v. Thomas Jefferson University, et al.*, No. 2:20-cv--01113 (E.D. Pa.) and any amended complaints that may be filed.

10. "Concerning," "related to," "relating to," or "regarding" mean analyzing, alluding to, concerning, considering, commenting on, consulting, comprising, containing, describing,

dealing with, discussing, evidencing, identifying, involving, reporting on, relating to, reflecting, referring to, regarding, studying, mentioning, or pertaining to, in whole or in part.

11. "Declaration" means the Declaration of Paul Staudenmeier dated November 7, 2019 provided to the FTC.

12. "Defendants" means Jefferson and/or Einstein.

13. "Document" or "documents" are defined as broadly as those terms are construed under Rule 34 of the Federal Rules of Civil Procedure, and are meant to include, but are not limited to, all tangible and intangible modes of communicating, conveying, or providing any information such as writings, letters, correspondence, communications, notes, witness statements, transcripts, letters, memoranda, drawings, graphs, charts, photographs, discs, computer recordings, electronic mail, spreadsheets, data, databases, and any other data compilations from which information can be obtained, as well as drafts and any non-identical copies.

14. "Einstein" means Albert Einstein Healthcare Network and its predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives.

15. "FTC" means the Federal Trade Commission, its employees, attorneys, accountants, economists, staff, consultants, experts, agents, and representatives, and specifically includes any third party representative or agent, wherever located, acting or purporting to act on behalf of or assisting the FTC in connection with the Merger Review, as defined below.

16. "Identify" shall mean (a) regarding an individual, the individual's full name, present address (or, if unknown, the last known address), telephone number, business address and telephone number, and place of employment and position; and (b) regarding an entity, the

name under which the entity customarily does business, its address, its telephone number, and, if known, the identity of the individual believed to have the most knowledge with respect to the matters in the relevant Request.

17. "Interviewed" or "interviews" means any communications, verbal or otherwise, not specifically identified in deposition transcripts or declarations by or on behalf of the Plaintiffs with any individual or entity other than Jefferson or Einstein regarding the Proposed Transaction.

18. "Investigation" means the FTC's investigation into the Transaction.

19. "Jefferson" means Thomas Jefferson University and its predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives.

20. "Litigation" means the case *Federal Trade Commission, et al. v. Thomas Jefferson University, et al.*, No. 2:20-cv-01113 (E.D. Pa.).

21. "Merger Review" means the FTC's and AG's investigative review of the Proposed Transaction, FTC File No. 181-0128, including but not limited to, this Litigation and the Administrative Proceeding.

22. "Narrow Network" means any commercial health insurance plan offered in an area in which any health providers located in that area are excluded from participation.

23. "Person" (or "person") means any natural person, corporation, association, organization, firm, company, partnership, joint venture, trust, estate, or other legal or governmental entity, whether state or federal, whether or not possessing a separate juristic existence.

24. "Greater Philadelphia Area," as used herein, means the following counties in Pennsylvania: Philadelphia, Bucks, Chester, Delaware, and Montgomery; and the following counties in New Jersey: Burlington, Camden, and Gloucester.

25. "Plaintiffs" (or "plaintiffs") means the Federal Trade Commission and the Commonwealth of Pennsylvania.

26. "Proposed Transaction" (or "Transaction"), as used herein, means the merger of Jefferson and Einstein pursuant to the System Integration Agreement entered on September 14, 2018 as described in the Complaint.

27. "Third Party" means any person other than the FTC, the Commonwealth of Pennsylvania, Jefferson, or Einstein.

28. "Tiered Network" means any commercial health insurance plan in which members pay different out-of-pocket expenses or access different benefits for different "in-network" health providers within the plan.

29. You" (or "you") or "Yours" (or "yours") means Independence Blue Cross, LLC, its domestic and foreign parents (including but not limited to Independence Health Group, Inc.), predecessors, divisions, subsidiaries, affiliates, partnerships, joint ventures, employees, attorneys, accountants, economists, staff, consultants, experts, agents, and representatives, and specifically includes any third party representative or agent, wherever located, acting or purporting to act on behalf of or assisting Independence Blue Cross in its involvement with the FTC's Investigation or the Litigation.

## DEPOSITION TOPICS

1. The Proposed Transaction, the Merger Review, the Administrative Proceeding, and the Litigation, including any efforts or actions taken by You to oppose, prevent, delay, or terminate the Proposed Transaction.

2. The Declaration, all statements and allegations contained therein, and all related communications exchanged by or on behalf of Paul Staudenmeier with the Plaintiffs, including any drafts of the Declaration.

3. Your commercial, Managed Medicaid, and Managed Medicare products, including any Narrow Network or Tiered Network products, offered since January 1, 2016, including the providers who are in the products and the prices, rates, and other terms for their participation.

4. The formation, strategy, and development of commercial networks You offer in the Greater Philadelphia Area, including the factors You consider in deciding which inpatient general acute care hospitals and rehabilitation facilities to include or exclude.

5. The healthcare facility preferences of employers, brokers, individual patients, or Your members who reside or work in, or physicians who practice in, any portion of the Greater Philadelphia Area.

6. The incentives and disincentives You provide healthcare providers (e.g., physicians) to refer patients to certain healthcare facilities in the Greater Philadelphia Area for care.

7. The performance, strengths, and weaknesses of healthcare providers in the Greater Philadelphia Area with respect to consideration for participation in value-based contracts with You.

8. Your discussions and negotiations with Jefferson and/or Einstein regarding participation in Your commercial health insurance products and value-based programs, including but not limited to any discussions regarding the potential termination of Jefferson's or Einstein's contract(s) with You.

9. The prices or rates healthcare providers in the Greater Philadelphia Area charge You for inpatient services, outpatient services, and Acute Rehab Services in Your commercial products, including changes in those prices over time.

10. The relationship between the prices You pay healthcare providers for inpatient services, outpatient services, or Acute Rehab Services in Your commercial products and the commercial health insurance premiums You charge employers and individuals.

11. The healthcare providers in the Greater Philadelphia Area that You view as substitutable with Jefferson (including its facilities) or Einstein (including its facilities) in connection with the formation of Your provider networks.

12. Your strategy and rationale for reclassifying Einstein Medical Center Philadelphia from an academic medical center to a high-end community hospital and reclassifying Einstein Medical Center Montgomery from a high-end community hospital to a standard community hospital.

13. Your termination of or threat to terminate any healthcare provider from a product or network in the Greater Philadelphia Area, including but not limited to, any termination of or threat to terminate Tower Health during Your contract negotiations with Tower Health in 2017.

14. Patient travel patterns and distances patients will travel in the Greater Philadelphia Area for inpatient services, outpatient services, or Acute Rehab Services, including any analyses of such patient travel patterns and distances.

15. Your assessment of the Acute Rehab Services that skilled nursing facilities ("SNFs") provide and Your discussions and negotiations with SNFs to provide Acute Rehab Services.

16. Your discussions with employers, brokers, individual patients, and Your members about network coverage for Acute Rehab Services in the health plans You offer.

17. Your plans and strategies for developing and selling commercial health insurance plans in the Greater Philadelphia Area, including, but not limited to, plans for risk sharing with health care providers, Narrow Network products, and Tiered Network products.

18. Your competitors or competition in the sale of commercial health insurance, Managed Medicaid, or Managed Medicare products in the Greater Philadelphia Area, including, but not limited to, competition between You and Health Partners Plan.

19. Your plans to acquire or control, through direct or indirect ownership interest or any other means, healthcare providers and physicians in the Greater Philadelphia Area, including but not limited to plans of Independence Health Group, Inc.

20. Your discussions with Jefferson, Main Line Health, and other providers about You contracting with the Delaware Valley Accountable Care Organization.

21. Your participation in the request for proposals issued by the Delaware Valley Accountable Care Organization to select a third party administrator for Jefferson's employee medical benefits plan, and Your efforts and strategies to retain Your role as the third party administrator for Jefferson's employee medical benefits.

22. The impact of the closure of Hahnemann University Hospital, St. Joseph's Hospital, and Mercy Catholic Medical Center-Mercy Philadelphia Campus on patient access and pricing for inpatient services, outpatient services, or Acute Rehab Services in the Greater Philadelphia Area.

23. The impact of the potential closure of Einstein on patient access and pricing for inpatient services, outpatient services, or Acute Rehab Services in the Greater Philadelphia Area.

24. Any proposed, discussed, or attempted merger, acquisition, affiliation, joint venture, or other potential transaction among You, Einstein, and any third party from January 1, 2015 to the present.

25. Any proposed, discussed, or attempted merger, acquisition, affiliation, joint venture, or other potential transaction between You and any hospital or hospital system in the Greater Philadelphia Area from January 1, 2017 to the present, including Einstein.

26. Your communications with any federal, state, or local government employee regarding any contemplated, potential, or actual merger, affiliation, joint venture, or other transaction with Einstein and any entity.