**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br>**and**<br>**COMMONWEALTH OF**<br>**PENNSYLVANIA**<br>          **Plaintiffs,**<br>**v.**<br>**THOMAS JEFFERSON UNIVERSITY and**<br>**ALBERT EINSTEIN HEALTHCARE**<br>**NETWORK**<br>          **Defendants** | **No. 2:20-cv-01113-GJP** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO QUASH OR MODIFY JEFFERSON HEALTH SYSTEM'S**
**DOCUMENT SUBPOENA AND 30(B)(6) DEPOSITION SUBPOENA**
**TO NON-PARTY, TANDIGM HEALTH, LLC**

Tandigm Health, LLC ("Tandigm") is the recipient of a third-party or non-party subpoena in this matter.  The subpoena, served by defendant Thomas Jefferson University ("Jefferson"), contains 19 requests for the production of documents, many of which are overbroad, burdensome, harassing, irrelevant or unnecessary (the "Document Subpoena").  (A copy of the Document Subpoena is attached as Exhibit A.)  Tandigm seeks to quash or modify the Document Subpoena, in light of the fact that Tandigm is not a party, many of the requests are not relevant to the merger review, and Tandigm should not be put to the expense and burden of producing information that it does not generate for its business.  In the alternative, Tandigm seeks a protective order.

Simultaneously with this motion, Tandigm has served responses and objections to Jefferson's Subpoena.  (A copy is attached as Exhibit B.)  Jefferson's counsel agreed to several

OMC\4843-6511-7375.v1-6/5/20

extensions of the time to object to the document requests, while counsel for Tandigm and Jefferson attempted to resolve Tandigm's concerns about the document requests.  The last such extension expires on June 4, 2020.

## Background

In 2018, the FTC and the Attorney General of Pennsylvania ("Plaintiffs") commenced an investigation of the proposed merger between Jefferson Health System ("Jefferson") and Albert Einstein Healthcare Network ("Einstein").  As part of that investigation, Plaintiffs requested an opportunity to interview one or more Tandigm employees.  Tandigm is a population health services organization that is ultimately owned by Independence Health Group.[1]  Tandigm did not instigate Plaintiff's investigation of the proposed merger and is not a party to the legal proceedings between Plaintiffs and Jefferson and Einstein.

On Tuesday, December 18, 2018, Tandigm presented Stanley J. Milavec for interviews by the Plaintiffs.  Mr. Milavec is Tandigm's Senior Vice President, Enterprise Services, General Counsel & Corporate Secretary.  The interview only covered what Tandigm does.  Plaintiffs did not question Mr Milavec concerning the Proposed Merger.  Following the interview of Mr. Milavec, Plaintiffs did not request any documents from Tandigm and did not seek a written statement from Mr. Milavec.

Plaintiffs did not interview anyone else at Tandigm besides Mr. Milavec, and they did not communicate with anyone at Tandigm other than Mr. Milavec.  Mr. Milavec did not receive directions or suggestions from other Tandigm employees or officers concerning the substance of the interview.

---

[1]  Independence Blue Cross is another, separate subsidiary of Independence Health Group.

On February 27, 2020, Plaintiffs filed an administrative complaint to have the

Commission declare the proposed merger anti-competitive.  Plaintiffs also filed complaint in the

Eastern District of Pennsylvania for a temporary restraining order and a preliminary injunction to

restrain the proposed merger pending the outcome of the administrative complaint.  (*FTC and*

*Commonwealth of Pennsylvania v. Thomas Jefferson University and Albert Einstein Healthcare*

*Network*, E.D.Pa. No 20-cv-1113, Dkt. 7) (the "Complaint").

Jefferson and Einstein believe that the proposed merger is not anti-competitive, that the

preliminary injunction should be denied, and that the merger should go forward regardless of the

administrative trial.

### Jefferson's Document Subpoena

On April 24, Jefferson served a third-party Document Subpoena on Independence,

containing 40 document requests.  In its cover letter, Jefferson stated:

> We understand that the current health care crisis may present substantial
> challenges for third parties, including IBC, responding to the subpoenas served on
> them.  Jefferson and Einstein will strive to minimize the burden and expense of
> compliance by the third parties, within the timetable set by the court for fact
> discovery.  Accordingly, once you have had an opportunity to review the requests
> for data and documents, we invite you to speak with us to discuss ways in which
> the subpoena might be clarified or potentially modified, consistent with Jefferson
> and Einstein's discovery needs.

(See p. 1 of Jefferson's April 24, 2020 cover letter, attached as Exhibit C.)  Notwithstanding the

invitation, Jefferson has been loath to narrow the scope of its document requests.  More

importantly, Jefferson appears to misunderstand what Tandigm does and, therefore, what

documents it may have.

Jefferson's document requests are written as if Tandigm were a competitor of Jefferson

or Einstein in the market for acute inpatient rehab services and skilled nursing services.  *See*

Document Requests Nos. 4, 10, 11, Exhibit A.  However, Tandigm does not provide acute

rehabilitation services and does not compete with Jefferson, Einstein, or other acute inpatient rehabilitation providers.

Tandigm administers capitation payments to a network of primary care physicians who have patients insured by Independence Blue Cross.  Any primary care physician in Independence's provider network may be imputed to Tandigm if they are willing to follow Tandigm's recommendations for preventive testing and care of their patients who are insured by Independence.  This includes testing for colon cancer, breast cancer and diabetes.  Such interventions improve patient care and reduce costs of treatment.  Primary care physicians who improve the quality of care for their patient population are eligible for quality improvement payments.  However, Tandigm does not administer or pay claims.  As a result, Tandigm has no influence on claims payment.

In the 2018 time-frame, at the request of the primary care physicians, Tandigm facilitated a compact between primary care physicians and cooperating specialists to improve patient care by reducing the wait-time for appointments with specialists and improving communications between primary care physicians and specialists.  The compact involves no fees or compensation.

More recently, Tandigm has developed a contractual relationship with certain specialists in a limited set of specialties in an effort to further refine quality and service expectations, with payment only for the time spent by such specialists meeting with representatives of Tandigm.

In keeping with its mission to improve care while lowering expense, Tandigm has a program of daily visits to the most seriously ill insureds in skilled nursing facilities.  In addition, Tandigm has a house calls program, which provides regular visits to seriously ill patients at home to improve their access to and coordination of care.  The goal of these visits is reducing

length of stays and addressing conditions that may lead to readmissions.  With the exception of these programs, Tandigm does not provide any care and does not know from what zip code a primary care physicians' patients come.  *See* Document Request No. 5.

Jefferson makes a number of requests concerning referrals.  *See* Document Requests Nos. 6, 7, 14, 15, 16, 17, and 18.  Tandigm does not refer patients to particular specialists or facilities, whether acute care inpatient rehab facilities, acute care hospitals, or skilled nursing facilities. Tandigm does not control referrals by primary care physicians.

Moreover, Tandigm does not analyze competition, market share and substitutability of acute rehabilitation providers, because Tandigm does not insure the patients of primary care physicians, does not refer patients, and does not direct individual referrals by primary care physicians.  *See* Document Request No. 4.  Primary care physicians and Tandigm respect the primacy of patient choice.  Nor does Tandigm track patients' travel patterns or analyze the service areas from which the primary care physicians draw their patients.  See Document Request No. 5.  Likewise, Tandigm does not track whether a primary care physician has been designated as a preferred provider by other healthcare providers, hospitals and health systems. *See* Document Request 19.

Jefferson perceives that acute inpatient rehab facilities and skilled nursing facilities are in the same market and therefore compete for the same patients.  *See* definition of "Acute Rehab Services," Exhibit A.  Tandigm's view, however, is that acute care inpatient rehab services and skilled nursing facilities are separate markets.  See Complaint, ¶ 49.  Whether a patient who has a diagnosis of stroke or head trauma or spinal injury goes to an acute care inpatient rehabilitation facility depends on whether the patient meets the eligibility criteria for admission.  If that same patient is not eligible for an acute care inpatient rehabilitation facility, she may go to a skilled

nursing facility if she is eligible for that level of care.  Diagnosis and eligibility are not the same, and Tandigm does not make either of those decisions.  The point is that, because Tandigm does not share Jefferson's view of the acute care rehab market, Tandigm does not generate documents in the normal course of business that support Jefferson's view.  *See* Document Request No. 10.

In *Saller v. QVC, Inc.*, 2016 U.S. Dist. LEXIS 82895, *6-9, the Court explained that, under Fed.R.Civ.P. 45(d)(3), the subpoenaing party must demonstrate that it seeks "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The burden shifts to the recipient of the subpoena to establish that Rule 45(d)(3) provides a basis to quash or modify the subpoena, *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. May 15, 2014), or that Rule 26(c) provides a basis for a protective order.  The court is required to quash or modify a subpoena that: (a) fails to allow a reasonable time to comply; or  (b) subjects a person to undue burden.

A party seeking a protective order bears the burden of showing that there is good cause to limit or foreclose discovery.  *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  In particular, when discovery is sought from a non-party, "[b]roader restrictions may be necessary to prevent a **non-party** from suffering harassment or inconvenience."  *Avago Techs. U.S., Inc. v. IPtronics, Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. Sept. 15, 2015), citing *Frank v. Honeywell Int'l, Inc.*, No. 15-mc-00172, 2015 U.S. Dist. LEXIS 106453, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015).  Thus, Courts have found blanket requests to a non-party for "all documents and communications referring or relating to" a particular subject to be impermissibly broad, as opposed to requests for specific categories of documents.  *Saller, supra,* at *10-*11.

In *Frank v. Honeywell Int'l, Inc.*, 2015 U.S. Dist. LEXIS 106453, \*11-13, 2015 WL

4770965, the Court explained that subpoenas to non-parties should not seek more documents

than the subpoenaing party genuinely needs:

> "A non-party may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45." *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-0620, 2012 U.S. Dist. LEXIS 12319, 2012 WL 298480, at \*3 (E.D. Pa. Jan. 31, 2012) (citation omitted).  …  If the subpoenaed **non-party** claims that disclosure would subject it to an undue burden under Rule 45(d)(3)(A), the Court considers several factors to determine whether the burden on the subpoenaed **non-party** is in fact undue, including: (1) relevance of the requested materials, (2) the party's need for the d**ocuments**, (3) the breadth of the request, (4) the time period covered by the request, (5) the particularity with which the **documents** are described, (6) the burden imposed, and (7) the recipient's status as a non-party. *See Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 13-mc-238, 2014 U.S. Dist. LEXIS 8857, 2014 WL 272088, at \*4 (E.D. Pa. Jan. 24, 2014).
>
> "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown." *Garden City*, 2014 U.S. Dist. LEXIS 8857, 2014 WL 272088, at \*4 (citing *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383 (E.D. Pa. 2013)).  Furthermore, a "court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on a non-party." *In re Domestic Drywall*, 300 F.R.D. at 239 … .[2]

The Court in *Frank v. Honeywell* determined that the requested documents were relevant but

unnecessary.  The subpoenaing party already had ample evidence to rehabilitate its expert

witness.

---

[2]  *Accord Frank Brunckhorst Co. v. Ihm*, No. 12-mc-0217, 2012 U.S. Dist. LEXIS 151816, 2012 WL 5250399, at \*5 (E.D. Pa. Oct. 23, 2012) ("In the case of nonparty deponents, courts recognize that '[d]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents.'"); *Grider v. Keystone Health Plan Cent., Inc.*, No. 05-mc-40, 2005 U.S. Dist. LEXIS 44069, 2005 WL 2030456, at \*7 (M.D. Pa. July 28, 2005) ("[I]n cases where a non-party is the subject of discovery requests, courts may impose broader restrictions, particularly where a non-party is requested to produce documents of another non-party.")

In this case, Tandigm believes it has no information that would be probative concerning the geographic and product markets at issue or the degree of competition.  Therefore, requiring Tandigm to comply with the Subpoena would be a useless, unnecessary and unproductive exercise.  It would also interfere with the normal duties of senior management whose documents Jefferson wants to be searched.  In addition, Tandigm does not believe that Jefferson's efforts to obtain information about Independence's business plans and strategies are relevant or appropriate, since Tandigm is not a competitor.

Counsel for Jefferson and Tandigm had two conversations concerning the requests.  On June 2, 2020, Jefferson's counsel wrote a letter to help direct Tandigm's search for documents, including names of custodians, search strings, and which requests would likely benefit from search strings and which would not.  (*See* letter of June 2, 2020, Exhibit D).  However, what Jefferson did not do was withdraw or modify any of its requests.

Even if Jefferson's document requests are modified or restricted, Tandigm requests reimbursement of expenses it incurs in responding to them.  Expenses may be allowed if the non-party recipient requests reimbursement before complying.  *McCabe v. Ernst & Young, LLP.*, 221 F.R.D. 423, 427, 2004 U.S. Dist. LEXIS 9310, *15-16, and cases cited therein.

Respectfully submitted,

/s/ Richard P. Limburg
Thomas A. Leonard (ID. #14781)
Richard P. Limburg (ID. #39598)
Obermayer Rebmann Maxwell
& Hippel LLP
Centre Square West
1500 Market Street, 34th Fl.
Philadelphia, PA  19102
Attorneys for Tandigm Health, LLC

OMC\4843-6511-7375.v1-6/5/20