IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION et al., *Plaintiffs,* v. THOMAS JEFFERSON UNIVERSITY et al., *Defendants.* | CIVIL ACTION NO. 20-01113 |

**PAPPERT, J.**                                                                                               June 5, 2020

### MEMORANDUM

The Federal Trade Commission and Commonwealth of Pennsylvania filed this antitrust action seeking a preliminary injunction to stop a proposed hospital merger between Thomas Jefferson University and Albert Einstein Healthcare Network. Einstein served Nonparty Shannondell, Inc. with a subpoena for the production of documents. Shannondell filed a Third-Party Motion to Modify and/or Quash Subpoenas, which the FTC, the Commonwealth and Einstein oppose. After considering the arguments of the parties and nonparty Shannondell, the Court grants the Motion in part and denies it in part. Shannondell must comply with the subpoenas by June 26.

I

Shannondell is a Pennsylvania corporation serving approximately 1400 elderly residents in care facilities located in Montgomery County, Pennsylvania. *See* (Mot. to Quash 2–3, ECF No. 57; Freed Decl. ¶ 5, Ex. A., ECF No. 57-1). Specifically, Shannondell operates (1) a continuing care retirement community with independent

living units; (2) a personal care home, including a dementia unit; and (3) a skilled nursing facility. *See* (Mot. to Quash 2; Freed Decl. ¶ 5).

On March 30, 2020, Defendant Einstein served Shannondell with a subpoena for documents that required production by April 20, 2020. *See* (Einstein Subpoena, Ex. A, at 2, ECF No. 56-1). The FTC also served Shannondell with a "piggy-back" subpoena requesting the same documents. *See* (FTC Subpoena, Ex. A, at 23, ECF No. 56-1.) The Einstein subpoena lists nineteen requests for data and documents related to: any transactions or competition with Jefferson or Einstein (RFP Nos. 2, 5, 12); Shannondell's rehabilitation facilities and personnel (RFP Nos. 1, 3); the relevant geographic data from which Shannondell draws its patients (RFP Nos. 4, 10); the rehabilitation services it offers (RFP Nos. 6, 8); competition regarding rehabilitation services (RFP Nos. 7, 9, 19); and data about patient location, demographics, health plan participation and reimbursement, and claims reimbursement (RFP Nos. 11, 13–18). *See* (Einstein Subpoena; Loney Decl. ¶ 3, ECF No. 69).

Shannondell filed a Motion to Quash or Modify the Subpoenas, arguing that (1) the documents requested are beyond the scope of permissible discovery; (2) the documents sought include confidential trade secrets and commercial information; and (3) the subpoenas failed to provide a reasonable time to comply. *See generally* (Mot. to Quash).

II

"A subpoena under Rule 45 must fall within the scope of proper discovery under [Federal Rule of Civil Procedure] 26(b)(1)." *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (citation and internal quotation marks

omitted). Federal Rule of Civil Procedure 26, in turn, allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"The serve-and-volley of the federal discovery rules govern the resolution of a motion to quash." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) (internal quotation marks omitted) (quoting *Mycogen Plant Sci., Inc. v. Monsanto Co.,* 164 F.R.D. 623, 625 (E.D. Pa. 1996)). The subpoenaing party must first show that its requests are relevant within the meaning of Rule 26(b)(1). *Id.* (citing *Mycogen*, 164 F.R.D. at 625–26). The burden then shifts to the nonparty to show that disclosure of the information is protected under Rule 45(d)(3)(A) or (B). *Id.* (citing *Mycogen*, 164 F.R.D. at 626). If the subpoenaed nonparty claims protection under Rule 45(d)(3)(B)[1] or asserts the disclosure subjects it to an undue burden under Rule 45(d)(3)(A),[2] the nonparty must show the disclosure will cause a "clearly defined and serious injury." *In re Domestic Drywall*, 300 F.R.D. at 239 (quoting *City of St. Petersburg v. Total Containment, Inc.*, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2000)). "This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order." *Frank Brunckhorst Co. v. Ihm*, 2012 WL 5250399, at *4 (E.D. Pa. Oct. 23, 2012) (internal quotation marks and citations omitted).

---

[1] A court may quash or modify a subpoena under Rule 45(d)(3)(B)(i) if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).
[2] In relevant part, Rule 45(d)(3)(A) requires a court to quash or modify a subpoena that "fails to allow a reasonable time to comply" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i), (iv).

If the subpoenaed nonparty meets its burden of showing a "clearly defined and serious injury" for a claim of undue burden under Rule 45(d)(3)(A), the Court conducts a balancing test by weighing the subpoenaing party's interest in disclosure against the nonparty's interest in nondisclosure to determine whether the burden is "undue." *In re Domestic Drywall*, 300 F.R.D. at 239. An additional step is required if the nonparty demonstrates a "clearly defined and serious injury" under Rule 45(d)(3)(B); the burden then shifts to the subpoenaing party to show "a substantial need for the testimony or material that cannot be otherwise met without undue hardship" and that the nonparty "will be reasonably compensated." *Id.* (citing Fed. R. Civ. P. 45(d)(3)(C)(i)–(ii)).

In applying Rules 26 and 45, the Court balances several factors, including: (1) relevance, (2) need, (3) confidentiality, and (4) harm. *First Sealord Sur.*, 918 F. Supp. 2d at 383. A "court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] non-party." *In re Domestic Drywall*, 300 F.R.D. at 239 (internal quotation marks and citation omitted).

III

A

Shannondell first contends that the subpoenas seek information that is not relevant because Shannondell "is not a direct competitor of Jefferson or Einstein." (Mot. to Quash 3.) In making this argument, Shannondell relies on the Complaint's allegation that "subacute rehabilitation services provided at skilled nursing facilities are not included in the market for inpatient acute rehabilitation services." (Compl. ¶ 49, ECF No. 7.) The information that the parties seek from Shannondell, however, is relevant to Einstein's rebuttal of Plaintiffs' claims. Plaintiffs' allegations arise under

the Clayton Act, which prohibits mergers and acquisitions where "the effect of such acquisition may be substantially to lessen competition, or tend to create a monopoly." 15 U.S.C. § 18.  To establish a *prima facie* case, the FTC and Commonwealth must "(1) propose the proper relevant market and (2) show that the effect of the merger in that market is likely to be anticompetitive." *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337–38 (3d Cir. 2016).  If Plaintiffs establish their *prima facie* case, the burden shifts to Jefferson and Einstein to rebut it.  *See id.* at 337.

According to Plaintiffs' allegations, the proposed merger between Jefferson and Einstein violates the Clayton Act because it purportedly reduces competition in distinct markets, including: (1) the market for inpatient general acute care hospital services in the "Northern Philadelphia Area" and "Montgomery Area," and (2) the market for inpatient acute rehabilitation services in the "Philadelphia Area."  *See* (Einstein Resp. 8, ECF No. 67; Compl. ¶¶ 50, 52, 56).  The discovery requested from Shannondell is relevant to Einstein's defense concerning whether Shannondell, in fact, exists as a competitor for acute rehabilitation services in the proper relevant market.  *See* (Einstein Resp. 8).  Indeed, because Einstein contends that Shannondell's services compete with those of Einstein and Jefferson, the subpoena requests are relevant to evaluating both the product and geographic market.  *See* (*id.*)  Moreover, Einstein has demonstrated a compelling need for this information, as it cannot be acquired from any of the parties themselves.  *See* (Einstein Resp. 8).

Even if Shannondell could establish a "clearly defined and serious injury" by complying with the subpoenas, the relevance and need for the information weigh in favor of the subpoenaing parties.  And as for Shannondell's concerns about

confidentiality and harm, the Court's Stipulated Protective Order serves as an adequate safeguard.

B

Shannondell asserts that compliance with the subpoenas imposes an undue burden and creates a serious injury because the requests require disclosure of "highly confidential and trade secret information that [would] irreparably damage Shannondell's competitive position in the relevant geographic market." (Mot. to Quash 16.) Again, as Einstein, the FTC and the Commonwealth correctly point out, the Court's Stipulated Protective Order limits the disclosure of "confidential information" and further restricts the disclosure of material designated as "highly confidential." *See* (Stipulated Protective Order ¶¶ 1–2, 9–11, ECF No. 55).

When examining whether "a party will be harmed from disclosure," the Court "analyz[es] the injury that may result under an appropriate protective order." *Procter & Gamble Co. v. Be Well Marketing, Inc.*, 2013 WL 152801, at *2 (M.D. Pa. Jan. 15, 2013) (citing *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985)). Here, the Stipulated Protective Order allows nonparties like Shannondell to safeguard their confidential information to prevent unauthorized disclosure, subject to the Protective Order's terms, both during and after the litigation.

C

Shannondell alternatively argues that the Court must quash the subpoenas on the ground that they "fail[] to allow a reasonable time to comply." (Mot. to Quash 11); *see* Fed. R. Civ. P. 45(d)(3)(A)(i). After being served with the subpoenas on March 30, 2020, Shannondell's initial deadline for production was April 20, 2020, which the

6

parties later extended to May 15, 2020. *See* (Loney Decl. ¶ 7; FTC Resp. 5, ECF No. 64). The FTC and Commonwealth then offered to extend the production deadline to June 15, 2020. *See* (FTC Response 5). Shannondell now seeks an additional extension of at least ninety days from the date when it filed its Motion. *See* (Mot. to Quash 12).

What is considered a "reasonable time to comply" with a subpoena is a flexible standard, but courts generally "consider fourteen days from the date of service presumptively reasonable." *In re Keebaugh*, 2019 WL 5802703, at *2 (E.D. Pa. Nov. 6, 2019) (citing *Grant v. Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 2011 WL 5429005, at *7 (E.D. Pa. Nov. 7, 2011)). Here, Einstein and the FTC initially allotted twenty-one days from the date of service for compliance, followed by a twenty-five-day extension. This compliance period is presumptively reasonable.

The Court is, however, mindful that Shannondell—which operates as a continuing care retirement community, personal care home and skilled nursing facility—is currently serving a population of residents considered to be "the most vulnerable and . . . the highest risk of being affected by COVID-19." *See* (Freed Decl. ¶ 8). Moreover, due to staffing shortages from illness or caring for family members, the Vice President of Health Services at Shannondell represents that the primary employee who oversees the medical records department is currently serving as a nurse's aide to meet the needs of residents. *See* (*id.* ¶ 13). Therefore, rather than mandating immediate compliance with the subpoenas, the Court requires that Shannondell comply with the production requests on or before Friday, June 26, 2020. This extension accommodates Shannondell's request for additional time without interfering with the

Court's fact discovery deadline of July 20, 2020.  *See* (Stipulated Scheduling Order, ECF No. 54).

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.