IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION et al., *Plaintiffs,* v. THOMAS JEFFERSON UNIVERSITY et al., *Defendants.* | CIVIL ACTION NO. 20-01113 |

## ORDER

**AND NOW**, this 9th day of June 2020, upon consideration of Nonparty Tower Health's Motion for a Protective Order and Notice to Maintain Highly Confidential Designation (ECF No. 60), the Federal Trade Commission and Commonwealth of Pennsylvania's Response (ECF No. 68), and Albert Einstein Healthcare Network and Thomas Jefferson University's Response (ECF No. 70), it is hereby **ORDERED** that the Motion in **DENIED**.

I

Tower Health is a nonprofit corporation based in West Reading, Pennsylvania that operates six general acute care hospitals in southeastern Pennsylvania. *See* (Tower Health Mot. 2, ECF No. 60). Prior to the FTC and Commonwealth filing this action seeking a preliminary injunction to block the proposed merger between Defendants, Plaintiffs conducted a lengthy investigation and gathered discovery from several third parties. *See* (Defs.' Resp. 2, ECF No. 70). During that investigation, Tower Health, through one of its employees, submitted a Declaration to the FTC. *See* (Tower Health Mot. 2). Tower Health now seeks to designate the Declarant's name and

1

identifying information as "Highly Confidential" and further asks the Court for a "full protective order" to permanently redact Declarant's name and ensure that the Declarant's identifying information is not "disclosed, disseminated, released, exchanged to or with any party in this proceeding or used, referenced, quoted, or lodged as evidence of any purpose." *See* (*id*. at 2–3). According to Tower Health, the failure to do so would cause "irreparable damage and harm to the Declarant's reputation and ability to work in the local and regional healthcare markets." (*Id.* at 2.)

The FTC and Commonwealth of Pennsylvania filed a Response indicating that Plaintiffs and Tower Health came to a joint agreement that would designate the Declarant's name and identifying information as "Highly Confidential" pursuant to the Stipulated Protective Order. *See* (Stipulated Proposed Order, ECF No. 68-1). Einstein and Jefferson also filed a Response opposing both the Motion and the joint agreement proposed by Plaintiffs and Tower Health. *See generally* (Defs.' Resp., ECF No. 70).

II

Federal Rule of Civil Procedure 26(c) provides that a nonparty may move for a protective order, and "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1).[1] "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or

---

[1] Rule 26(c)(1) also requires that the motion include a "certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1); *see* E.D. Pa. Local Rule 26.1(f). Although Tower Health failed to adhere to this requirement, the Court will consider the Motion on the merits.

articulated reasoning, do not support a good cause showing." *Id.* at 786 (internal quotation marks omitted) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). In deciding whether good cause exists, the court considers several factors, which are neither mandatory nor exhaustive, including: "(1) whether disclosure will violate any privacy interest; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *See Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787–91).

### III

A Stipulated Protective Order already exists in this case. *See generally* (ECF No. 55). As part of that Protective Order, the identity of a third party who submitted information to the Plaintiffs during the investigation that preceded this litigation is treated as "Confidential Information" upon request. *See* (*id.* ¶ 7). Confidential Information may only be disclosed to the Court and its personnel; Plaintiffs; courts having appellate jurisdiction over this action; counsel for the parties; consulting experts; court reporters; document vendors; and a limited number of other individuals. *See* (*id.* ¶ 10). Defendants' employees, however, may not view "Confidential Information" unless "counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of this litigation" and provides advance written

notice to the opposing party at least seven days prior to disclosure, with the producing party having the opportunity to challenge the disclosure within that period. *See* (*id.*) Information designated as "Highly Confidential," however, may not be viewed by any of Defendants' employees. *See* (*id.* ¶ 11).

In balancing the *Pansy* factors, Tower Health has not shown that good cause exists to modify the protections already in place. Tower Health's argument relies primarily on the first and third *Pansy* factors; it contends that disclosure would violate the Declarant's privacy interests and cause embarrassment because the Declarant's identity is well-known in the health-care industry, such that disclosure would lead to negative consequences for the individual's career. *See* (Tower Health Mot. 4). Tower Health, however, fails to articulate how disclosure would lead to such results, considering it provides the Court with no specific information about the statements the Declarant made. Nor does Tower Health illustrate the harms the Declarant will purportedly suffer other than through counsel's conclusory assertion that disclosure would damage the Declarant's "reputation and ability to work in the local and regional healthcare markets." (Tower Health Mot. 2.) When a party or nonparty seeks a protective order to prevent embarrassment, the movant "must demonstrate that the embarrassment will be particularly serious." *Pansy*, 23 F.3d at 787 (quoting *Cipollone*, 785 F.2d at 1121). Tower Health has not met that burden.

Tower Health also argues that disclosure of the Declarant's name and identifying information "serves no public interest or proper purpose in the present matter and would provide no information important to public health and safety." (Tower Health Mot. 4.) Contrary to Tower Health's assertion, this case involves a

4

proposed hospital merger that has already generated public interest.  Given the nature of the proposed merger, the facts relevant to this litigation will, to some degree, involve information important to public health.  Moreover, the Declarant's identity serves a legitimate purpose in this case and not designating the individual's identity as "Highly Confidential" promotes fairness between the parties.  Indeed, Defendants may seek to undermine the Declarant's assertions based in part on the fact that the Declarant worked for one of the parties for several years.  *See* (Tower Health Mot. 4; Defs.' Resp. 10).  The second, fourth, fifth and seventh *Pansy* factors are thus either neutral or weigh against the Court imposing additional protections.

Finally, with regard to the sixth factor—whether the party benefitting from the order of confidentiality is a public entity or official—the Declarant's status as a private individual may weigh in favor of additional protections.  But the Court places little weight on this factor because the Stipulated Protective Order already allows the Declarant's name and identity to be "treated as "Confidential Information . . . where the submitter has requested such confidential treatment."  *See* (Stipulated Protective Order ¶ 7).

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
