IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION et al., *Plaintiffs,* v. THOMAS JEFFERSON UNIVERSITY et al., *Defendants.* | CIVIL ACTION NO. 20-01113 |

**PAPPERT, J.**                                                                                                   **July 29, 2020**

## **MEMORANDUM**

The Federal Trade Commission and Commonwealth of Pennsylvania filed this antitrust action seeking a preliminary injunction to stop a proposed hospital merger between Thomas Jefferson University and Albert Einstein Healthcare Network. Defendants Jefferson and Einstein served Nonparty Kindred Healthcare, LLC with a subpoena for the production of documents. Kindred filed a Third-Party Motion to Quash or Modify the Subpoena (ECF No. 106), which Jefferson and Einstein oppose (ECF No. 112). After considering everyone's arguments, the Court grants the Motion in part and denies it in part. Jefferson and Einstein shall modify the subpoena's first three document requests to include temporal limitations, and Kindred must comply with the requests by Friday, August 7, 2020.

I

Kindred is a "post-acute healthcare services company that operates long-term acute-care hospitals and provides rehabilitation services" nationwide, including in the

Philadelphia region. *See* (Mot. to Quash 3, ECF No. 106-2).[1] Kindred employs 38,300 employees in 45 states, and its headquarters and support center are located in Louisville, Kentucky. (*Id.*) Relevant to this lawsuit, Kindred is a minority member in a joint venture that owns St. Mary Rehabilitation Hospital—a healthcare facility in Langhorne, Pennsylvania that provides rehabilitation services. *See* (*id.*) Kindred employs the Chief Executive Officer of St. Mary and manages its rehabilitation facility. *See* (Defs.' Resp. 3, ECF No. 112; Klein Decl. ¶ 6, ECF No. 112-3). Kindred also partners with Crozer-Keystone Health System to manage the Regional Rehabilitation Center at Taylor Hospital. *See* (Defs.' Resp. 3; Klein Decl. ¶ 6). According to Defendants, these facilities compete with Jefferson and Einstein's facilities in Philadelphia and the surrounding region. *See* (Defs.' Resp. 3).

After the close of business on July 2, 2020, Jefferson and Einstein served Kindred with a subpoena for documents that required production by July 10, 2020. *See* (Mot to Quash 4; Subpoena, Ex. B, at 2, ECF No. 106-4). The subpoena listed six requests for data and documents related to: the proposed merger between Jefferson and Einstein (RFP No. 1); the cost, strategy and rationale for opening or expanding rehabilitation services for St. Mary or Crozer (RFP No. 2); analysis of acute rehabilitation services competition in the Philadelphia area (RFP No. 3); referral and/or denial logs for St. Mary and Crozer (RFP No. 4); Medicare reimbursement changes (RFP No. 5); and entry or expansion of rehabilitation facilities in Philadelphia. (RFP No. 6). *See* (Subpoena 15–16).

---

[1] Citations refer to the ECF pagination system.

On July 10, 2020, Kindred filed a Motion to Quash or Modify the Subpoena, arguing that the subpoena (1) demands compliance outside the 100 miles a subpoena may command a nonparty to travel to comply with it; (2) requests the production of documents in a manner that is overbroad and unduly burdensome; and (3) fails to provide a reasonable time to comply. *See generally* (Mot. to Quash). The Court addresses each argument in turn.

II

Kindred argues that the Court must quash the subpoena because it demands compliance in Philadelphia, which is more than 600 miles from Kindred's headquarters in Louisville and outside of the 100 miles a subpoena may command a nonparty to travel to comply with it. (Mot. to Quash 2, 6.) In response, Jefferson and Einstein contend that the subpoena properly compelled Kindred to produce documents in Philadelphia because Kindred regularly transacts business in the Philadelphia region. *See* (Defs.' Resp. 8).

Federal Rule of Civil Procedure 45 places "geographical limitations on the reach of a court's subpoena power and prescribes guidance for the court to follow when it considers subpoenas which transgress these geographic boundaries." *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 2017 WL 1471491, at *2 (M.D. Pa. Apr. 25, 2017). On a timely motion, a court must either quash or modify a subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A)(ii). Rule 45(c)(2)(A), in turn, states that a subpoena may command the production of documents, electronically stored information or tangible things at a place within 100 miles of where the person (1) resides, (2) is employed or (3) regularly

transacts business in person.  Fed. R. Civ. P. 45(c)(2)(A).  *Compare Audi of Am.*, 2017 WL 1471491, at *3 (granting nonparty's motion to quash subpoena where he lived and worked beyond the 100-mile territorial limit and his sole contact with district was attendance at annual board of directors meeting), *with Westmore Equities, LLC v. Village of Coulterville*, 2016 WL 695896, at *2 (S.D. Ill. Feb. 22, 2016) (denying motion to quash where the nonparty bank had branch locations within 100 miles of the place of compliance).

In this case, Kindred is headquartered and maintains its support center in Louisville, nearly 600 miles from Philadelphia.  (Mot. to Quash 2.)  Yet Kindred also conducts business in Philadelphia and the surrounding area.  Specifically, Kindred owns a minority of St. Mary, employs St. Mary's Chief Executive Officer and manages its rehab facility in Langhorne, Pennsylvania.  (Defs.' Resp. 3; Klein Decl. ¶ 6.)  Kindred also partners with Crozer to manage its Regional Rehabilitation Center at Taylor Hospital.  *See* (Klein Decl. ¶ 6).  And as Jefferson and Einstein also point out, Kindred owns and operates Kindred Hospital – Philadelphia, a transitional care hospital in Philadelphia.  (Defs.' Resp. 3.)  Kindred regularly transacts business within 100 miles of Philadelphia and there is no basis to quash the subpoena under Rule 45(d)(3)(A)(ii).

### III

### A

Kindred next argues that the Court should quash the subpoena because it is overbroad and unduly burdensome.  *See* (Mot. to Quash 7–9).  "A subpoena under Rule 45 must fall within the scope of proper discovery under [Federal Rule of Civil Procedure] 26(b)(1)."  *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp.

2d 362, 382 (E.D. Pa. 2013) (citation and internal quotation marks omitted).  Rule 26, in turn, allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

"The serve-and-volley of the federal discovery rules govern the resolution of a motion to quash." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) (internal quotation marks omitted) (quoting *Mycogen Plant Sci., Inc. v. Monsanto Co.,* 164 F.R.D. 623, 625 (E.D. Pa. 1996)).  The subpoenaing party must first show that its requests are relevant within the meaning of Rule 26(b)(1).  *Id.* (citing *Mycogen*, 164 F.R.D. at 625–26).  The burden then shifts to the nonparty to show that disclosure of the information is protected under Rule 45(d)(3)(A).  *Id.* (citing *Mycogen*, 164 F.R.D. at 626).  If the subpoenaed nonparty asserts that the disclosure subjects it to an undue burden under Rule 45(d)(3)(A), the nonparty must show the disclosure will cause a "clearly defined and serious injury."  *Id.* (quoting *City of St. Petersburg v. Total Containment, Inc.*, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2000)).  "This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order."  *Frank Brunckhorst Co. v. Ihm*, 2012 WL 5250399, at *4 (E.D. Pa. Oct. 23, 2012) (internal quotation marks and citation omitted).

If the subpoenaed nonparty meets its burden of showing a "clearly defined and serious injury," the Court conducts a balancing test by weighing the subpoenaing party's interest in disclosure against the nonparty's interest in nondisclosure to determine whether the burden is "undue."  *In re Domestic Drywall*, 300 F.R.D. at 239. In applying Rules 26 and 45, the Court balances several factors, including: (1)

relevance, (2) need, (3) confidentiality, and (4) harm. *First Sealord Sur.*, 918 F. Supp. 2d at 383. A "court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] non-party." *In re Domestic Drywall*, 300 F.R.D. at 239 (internal quotation marks and citation omitted).

B

Kindred argues that the Court should quash the subpoena because the "blanket requests" are unduly broad and impose an "impermissible burden" on a nonparty who has only a minority interest in St. Mary and Crozer. *See* (Mot. to Quash 7–8). Although Kindred does not contest the relevance of the requested documents, it argues that Jefferson and Einstein have shown no need for them because St. Mary and Crozer could produce the materials. *See* (*id.* at 8). Jefferson and Einstein, in response, argue that the subpoena is narrowly tailored to information within Kindred's custody. *See* (Defs.' Resp. 10–11).

Jefferson and Einstein's subpoena requests documents from the following six categories: (1) documents related to the proposed merger between Jefferson and Einstein; (2) documents sufficient to show the time, cost, rationale and strategy for expanding rehab facilities in Philadelphia; (3) documents showing how Kindred analyzes competition for rehabilitation services in Philadelphia; (4) referral and/or denial logs for St. Mary or Crozer from January 1, 2016 to present; (5) documents regarding Medicare reimbursement changes from January 1, 2015 to present; and (6) documents analyzing the entry of rehabilitation facilities by other providers in Philadelphia from January 1, 2016 to present. *See* (Subpoena 15–16). Kindred notes that not all of the requests include temporal limitations, thereby creating an

impermissible blanket request.  *See* (Mot. to Quash 8).  Indeed, the first three requests for production include no cut-off dates.  "To establish undue burden, the movant must show that compliance with the subpoena would be unreasonable and oppressive." *Owens v. QVC*, 221 F.R.D. 430, 432 (E.D. Pa. 2004) (quotation omitted).  The burden to do so is "particularly heavy."  *Frank Brunckhorst Co.*, 2012 WL 5250399, at *4 (internal quotation marks and citation omitted).  Other than the broad temporal scope of the first three requests for production, Kindred has not shown that compliance with the subpoena would be unreasonable or subject it to an undue burden.  Jefferson and Einstein shall accordingly modify the first three requests of the subpoena by Friday, July 31, 2020 to include reasonable temporal limitations.

      Kindred also argues that Jefferson and Einstein have shown no need for any of the requested documents because Defendants have already served subpoenas on both St. Mary and Crozer.  (Mot. to Quash 8.)  According to Kindred, St. Mary and Crozer "will be producing any potential documents Defendants would need from Kindred." (*Id.*)  Jefferson and Einstein, however, represent that "none of the documents [they] have sought from Kindred have been provided by any other third party."  (Defs.' Resp. 10.)  Moreover, Crozer represented that referral and/or denial logs may be in Kindred's possession, and St. Mary indicated that Kindred may have documents related to Medicare reimbursement changes and documents concerning the construction of St. Mary.  *See* (Klein Decl. ¶¶ 6–7).

      Even if Kindred could establish a "clearly defined and serious injury," the balance of factors—relevance, need, confidentiality, and harm—weigh in favor of Jefferson and Einstein.  *See First Sealord Sur.*, 918 F. Supp. 2d at 383.  The requested

documents are relevant to Jefferson and Einstein's defense and the Defendants have shown a need for the material because neither St. Mary or Crozer have produced the requested documents. Kindred has not demonstrated any concrete harm nor has it raised confidentiality concerns.

IV

Finally, Kindred contends that the Court should quash the subpoena because it failed to provide a reasonable time to comply. (Mot. to Quash 6–7.) Under Federal Rule of Civil Procedure 45(d)(3)(A)(i), a court must quash or modify a subpoena that "fails to allow a reasonable time to comply." What is considered a "reasonable time to comply" is a flexible standard, and courts generally "consider fourteen days from the date of service presumptively reasonable." *In re Keebaugh*, 2019 WL 5802703, at *2 (E.D. Pa. Nov. 6, 2019) (citing *Grant v. Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 2011 WL 5429005, at *7 (E.D. Pa. Nov. 7, 2011)).

The subpoena that Kindred received after the close of business on July 2, 2020 required compliance by July 10, 2020, falling short of the presumptively reasonable fourteen-day period. (Subpoena 2.) Despite this short turnaround time, Jefferson and Einstein represent that they expressed a willingness to extend the compliance deadline within the fact discovery cut-off date of July 20, 2020. *See* (Defs.' Resp. 7; Klein Decl. ¶ 4). According to Jefferson and Einstein, Kindred instead filed its Motion to Quash, which had the effect of Defendants not being able to use any responsive documents during the depositions of St. Mary or Crozer. *See* (Defs.' Resp. 7). Although Jefferson and Einstein should have initially provided Kindred more time to respond, the Court

8

will not quash the subpoena on this ground, but will instead extend the date of compliance to on or before Friday, August 7, 2020.

      An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
