**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

FEDERAL TRADE COMMISSION and

COMMONWEALTH OF PENNSYLVANIA,

Plaintiffs,

v.

THOMAS JEFFERSON UNIVERSITY and

ALBERT EINSTEIN HEALTHCARE NETWORK,

Defendants.

Civil Action No. 20-01113

**DEFENDANTS THOMAS JEFFERSON UNIVERSITY AND ALBERT EINSTEIN HEALTHCARE NETWORK'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY OF CHRISTINE HAMMER**

# TABLE OF CONTENTS

BACKGROUND ..... 1

I. Scope of the Hammer Expert Report and Rebuttal Expert Report ..... 2

A. Ms. Hammer's Prong 1 Analysis ..... 3

B. Ms. Hammer's Prong 2 Analysis ..... 4

II. Proposed Stipulation ..... 5

ARGUMENT ..... 6

I. Ms. Hammer's Expert Opinion and Accompanying Analysis on Ms. Hammer's Prongs 1 and 2 of the Failing Firm Assignment Are Not Relevant. ..... 6

II. Ms. Hammer's Conclusions and Related Analysis on Ms. Hammer's Prong 2 Should Also Be Excluded Because They Are Not Helpful. ..... 9

A. Ms. Hammer is not Qualified to Testify on Bankruptcy Related Issues ..... 10

B. Ms. Hammer's Testimony on Prong 2 Is Not Helpful ..... 10

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berckeley Inv. Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006)....................10

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)....................7, 8, 9

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995)....................7

*In re Diet Drugs*,
No. MDL 1203, 2001 WL 454586 (E.D. Pa. Feb. 1, 2001)....................11

*Schneider ex rel. Estate of Schneider v. Fried*,
320 F.3d 396 (3d Cir. 2003)....................7

*Ferris v. Pa. Fed'n Brotherhood of Maint. of Way Emps.*,
153 F. Supp. 2d 736 (E.D. Pa. 2001)....................9

*Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*,
No. CV 17-2206, 2020 WL 5095499 (E.D. Pa. Aug. 28, 2020)....................7

*JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*,
No. Civ. A. 97-cv-0652, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998)....................9

*King v. TJX Cos., Inc.*,
No. CV 15-5642, 2017 WL 11552119 (E.D. Pa. Apr. 10, 2017)....................8

*Lasorsa v. Showboat: The Mardi Gras Casino*,
No. CV 07-4321 JBS/JS, 2009 WL 2929234 (D.N.J. Sept. 9, 2009)....................9

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y 2004)....................11

*United States v. Kahn*,
711 F. Supp. 2d 9 (D.D.C. 2010)....................8

*Wichterman v. City of Philadelphia*,
No. CV 16-5796, 2019 WL 2568340 (E.D. Pa. June 20, 2019)....................10

**Other Authorities**

Fed. R. Evid. 401....................7, 9

Fed. R. Evid. 402 .......................................................................................................................7

Fed. R. Evid. 702 ..................................................................................................................7, 11

Fed. R. Evid. 704 .....................................................................................................................10

Pursuant to Local Rule 7.1 and the *Policies and Procedures of the Honorable Gerald J. Pappert* § II.D.3, Defendants Thomas Jefferson University ("Jefferson") and Albert Einstein Healthcare Network ("Einstein") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to exclude testimony of Christine Hammer.[1]

**BACKGROUND**

Plaintiffs Federal Trade Commission ("FTC") and the Commonwealth of Pennsylvania ("OAG") (together, "Plaintiffs") have proffered Ms. Hammer as an expert to testify at the hearing. According to Ms. Hammer's Expert Reports, a large portion of her testimony will focus on two facially irrelevant aspects of whether Einstein qualifies as a "failing firm" – specifically, whether Einstein has the ability to meet certain financial obligations for the next fiscal year and whether Einstein has considered initiating, or initiated, reorganization under Chapter 11 of the Bankruptcy Act. *See* Hammer Report ¶ 153. There is no dispute amongst the parties on either of these issues. Indeed, Defendants have offered to stipulate to these facts as a way to avoid the inefficiency of unnecessary and irrelevant testimony at the hearing.

Plaintiffs apparently agree that these facts are not in dispute, yet they have refused to agree to limit Ms. Hammer's testimony at the hearing to the issues that remain in dispute. To the extent Plaintiffs seek to introduce Ms. Hammer's assertions or analysis on either of these undisputed factual issues, such testimony should be excluded as irrelevant and not helpful to the trier of fact. Ms. Hammer's testimony regarding whether Einstein has considered initiating, or initiated,

[1] In particular, Defendants seek to exclude any testimony related to paragraphs 145 through 217 in the July 23, 2020 Expert Report of Christine M. Hammer ("Hammer Report") and paragraphs 75 through 86 in the August 20, 2020 Expert Rebuttal Report of Christine M. Hammer ("Hammer Rebuttal Report"), as well as any associated exhibits, tables, or other supporting materials.

reorganization under Chapter 11 of the Bankruptcy Act should also be excluded for the independent reason that Ms. Hammer does not have the requisite expertise in bankruptcy involving health care systems and because Ms. Hammer did not apply any expert methodology or analysis in reaching her conclusion.

## I. Scope of the Hammer Expert Report and Rebuttal Expert Report

A review of the Hammer Report reveals that she intends to offer opinions in two distinct areas: (1) "what, if any, cost savings claimed by Defendants are cognizable efficiencies under the Horizontal Merger Guidelines (Hammer Report ¶ 7(a) ("Efficiencies Assignment"); and (2) "whether Einstein qualifies as a 'failing firm' under the Merger Guidelines." (*Id.* ¶ 7(b) ("Failing Firm Assignment"). The instant motion seeks to exclude portions of Ms. Hammer's testimony related to the Failing Firm Assignment.

With respect to the Failing Firm Assignment, Ms. Hammer concludes that "Einstein is not a failing firm, as defined under the Merger Guidelines, because Einstein's imminent failure is unlikely, as it does not meet the criteria required by the Merger Guidelines to establish imminent failure." *Id.* ¶ 152. Ms. Hammer renders three opinions to arrive at this conclusion concerning the failing firm defense: (1) "Einstein would likely be able to meet its financial obligations in the near future, absent the Proposed Transaction" *id.* ¶ 158, where she defines "near future" as one fiscal year, *id.* ¶ 154 ("Ms. Hammer's Prong 1"); (2) "Einstein has not ruled out the possibility that it could reorganize successfully under Chapter 11 of the Bankruptcy Act" *id.* ¶ 217 ("Ms. Hammer's Prong 2"); and (3) "Einstein has not made unsuccessful good-faith efforts to elicit reasonable alternative offers that would keep its tangible and intangible assets in the relevant market," *id.* ¶ 232 ("Ms. Hammer's Prong 3").

A. Ms. Hammer's Prong 1 Analysis

Ms. Hammer devotes approximately 24 of the 32 pages of her report related to the Failing Firm Assignment to analyzing a selection of Einstein's financial metrics (long-term debt service coverage ratio, short term liquidity measures, and current credit ratings) in order to support her conclusion that Einstein can meet its financial obligations in the near future, which she limits to a one-year time period. *Id*. ¶¶ 151-214. Ms. Hammer made clear during her deposition that she did not analyze Einstein's financial viability beyond fiscal year 2021, stating:

> Q. Okay. You also haven't analyze Einstein's financial viability as a standalone entity beyond FY 2021; is that correct?
>
> A. That's correct as of today.

Ex. 1, Deposition of Christine Hammer (Aug. 26, 2020), at 97:6-97:9, 97:10-98:2.[2]

The Hammer Rebuttal Report spends just over 4 of 36 pages addressing issues related to Defendants' financial viability expert and does not purport to introduce any new conclusions. The Hammer Rebuttal Report attempts, in part, to address criticisms to her report that were lodged by the Expert Report of Todd Patnode, dated August 10, 2020, but any purported financial analysis in Ms. Hammer's rebuttal is limited to supporting her original opinion about Einstein's near term financial position. Notably, the Hammer Rebuttal Report does not address the impact of Einstein's historical, current and projected financials on its ability to operate and compete as a viable stand-alone enterprise providing the same level of services and quality beyond fiscal year 2021, which was the subject of Mr. Patnode's report. In other words, Ms. Hammer's opinions were *not* introduced for the purpose of addressing Defendants' "weakened competitor" defense – a defense

---

[2] "Ex." refers to the exhibits attached to the accompanying Declaration of Justin W. Bernick, dated September 2, 2020 filed contemporaneously herewith.

Defendants vigorously maintain – and were explicitly limited to addressing a potential "failing firm" defense. Ms. Hammer admits in her Rebuttal Report that it was not relevant to her opinion on the Failing Firm Assignment to examine what caused Einstein's current financial condition or to look beyond fiscal year 2021, stating "[a] one year time-frame is the appropriate timeframe to project Einstein's financial performance in the near future (or 'short term')". Rebuttal Report, ¶ 84. The Hammer Rebuttal Report simply reiterates the opinion on Einstein's near term financial position, stating: "My opinion that Einstein is not a failing firm under the Merger Guidelines, as outlined in the Hammer Report, remains unchanged." *Id.* ¶ 76.

B. Ms. Hammer's Prong 2 Analysis

Ms. Hammer's "opinion" that Einstein has not ruled out the possibility of reorganizing under Chapter 11 of the Bankruptcy Act is neither relevant nor in dispute. The second element of the Failing Firm Defense under the Merger Guidelines evaluates whether the firm "would not be able to reorganize successfully under Chapter 11 of the Bankruptcy Act." *See Horizontal Merger Guidelines* § 11. However, for this aspect of her opinion, Ms. Hammer conducts no analysis of whether Einstein would be able to reorganize successfully under Chapter 11 as Ms. Hammer admitted at her deposition:

Q: Have you conducted an analysis of whether Einstein could successfully reorganize under Chapter 11 of the Bankruptcy Act?

A. No.

Ex. 1, at 63:13-16, *see also id.*, at 65:11-66:2 ("But you haven't analyzed whether Einstein could successfully do such a reorganization in bankruptcy? A. No. . . . ").

Rather, Ms Hammer formulates her opinion exclusively by reviewing deposition and Investigational Hearing testimony from Einstein's President and Chief Executive Officer, Barry Freedman, and Einstein's Chief Financial Officer, Gerald Blaney. Hammer Report ¶¶ 215-16.

Further, Ms. Hammer's deposition revealed her lack of experience related to bankruptcy issues in general and health system bankruptcies in particular. Ms. Hammer has never represented parties in bankruptcy court. Ex. 1, at 56:21-57:2. She has never taken a company through the bankruptcy or restructuring process. *Id.,* at 58:15-17. She has never represented a bondholder group or its bond trustee during an in- or out-of-court restructuring. *Id.,* at 59:15-19. And, she has never taken a company through a restructuring process, either through the courts or outside of the courts. *Id.,* at 60:15-18. The extent of Ms. Hammer's experience on bankruptcy related matters all relate to work she did over ten years ago and none relate to evaluating, advising, or representing parties with an interest in a hospital or health system bankruptcy. *Id.,* at 60:1-6; 59:20-22; 58:1-14. The bottom line is that Ms. Hammer has never advised on, or evaluated whether, any hospital entity could reorganize successfully in bankruptcy, or developed plans of reorganization for a health care provider. *Id*, at 61:8-14. Instead of applying any expertise or methodology for evaluating the ability of Einstein to reorganize in bankruptcy, as described in the Merger Guidelines, she simply reviews the fact record and claims that her summary of that review somehow constitutes expert opinion.

## II. <u>Proposed Stipulation</u>

Following Ms. Hammer's deposition, Defendants attempted to meet & confer with Plaintiffs regarding the scope of Ms. Hammer's anticipated testimony at the hearing in order to avoid wasting the Court's resources on hearing testimony regarding undisputed issues. During a telephonic meet & confer on Saturday, August 29, 2020, Defendants proposed that the Parties stipulate to the facts underlying conclusions reached by Ms. Hammer on her Prongs 1 and 2 of the Failing Firm Assignment, and, consistent with such a stipulation, agree to corresponding limitations on the expert testimony at the hearing. Defendants agreed to memorialize a proposed

stipulation in writing and did so on the morning of August 31. The proposed stipulations included: (1) "[t]hat, as of the date of this Stipulation, Einstein anticipates sufficient financial resources to meet its expected operating expenses and debt service through Fiscal Year 2021"; and (2) "[t]hat Einstein has not, as of the date of this Stipulation, initiated, or considered initiating, reorganization under Chapter 11 of the Bankruptcy Act."[3] Ex. 2, at 1. Defendants further requested that the parties stipulate to not introducing at the PI Hearing expert testimony previously disclosed in support of opinions on these two stipulated facts. *Id.* Specifically, Defendants proposed that Plaintiffs agree not to introduce testimony disclosed in Paragraphs 145 through 217 of the Hammer Expert Report and Paragraphs 75 through 86 in the August 20, 2020 Hammer Rebuttal Report, as all such testimony related to Ms. Hammer's conclusions which were not in dispute.[4] Plaintiffs agreed to accept Defendants' stipulation to the facts outlined in the proposed stipulation but would not agree to limit expert testimony on these points – an outcome that would fail to prevent the inefficiency of presenting the Court with testimony on issues that are neither disputed nor relevant.

## ARGUMENT

### I. Ms. Hammer's Expert Opinion and Accompanying Analysis on Ms. Hammer's Prongs 1 and 2 of the Failing Firm Assignment Are Not Relevant.

Rule 702 of the Federal Rules of Evidence provides that an expert witness may testify if (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the

[3] Note that the stipulation was expressly limited to this preliminary injunction proceeding for efficiency purposes, and was not binding on Defendants in any other proceeding, including any subsequent administrative proceeding before the Federal Trade Commission.

[4] Defendants also agreed not to introduce expert testimony disclosed in Paragraphs 153 through 161 from the report of their expert, Todd M. Patnode, as those portions of Mr. Patnode report related specifically to an analysis of Ms. Hammer's Prong 1 and Prong 2.

expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). Third Circuit case law explains that this rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

"For expert testimony to meet the 'fit' requirement, it must 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Jacoby Donner, P.C. v. Aristone Realty Cap., LLC,* No. CV 17-2206, 2020 WL 5095499, at *8 (E.D. Pa. Aug. 28, 2020) (quoting Fed. R. Evid. 702). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993) (internal citations omitted)). Moreover, expert evidence, like any other proffered evidence, must be relevant under Federal Rules of Evidence 401 and 402. Rule 401 defines "relevant evidence" as that which has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. If the evidence is not relevant, it is not admissible. Fed. R. Evid. 402. Furthermore, under *Daubert*, the court must ensure that the proposed expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand).

Any testimony on Ms. Hammer's Prongs 1 and 2, as described above, must be excluded because such testimony is irrelevant, not helpful and not probative of any consequential fact needed to prove or disprove any aspect of this case. Testimony on either point would only serve to waste the Court's – as well as the parties' – valuable and limited time.

Ms. Hammer's Prong 1 opinion is limited to the undisputed fact regarding Einstein's ability to meet its financial obligations (under Ms. Hammer's definition) in the "short term." Indeed, Ms. Hammer very clearly admitted in her deposition and in her Rebuttal Report that she did not

evaluate Einstein's financial viability beyond the fiscal year 2021. *See supra* 3-4. Her conclusions on Prong 1, and the details of her analysis in reaching those conclusions, therefore, relate to uncontested facts that are not at issue in this case. Defendants do not seek to argue that Einstein will be unable to make its long-term debt payments or pay near-term debt obligations for the next year, or that its credit rating is speculative grade with both Moody's and Fitch. Defendants, as stated above, have offered to stipulate to this fact. The only "live" issue for the hearing relates to Einstein's financial viability in the longer term – *i.e.*, beyond the one fiscal year that Ms. Hammer considered – and whether Einstein's financial condition makes it a weakened competitor, also an issue not addressed by Ms. Hammer. Put simply, Ms. Hammer's testimony on Ms. Hammer's Prong 1 "does not relate to any issue in the case [and therefore] is not relevant and, ergo, [is] non-helpful." *Daubert,* 509 U.S. at 591; *see also*, *e.g.*, *King v. TJX Cos., Inc.*, No. CV 15-5642, 2017 WL 11552119, at *2 (E.D. Pa. Apr. 10, 2017) (excluding expert testimony where plaintiff withdrew a claim that related to the content of the defendant's expert report); *United States v. Kahn*, 711 F. Supp. 2d 9, 10 (D.D.C. 2010) (holding proposed expert testimony not relevant where the proffered opinion was not at issue in the case). Even if Einstein's ability to meet certain financial obligations for only the current fiscal year was relevant, there is no factual dispute on that point.

Any testimony on Ms. Hammer's Prong 2 is equally irrelevant. There is no dispute in this case that Einstein has not initiated, or considered initiating, reorganization under Chapter 11 of the Bankruptcy Act.[5] Numerous witnesses have testified to this fact, and Defendants have agreed to

---

[5] The only contested issue in this case regarding reorganization under Chapter 11 of the Bankruptcy Act relates to whether Einstein, in fact, would be able to successfully reorganize <u>in the future</u>. However, Ms. Hammer offers absolutely no opinion on this fact in her report or rebuttal report, and explicitly said so at her deposition. *See supra 5*. Mr. Hammer's review of

stipulate to this fact. Testimony from Ms. Hammer to this issue, which no party disputes, is unnecessary, not relevant, and will not assist the trier of fact. *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 401.

## II. Ms. Hammer's Conclusions and Related Analysis on Ms. Hammer's Prong 2 Should Also Be Excluded Because They Are Not Helpful.

Testimony regarding Ms. Hammer's Prong 2 that "Einstein has not ruled out successfully reorganizing under Chapter 11 of the Bankruptcy Act," also should be excluded for the independent reasons that Ms. Hammer is not qualified to testify on bankruptcy matters and because her opinion on this issue is not helpful to the trier of fact.

"Expert testimony is admissible only where the expert offers specialized knowledge beyond the ken of the average person. 'When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.'" *Lasorsa v. Showboat: The Mardi Gras Casino*, No. CV 07-4321 JBS/JS, 2009 WL 2929234, at *5 (D.N.J. Sept. 9, 2009) (internal citations omitted). Put bluntly, "[i]f the expert testimony falls outside a witnesses' expertise, the court should exclude it." *Ferris v. Pa. Fed'n Brotherhood of Maint. of Way Emps.*, 153 F. Supp. 2d 736, 743 (E.D. Pa. 2001). Moreover, the testimony must be helpful to the trier of fact. *See JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, No. Civ. A. 97-cv-0652, 1998 WL 175888, at *5 (E.D. Pa. Apr. 15, 1998) ("[H]elpfulness to the trier of fact is the 'ultimate touchstone' for admissibility of expert testimony.").

---

statements by party witnesses regarding what actions Einstein has taken (or not taken) <u>in the past</u> with respect to Chapter 11 reorganization is simply not at issue.

A. Ms. Hammer is not Qualified to Testify on Bankruptcy Related Issues

By her own estimation, Ms. Hammer is not qualified to testify regarding Einstein's plans, in the past or the future, to reorganize under Chapter 11 of the Bankruptcy Act. She has never represented or advised a party in bankruptcy court, *see* Ex. 1, at 56:21-57:2, she has never taken a company or bondholder group through a bankruptcy or restructuring process, *id.* at 59:15-19, and, most importantly, she has never evaluated whether a hospital entity can reorganize successfully in a bankruptcy, *id.* at 60:1-6, 59:20-22, 58:1-14. She is not qualified to offer an expert opinion on Einstein's bankruptcy related issues that goes beyond what a trier of fact can do themselves.[6] *See, e.g., Wichterman v. City of Philadelphia*, No. CV 16-5796, 2019 WL 2568340, at *10 (E.D. Pa. June 20, 2019) (excluding expert testimony as not assisting the trier of fact where expert was not qualified to testify regarding a violation of certain policies under the relevant standard of care due to the expert's "lack of experience working in correctional settings"); *In re Diet Drugs*, No. MDL 1203, 2001 WL 454586, at *20 (E.D. Pa. Feb. 1, 2001) ("[T]estimony about whether the labels met regulatory standards is beyond the expertise of both Drs. Barst and Rich. Neither witness has anything more than incidental experience with FDA regulations addressing the approval process for labeling, the requisite content of labels, or any other issues concerning the propriety of labeling as defined by FDA regulations.").

B. Ms. Hammer's Testimony on Prong 2 Is Not Helpful

Additionally, Ms. Hammer does not provide any "specialized knowledge" helpful to the Court. Fed. R. Evid. 702. It is well-settled that expert testimony purporting to summarize facts is

---

6 In the same vein, Ms. Hammer's opinion that "Einstein is not a failing firm under the Merger Guidelines" (Hammer Report ¶ 152) must be excluded as Rule 704 prohibits an expert witness "from rendering a legal opinion," *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006), particularly from an expert with no qualifications to make any such legal conclusion.

inadmissible because lay jurors are capable of performing this task. In other words, experts should not be permitted to "supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y 2004) (citation omitted). Plaintiffs may not use Ms. Hammer under a guise of an "expert" to introduce purely lay conclusions.

Nonetheless, as is evident from her report, in order to reach her conclusion on Ms. Hammer's Prong 2, Ms. Hammer merely reviewed and summarized testimony from two Einstein executives, adding no methodology or independent analysis while doing so. Not surprisingly, this is exactly the same process the trier of fact would undertake to make its own determination. Ms. Hammer's summary of the record, without any independent analysis, does not help – and is not needed – by the trier of fact. Indeed, her testimony seeks to usurp the role of the trier of fact in weighing the underlying fact record itself and therefore should be excluded on that basis.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court exclude all testimony related to paragraphs 145 through 217 in the Hammer Report and paragraphs 75 through 86 in the Hammer Rebuttal Report, as well as any associated exhibits, tables, or other supporting materials.

Dated: September 2, 2020

Respectfully submitted,

/s/ *Virginia A. Gibson*
Virginia A. Gibson (ID#32520)
Stephen A. Loney, Jr. (ID#202535)
Garima Malhotra (ID#327158)
Alexander Bowerman (ID#321990)
HOGAN LOVELLS US LLP
1735 Market Street, Floor 23
Philadelphia, PA 19103
Telephone: 267-675-4600
Facsimile: 267-675-4601
virginia.gibson@hoganlovells.com
stephen.loney@hoganlovells.com

Robert F. Leibenluft (admitted *pro hac vice*)
Leigh L. Oliver (admitted *pro hac vice*)
Justin W. Bernick (admitted *pro hac vice*)
Kimberly D. Rancour (admitted *pro hac vice*)
Kathleen K. Hughes (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
robert.leibenluft@hoganlovells.com
leigh.oliver@hoganlovells.com
justin.bernick@hoganlovells.com
kimberly.rancour@hoganlovells.com
kathleen.hughes@hoganlovells.com

*Counsel for Defendant Albert Einstein Healthcare Network*

Howard Bruce Klein
Law Offices of Howard Bruce Klein, PC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
klein@hbklein.com

*Counsel for Defendants Thomas Jefferson University and Albert Einstein Healthcare Network*

*/s/ Paul H. Saint-Antoine*
Paul H. Saint-Antoine (ID# 56224)
John S. Yi (ID# 318979)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: 215-988-2700
Facsimile: 215-988-2757
paul.saint-antoine@faegredrinker.com
john.yi@faegredrinker.com

Kenneth M. Vorrasi (admitted *pro hac vice*)
John L. Roach, IV (admitted *pro hac vice*)
Jonathan H. Todt (admitted *pro hac vice*)
Alison M. Agnew (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, NW, Suite 1100
Washington, DC 20005
Telephone: 202-842-8800
Facsimile: 202-842-8465
kenneth.vorrasi@faegredrinker.com
lee.roach@faegredrinker.com
jonathan.todt@faegredrinker.com
alison.agnew@faegredrinker.com

Daniel J. Delaney (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone: 312-569-1000
Facsimile: 312-569-3000
daniel.delaney@faegredrinker.com

*Counsel for Defendant Thomas Jefferson University*