**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** *et al.*<br>                              Plaintiffs,<br>                    v.<br>**THOMAS JEFFERSON UNIVERSITY,** *et al.*<br>                              Defendants. | Civil Action No. 2:20-cv-1113-GLP |

**MOTION OF NON-PARTY AETNA, INC FOR *IN CAMERA*
TREATMENT OF HEARING EXHIBITS**

Under Paragraph III.2 of the Final Pre-Trial Order (Dkt. 136), non-party Aetna, Inc. asks this Court to grant *in camera* treatment for certain highly confidential Aetna materials the parties plan to introduce at the evidentiary hearing.[1] Aetna's highly confidential information includes reimbursement rates, bidding and pricing information, negotiating strategies, strategic plans, contracting information, and other sensitive information that the company protects from disclosure to competitors and medical providers. This information is classified as "Highly Confidential" under the Stipulated Protective Order due to the "substantial risk of causing significant competitive injury to current or future commercial or financial interests." (Dkt. 55). These non-speculative risks persist. Public disclosure would harm Aetna's competitive standing as well as provider and health insurance competition in the Philadelphia region, leading to higher healthcare costs for employers, government agencies, and patients. Indeed, to comply with the Sherman Antitrust Act, competitors typically do not share this type of information with one another to avoid competitive harm. Courts have found that maintaining confidentiality of competitively sensitive information is critical to fostering competition. And the Third Circuit has held that harm to competition overrides the common law presumption of access to court records. This is only reasonable, as public

---

[1] Plaintiffs do not oppose this motion. Defendants take no position.

disclosure of competitively sensitive information would increase the likelihood of anti-competitive harm to the public and chill third parties' willingness to cooperate in future merger investigations.

Aetna asks this court for an order sealing (in whole or in part) the hearing exhibits listed in Attachment A and has provided in Attachment C redacted versions of its "partial disclosure" exhibits to be used publicly. Aetna also requests an order that all portions of the exhibits identified in Attachment A that have been redacted or withheld entirely from public disclosure shall continue to be subject to the confidentiality and non-disclosure provisions for Highly Confidential documents set forth in the Stipulated Protective Order.

## Background

Aetna has cooperatively produced documents and testimony to Plaintiffs and Defendants in this matter. In doing so, Aetna designated certain documents and testimony as "Highly Confidential" under the Stipulated Protective Order. On September 2, 2020, Plaintiffs notified Aetna that they plan to introduce into evidence Highly Confidential Aetna information, including 11 Aetna documents and two deposition transcripts. And on September 3, 2020, Defendants notified Aetna that they plan to introduce Highly Confidential Aetna information, including 8 Aetna documents and one deposition transcript. These materials include Aetna's reimbursement rates, negotiating strategies, strategic plans, contracting information, and other sensitive information. Aetna files this motion to protect the company's Highly Confidential information.

## Argument

Aetna, as a non-party, should not have its Highly Confidential business information publicly disclosed as doing so will harm Aetna's competitive standing as well as healthcare competition and consumers in the Philadelphia region. Requests to seal judicial records are governed by the common law right of access. *In re Avandia Mktg., Sales Prac. & Prod. Liab. Lit.*,

924 F.3d 662, 670 (3d Cir. 2019); *Ebert v. C.R. Bard, Inc.*, 2020 WL 429771, at *1 (E.D. Pa. Jan. 28, 2020) (granting motion to seal in part). The moving party bears the burden of "showing that 'the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994). Courts may seal judicial records when "the interest in secrecy outweighs the presumption" of public access. *Bank of Am. v. Hotel Rittenhouse*, 800 F.2d 339, 343 (3d Cir. 1986). This includes where the records "could become a vehicle for improper purposes," *Nixon v. Warner Comms.*, 435 U.S. 589, 598, (1978), and where the records "are sources of business information that might harm a litigant's competitive standing." *Rep. of Philippines v. Westinghouse Elec.*, 949 F.2d 653, 662 (3d Cir. 1991).

In this posture, where the movant is a non-party and has produced confidential business records as part of a government antitrust merger investigation and lawsuit, courts often recognize that the interest in secrecy outweighs the presumption of public access.[2] Confidentiality for competitively sensitive information is rightly protected as "[d]isclosure of such information may lead to a reduction in competition because it will allow competitors to learn what their competitors are bidding and could lead to collusion or coordination." *Benton Cty. Wind Farm LLC v. Duke Energy Indiana, Inc.*, 2015 WL 12559884, at *2 (S.D. Ind. Aug. 26, 2015) (quoting *San Diego Gas & Elec. Co.*, 95 FERC § 61115 at 61364 (2001)). And as the Supreme Court has also warned, "the exchange of price information among competitors carries with it the [] potential for the

---

[2] *E.g., U.S. v. Sabre Corp.*, 2020 WL 1855433, at *44 (D. Del. Apr. 7, 2020) (discussing frequency of non-party confidentiality issues "in trials of government challenges to a proposed merger based on antitrust concerns"; holding courtroom sealing was appropriate under *In re Avandia*), *vacated on other grounds*, 2020 WL 4915824 (3d Cir. July 20, 2020); *FTC v. Tronox Ltd.*, 18-cv-1622 Dkt. 80 at 8-9 (D.D.C. July 26, 2018) (sealing courtroom for testimony about "competitively sensitive information"); *FTC v. Wilhelmsen et al.*, 18-cv-414 Dkt. 62 at 85 (D.D.C. May 29, 2018) (same); *FTC v. Sysco*, 15-cv-256 Dkt. 183 at 465-66 (D.D.C. June 26, 2015) (same).

development of concerted price-fixing arrangements which lie at the core of the Sherman Act's prohibitions." *U.S. v. U.S. Gypsum Co.*, 438 U.S. 422, 457 (1978). What's more, the Federal Trade Commission (FTC) recognizes that maintaining confidentiality of third-party documents is critical to its investigative process because third parties would be less likely to cooperate if their information were likely to be made public.[3] Courts have likewise recognized the unique importance of confidential treatment for non-party documents in FTC merger challenges.[4]

The disclosure of Aetna's Highly Confidential information "will work a clearly defined and serious injury" to Aetna and the public at large, warranting *in camera* treatment. *Miller*, 16 F.3d at 551. As identified on Attachment A, Aetna's exhibits contain information in one or more of the below categories, the public disclosure of which would harm competition and consumers:[5]

---

[3] As one FTC publication explains:
> In the course of its work, the FTC obtains a great deal of sensitive or confidential information about businesses. Disclosure of this information often could cause competitive harm to those businesses. Moreover, businesses are more willing to provide information to the FTC if they know that the government will protect their sensitive information. Accordingly, the law recognizes the importance of protecting much of this information from disclosure.

FTC FREEDOM OF INFORMATION ACT HANDBOOK at 4, (Feb. 2017), https://bit.ly/35jAwXU.

[4] *Cf. FTC v. Advocate Health Care Network*, 162 F. Supp.3d 666, 671-672 (N.D. Ill. 2016) ("[W]e are not talking about an exchange of documents between two sides in a lawsuit. We are talking about a number of third parties, not targets of any FTC action, who had to give up exceedingly confidential information in response to a government subpoena.").

[5] As the FTC's Office of Policy Planning has explained:
> When [transparency] goes too far, it can actually harm competition and consumers . . . We are especially concerned when information disclosures allow competitors to figure out what their rivals are charging, which dampens each competitor's incentive to offer a low price, or increases the likelihood that they can coordinate on higher prices.
>
> Too much transparency can harm competition in . . . health care. Typically, health care providers . . . compete against each other to be included on a health plan's list of preferred providers. When networks are selective, providers are more likely to bid aggressively, offering lower prices to ensure their inclusion in the network. But when providers know who the other bidders are and what they have bid in the past, they may bid less aggressively, leading to higher overall prices.

T. Koslov & E. Jex, PRICE TRANSPARENCY OR TMI?, FTC (July 2, 2015), https://bit.ly/3bCPQQl.

1. **Reimbursement Rate, Bidding, and Pricing Information**: Public disclosure of this information would facilitate collusion between providers on reimbursement rates and dampen their incentives to offer low rates to Aetna. For example, if Provider A learns that the rates offered by Provider B to Aetna are higher, then Provider A's incentive to continue offering the lower rate would be lessened and its offered prices likely would rise. The resulting higher reimbursement rates paid to providers would lead to higher healthcare costs for employers, government agencies, and patients in the Philadelphia region. Higher provider prices would also impair Aetna's ability to offer competitive rates in the insurance marketplace. *See* Declaration of Christopher Morris (Morris Decl.) at 2-3 (Attachment B).

2. **Negotiating Strategies**: Aetna's proprietary negotiating strategies help the company obtain lower rates from providers to the benefit of Aetna's clients and members. If providers were to learn Aetna's strategies, they would be advantaged in future negotiations with Aetna, leading to higher healthcare costs for consumers. It would also decrease the competitiveness of Aetna's health insurance offerings in the Philadelphia region. *See* Morris Decl. at 3.

3. **Strategic Analysis and Plans**: Aetna regularly conducts strategic analyses and planning to assess its strengths, weaknesses, and opportunities. This information is used to develop ideas to improve Aetna's competitiveness in the marketplace through new or improved products and services. If providers or Aetna's insurance competitors were to learn Aetna's strategic plans, Aetna would lose any competitive advantage to be gained from implementing these plans in the future, resulting in a loss of competition to the detriment of employers, government agencies, patients, and Aetna. *See* Morris Decl. at 3-4.

4. **Contracting Information**: Nearly every Aetna contract with providers and clients contains confidentiality provisions given the sensitive nature of the information. As with the competitive issues created by disclosing reimbursement rates, public disclosure of contract information would facilitate collusion between providers on contracting terms and dampen the incentives of providers to agree to certain provisions favorable to Aetna. Less favorable terms would in turn would harm Aetna's clients and members. *See* Morris Decl. at 4.

## Conclusion

Because both Aetna's and the public's interests in confidentiality outweigh the presumption of public access, the Court should grant *in camera* treatment of the hearing exhibits listed at Attachment A and continue to treat the redacted or withheld information as Highly Confidential under the Stipulated Protective Order. Should the Court determine that additional argument or evidence would be helpful, particularly in light of this condensed briefing process, Aetna respectfully requests leave to be heard at the September 10, 2020 pre-trial conference.

Respectfully Submitted,

Dated: September 8, 2020                By: /s/ Justin M. Romeo

Justin M. Romeo (Pa. Bar No. 326684)
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 994-2222

*Counsel for Non-Party AETNA, INC.*

Mike Cowie
Rani A. Habash
Konstantin Medvedovsky
DECHERT LLP
1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333

*Of counsel*

## CERTIFICATE OF SERVICE

I hereby certify that September 8, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: September 8, 2020

/s/ Justin M. Romeo
Justin M. Romeo (Pa. Bar No. 326684)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**FEDERAL TRADE COMMISSION,** *et al.*
　　　　　Plaintiffs,
　　v.
**THOMAS JEFFERSON UNIVERSITY,** *et al.*
　　　　　Defendants.

Civil Action No. 2:20-cv-1113-GLP

**[PROPOSED] ORDER**

AND NOW this ____ day of _____, 2020, upon consideration of the Motion of Non-Party Aetna, Inc. for *In Camera* Treatment of Hearing Exhibits, it is hereby

ORDERED that the Motion is GRANTED. It is FURTHER ORDERED as follows:

1.　The exhibits identified in Attachment A of the Motion shall be filed under seal or with redacted versions for the public record, as indicated therein.

2.　Portions of the exhibits identified in Attachment A that have been redacted or withheld entirely from disclosure shall remain subject to the restrictions on disclosure for Highly Confidential documents as set forth in the Stipulated Protective Order (Dkt. 55).

BY THE COURT:

_____
GERALD J. PAPPERT, J.