# Attachment B

# Declaration of Christopher Morris

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FEDERAL TRADE COMMISSION**

and

**COMMONWEALTH OF PENNSYLVANIA**

Plaintiffs,

v.

**THOMAS JEFFERSON UNIVERSITY,**

and

**ALBERT EINSTEIN HEALTHCARE NETWORK**

Defendants.

Civil Action No. 2:20-cv-1113-GLP

## DECLARATION OF CHRIS MORRIS ON BEHALF OF AETNA, INC.

I, Christopher Morris, declare under penalty of perjury as follows:

1. I submit this Declaration in support of Aetna, Inc.'s Motion for *In Camera* Treatment of Hearing Exhibits.

2. I am over 18 years of age and am competent to testify to the matters stated herein.

3. I am Aetna's Vice President of Provider Networks for the Eastern Pennsylvania and Delaware region. My team is responsible for managing provider network activities in this region, including contracting, relationship building, network servicing, and analyzing, creating, and developing new network products and services.

4. I am personally familiar with the facts set forth herein.

5. Aetna has produced documents and testimony to both Plaintiffs and Defendants in response to their litigation subpoenas and to Plaintiffs during the investigation phase of this matter.

Aetna produced these documents with the assurance that they would be treated as confidential or highly confidential under the Stipulated Protective Order and therefore restricted from public access. Plaintiffs and Defendants have not disputed any of Aetna's confidentiality designations to my knowledge.

6. Aetna's highly confidential information includes reimbursement rates, bidding and pricing information, negotiating strategies, strategic analyses and planning, contracting information, and other sensitive information that the company protects from disclosure to competitors and medical providers, among others. This information was designated as "Highly Confidential" at the time of production due to the "substantial risk of causing significant competitive injury to current or future commercial or financial interests" contemplated by the Stipulated Protective Order. Due to the sensitivity of this information, Aetna's health insurance competitors and providers also treat this information as confidential and do not publicly disclose it.

7. This substantial risk of competitive injury is continuing. Public disclosure would harm Aetna's competitive standing in the marketplace and would harm provider competition and health insurance competition, in turn leading to higher healthcare costs in the Philadelphia region for Aetna, employers, government programs, and patients.

8. The disclosure of Aetna's Highly Confidential information will work clearly defined and serious injury to Aetna and to the public at large due to decreased competition and higher healthcare costs for consumers. The Highly Confidential materials produced by Aetna to the parties in this matter contain information in the following competitively sensitive categories:

    a. **Category 1. Reimbursement Rate, Bidding, and Pricing Information**: Public disclosure of rates, bidding, and pricing information enables providers to figure out

what their rivals are charging and would dampen each provider's incentive to offer lower prices or more favorable contract terms to Aetna. Providers are more likely to offer lower prices or favorable terms to ensure their inclusion in Aetna's provider network when they do not know what their competitors are charging. But when providers do know what other providers have negotiated with Aetna in the past, they will likely make less aggressive offers in the future.  The resulting higher reimbursement rates charged by providers would lead to higher healthcare costs for employers, government agencies, and patients in the Philadelphia region. Higher provider prices would also impair Aetna's ability to offer competitive rates in the insurance marketplace and reveal Aetna's cost structure to its health insurance competitors, giving those competitors an advantage when competing against Aetna in future bids for prospective clients.

      **b.**     **Category 2. Negotiating Strategies**: Aetna's proprietary negotiating strategies help the company obtain lower rates from providers to the benefit of Aetna's clients and members. If providers were to learn these Aetna strategies, it would advantage those providers in future negotiations with Aetna, leading to higher healthcare costs for employers, government agencies, and patients. It would also decrease the competitiveness of Aetna's health insurance offerings in the Philadelphia region and provide Aetna's health insurance competitors with valuable competitive information for future bids against Aetna.

      **c.**     **Category 3. Strategic Analysis and Planning:** Aetna regularly conducts strategic analyses and planning to assess its strengths, weaknesses, and opportunities. This information is used to develop ideas to improve Aetna's competitiveness in the marketplace through new or improved products and services. If providers or Aetna's insurance competitors were to learn Aetna's strategic plans, Aetna would lose the

competitive advantage to be gained from implementing these plans in the future, resulting in a loss of competition to the detriment of employers, government agencies, patients, and Aetna's competitive standing.

      **d.**      **Category 4. Contracting Information**: Nearly every Aetna contract with providers and clients contains confidentiality provisions protecting against public disclosure given the sensitive nature of the information. As with the competitive issues created by disclosing reimbursement rates, public disclosure of contract information would facilitate collusion between providers on contracting terms and dampen the incentives of providers to agree to certain provisions favorable to Aetna. Less favorable terms would in turn would harm Aetna's clients and members while also damaging Aetna's competitive standing in the marketplace.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 8, 2020.

                                                              Christopher Morris