**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br><br>   and<br><br>**COMMONWEALTH OF PENNSYLVANIA**<br><br>       Plaintiffs,<br><br>  v.<br><br>**THOMAS JEFFERSON UNIVERSITY**<br><br>   and<br><br>**ALBERT EINSTEIN HEALTHCARE NETWORK**<br><br>       Defendants. | No. 2:20-cv-01113-GJP |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS THOMAS JEFFERSON UNIVERSITY
AND ALBERT EINSTEIN HEALTHCARE NETWORK'S
<u>MOTION TO EXCLUDE THE TESTIMONY OF CHRISTINE HAMMER</u>**

# TABLE OF CONTENTS

**BACKGROUND** ................................................................................................ **1**

I.   Ms. Hammer's qualifications and assignment. ........................................ 1

II.   Einstein's proposed stipulations. ............................................................. 3

**ARGUMENT** .................................................................................................... **4**

III. Ms. Hammer's expert opinions are relevant to Defendants' affirmative defense that Einstein
    is a failing firm and Defendants' argument that Einstein is a weakened competitor. .............. 5

IV. Ms. Hammer is qualified to opine on Einstein's failure to evaluate bankruptcy as an
    alternative to the challenged merger, and her opinion will likely be helpful to the Court. ...... 8

**CONCLUSION** ................................................................................................. **12**

# TABLE OF AUTHORITIES

**Cases**

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) ............................... 2

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325 (3d Cir. 2002) ............................ 9

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ........................................ 4

*FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327 (3d Cir. 2016) ........................ 2

*FTC v. Univ. Health, Inc.*, 938 F.2d 1206 (11th Cir. 1991) ........................................ 6

*Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777 (3d Cir. 1996) ........................... 5, 11

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598 (E.D. Pa. 2002). 10, 11

*In re Otto Bock HealthCare North America, Inc.*, 2019 WL 2118886 ...................... 2

*In re Otto Bock HealthCare North America, Inc.*, 2019 WL 5957363 ................................ 2, 6

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ........................................ 5

*ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559 (6th Cir. 2014) .......................... 6

*ProtoComm Corp. v. Novell Advanced Servs., Inc.*, 171 F. Supp. 2d 473 (E.D. Pa. 2001).. 9, 10

*Ruiz–Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77 (1st Cir. 1998) ...................... 5

*Smolow v. Hafer*, 513 F. Supp. 2d 418 (E.D. Pa. 2007) ...................................... 9, 11

*United States v. Gen. Dynamics Corp.*, 415 U.S. 486 (1974) ...................................... 6

*United States v. Mitchell*, 365 F.3d 215 (3d Cir. 2004) ........................................... 5

*Wichterman v. City of Philadelphia*, No. CV 16-5796, 2019 WL 2568340 (E.D. Pa. June 20, 2019) ....................................................................................... 5, 8, 10

**Other Authorities**

U.S. Dep't of Justice & FTC, *Horizontal Merger Guidelines* (Aug. 19, 2010) ........................ 2

**Rules**

Fed. R. Evid. 401 .................................................................................................... 5, 8

Fed. R. Evid. 403 ....................................................................................................... 8

Fed. R. Evid. 702 ....................................................................................................... 5

Ms. Christine Hammer is a qualified financial and managerial accountant who is prepared to provide her expert opinions and analyses on the subjects of Einstein's financial condition and Defendants' claimed efficiencies. Defendants preemptively move to exclude portions of her opinion that Einstein is unlikely to imminently exit the market, instead of confronting Ms. Hammer's work in its totality or in open court. Specifically, Defendants seek to exclude Ms. Hammer's opinions and supporting analyses showing that Einstein is likely to meet its financial obligations in the near future, absent a merger with Jefferson, and that Einstein has not ruled out the possibility that it could reorganize successfully under Chapter 11 of the Bankruptcy Act. Defendants' arguments merit—at most—exploration on cross-examination, not pre-trial rulings and motions practice. Ms. Hammer's expert qualifications and opinions easily satisfy the liberal admissibility requirements of Federal Rules of Evidence 401, 402, and 702. Defendants' motion should be denied.

## BACKGROUND

### I.    Ms. Hammer's qualifications and assignment.

Ms. Hammer is a financial and managerial accountant. Expert Report of Christine M. Hammer (July 23, 2020) ("Hammer Report") ¶ 3; Deposition of Christine M. Hammer (Aug. 26, 2020) ("Hammer Dep.") (attached as Ex. A) 19:4-15. She has been a licensed Certified Public Accountant ("CPA") since 1978. Hammer Report ¶ 1. She has over 40 years of experience providing financial and managerial accounting services inside and outside the courtroom. *Id.* at Appendix A. In the business world, Ms. Hammer has provided her financial and managerial accounting expertise to companies pursuing initial public offerings, evaluating merger opportunities, projecting merger synergies, and conducting due diligence. *Id.* at ¶ 3. As a retained expert in litigation, she has provided analyses regarding financial forecasts and profitability

projections, as well as alternative business strategies, merger efficiencies, and bankruptcy evaluations. *Id.* at ¶ 4. Her accounting and consulting expertise spans various industries, including the health insurance, medical diagnostics, and pharmaceutical industries. *Id.* at ¶ 5. She has provided expert testimony at three trials in the last four years. *Id.* at Appendix A.

In 2018, Ms. Hammer was tendered and accepted as an expert witness in the field of financial and managerial accounting in an FTC administrative adjudication of a merger between two medical device manufacturers. *In re Otto Bock HealthCare North America, Inc.*, Docket No. 9378 Public Tr. (Aug. 16, 2018) 2879:12-2880:2 (attached as Ex. B). Ms. Hammer provided expert testimony on the same issues she will testify to in this case, using the same methodology. *Id.* at 2867:2-11 (testifying that the scope of her expert opinions in that matter was to evaluate efficiencies and financial issues using the Horizontal Merger Guidelines[1] methodology). The factfinders there—the Administrative Law Judge and FTC Commissioners—each cited her expert testimony in their rulings permanently enjoining that merger. *In re Otto Bock HealthCare North America, Inc.*, 2019 WL 5957363, at *39; *In re Otto Bock HealthCare North America, Inc.*, 2019 WL 2118886, at *152.

---

[1] U.S. Dep't of Justice & FTC, *Horizontal Merger Guidelines* (Aug. 19, 2010) ("Merger Guidelines"), available at https://www.justice.gov/atr/horizontal-merger-guidelines-08192010. Defendants incorrectly characterize Ms. Hammer's use of the Merger Guidelines methodology as being a "legal opinion." Defs. Thomas Jefferson University and Albert Einstein Healthcare Network's Mem. in Supp. of Their Mot. to Exclude Test. of Christine Hammer, n.6 (ECF 127) ("Defs.' Mem."). The Merger Guidelines set out "principal analytical techniques, practices, and the enforcement policy of the Department of Justice and the Federal Trade Commission . . . to identify and challenge competitively harmful mergers." Merger Guidelines § 1. They are persuasive authority, not binding law. *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, n.2 (3d Cir. 2016). Following the Merger Guidelines, as Ms. Hammer and other experts in this case do (including Defendants' experts), does not constitute impermissibly "testify[ing] as to the governing law of the case." *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).

Ms. Hammer's assignment here was to: 1) Analyze and provide her expert opinions and conclusions relating to what, if any, cost savings claimed by Defendants are cognizable efficiencies under the Merger Guidelines; and 2) Analyze and provide her expert opinions and conclusions relating to whether Einstein qualifies as a "failing firm" under the Merger Guidelines. Hammer Report ¶ 7. Ms. Hammer reached two primary conclusions: 1) Only $16 million (28%) of Defendants' annual claimed cost savings are merger-specific and verifiable efficiencies under the Merger Guidelines; and 2) Einstein is not a failing firm, as defined by the Merger Guidelines, because Einstein's imminent failure is unlikely. Expert Rebuttal Report of Christine M. Hammer (Aug. 20, 2020) ("Hammer Rebuttal Report") ¶¶ 12, 75-76.

Ms. Hammer's analysis employs the methodology for assessing efficiencies and failing firms set out in the Horizontal Merger Guidelines. Hammer Report §§ IV.A., VI.A. She followed that methodology and applied it to the available evidence, including by performing numerous independent financial calculations, in an attempt to verify the accuracy of Defendants' claims about efficiencies and Einstein's financial condition. For example, she performed multiple financial calculations to assess whether Einstein is likely to exit the market imminently. Hammer Report at § VI; Hammer Rebuttal Report § III. She assessed Einstein's past, current, and future financial condition, as well as Einstein's efforts to pursue bankruptcy or alternative merger partners as options to preserve Einstein's assets. *See* Hammer Report at § VI; Hammer Rebuttal Report § III.

## II.    Einstein's proposed stipulations.

Einstein proposed four stipulations to Plaintiffs on August 31, 2020. Email from J. Bernick to J. Weingarten (Aug. 31, 2020) (attached as Ex. C). The first two stipulations addressed narrow and apparently undisputed facts: 1) "as of the date of this Stipulation, Einstein

anticipates sufficient financial resources to meet its expected operating expenses and debt service through Fiscal Year 2021"; and 2) "Einstein has not, as of the date of this Stipulation, initiated, or considered initiating, reorganization under Chapter 11 of the Bankruptcy Act." *Id.* Plaintiffs agreed to stipulate to these two undisputed facts. Email from R. Andrews to J. Bernick (Sep. 1, 2020) (attached as Ex. D). Defendants, however, conditioned their stipulation to these two apparently undisputed facts on Plaintiffs' agreement to two other stipulations, which would have prohibited Plaintiffs from tendering to the Court *any* of Ms. Hammer's expert opinions or analyses concerning Einstein's financial condition or Einstein's failure to evaluate bankruptcy. *See* Ex. C; Ex. D. Plaintiffs explained to Defendants that the two narrow proposed stipulations of fact do not eclipse Ms. Hammer's entire analysis or opinions relating to Einstein's financial condition and failure to evaluate bankruptcy. Ex. D. Accordingly, Plaintiffs offered to move forward with the two proposed factual stipulations, but could not agree to forgo their right to enter Ms. Hammer's testimony as needed at the preliminary injunction hearing. *Id.*

Defendants rejected Plaintiffs' proposal. Instead, Defendants filed the instant motion, which Plaintiffs now oppose.

## ARGUMENT

Ms. Hammer's expert testimony is relevant and admissible under Rules 401, 402, and 702. The "basic standard of relevance . . . is a liberal one." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993). "Relevant evidence is defined as that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (quotation marks omitted). To be relevant, "*[t]he fact to which the evidence is directed need not be in dispute*. . . . A rule limiting admissibility to evidence directed to a controversial point would invite the exclusion of this

4

helpful evidence, or at least the raising of endless questions over its admission." Fed. R. Evid.

401, Advisory Committee Notes (emphasis added).

      A "liberal policy of admissibility" also applies to expert testimony under Rule 702.

*Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996). "That rule requires the Court

to act as a gatekeeper and is applicable to scientific testimony and testimony based on 'technical'

and 'other specialized' knowledge. A court must determine whether an expert 'employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field.'" *Wichterman v. City of Philadelphia*, No. CV 16-5796, 2019 WL 2568340, at *3

(E.D. Pa. June 20, 2019) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 152

(1999)). As long as an expert's testimony rests upon "good grounds, based on what is known, it

should be tested by the adversary process—competing expert testimony and active cross-

examination—rather than excluded." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004)

(quoting *Ruiz–Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)). Accordingly,

the "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702,

Advisory Committee Notes.

**III.    Ms. Hammer's expert opinions are relevant to Defendants' affirmative defense that Einstein is a failing firm and Defendants' argument that Einstein is a weakened competitor.**

      Ms. Hammer's expert opinions and analysis of Einstein financial condition and failure to

evaluate bankruptcy are relevant to two different sets of arguments that Defendants have raised

about Einstein's financial condition. Her opinions and analyses eliminate Einstein's "potential

'failing firm' defense," Defs.' Mem. at 4, and they rebut Defendants' various characterizations of

Einstein's financial condition offered in support of the "weakened competitor" argument they

also intend to raise at the hearing, *see, e.g.*, Defs.' Prehearing Mem. 21 (ECF 133) ("Einstein's

5

fiscal problems are significant and getting worse."). Regardless of Defendants' ambiguity about "potential" defenses and arguments about Einstein's financial condition, Ms. Hammer's opinions remain relevant.

First, Ms. Hammer's opinions are relevant to Defendants' affirmative defense that Einstein is a failing firm. *See* Einstein Ans. 15 (ECF 51); Jefferson Ans. 20 (ECF 52). Defendants have never withdrawn this affirmative defense, though they make no mention of it in their prehearing memorandum. Ms. Hammer's conclusion that Einstein is unlikely to imminently exit the market, as well as her supporting analyses and opinions that Einstein would be able to meet its financial obligations in the near future absent the merger and that Einstein has not ruled out a bankruptcy, disprove that affirmative defense. *See, e.g.*, *Otto Bock,* 2019 WL 5957363, at *38-39 (citing Ms. Hammer's expert testimony in its finding that the merged firms had not met their burden of proof on either of the first two elements of the failing firm defense).

Separately, Ms. Hammer's opinions and analyses about Einstein's financial condition also are relevant to Defendants' argument that Einstein is, if not failing, at least a "weakened competitor." *See, e.g.*, Defs.' Prehearing Mem. 21. The weakened competitor "argument is the Hail-Mary pass of presumptively doomed mergers," *ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 572 (6th Cir. 2014), and "probably the weakest ground of all for justifying a merger," *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1221 (11th Cir. 1991) (citation omitted). Defendants resort to a weakened competitor argument because the Supreme Court has placed "strict limits" on the affirmative defense that one defendant is a failing company. *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 506 (1974). Faced with the stringencies of the failing firm defense, Defendants repurpose their arguments about Einstein's financial condition to attempt to paint Einstein as a weakened competitor. Ms. Hammer's opinions and analyses disprove

6

Defendants' recycled claims here too. For example:

- Defendants state that Einstein has experienced "large annual losses . . . threatening its very survival." Defs.' Prehearing Mem. 1. Ms. Hammer's analysis shows that Einstein's recent losses have been and are projected to be minimal, representing less than 0.5% of Einstein's revenue in FY 2019 and in FY 2020. Hammer Report ¶ 184.

- Defendants declare, "Einstein also cannot continue treading water on its own," Defs.' Prehearing Mem. 5, and "Einstein's competitive significance will erode as it is forced to cut services or close facilities," *id.* at 22. Ms. Hammer analyzed four separate projections (three created by Einstein's management and one by its credit rating agency) of Einstein's long-term performance from 2016 through 2024. Hammer Report at ¶¶ 177-181. She found that not a single projection shows that Einstein will cease operations or reduce services in that time. *See id.*

- Defendants assert that "Einstein's fiscal problems are significant and getting worse." Defs.' Prehearing Mem. 21. Ms. Hammer's analysis of Einstein's current financial condition shows this is not the case. *See, e.g.*, Hammer Report Exhibit 9 (showing Einstein's days cash on hand level was stable from FY 2018 to FY 2019, and then projected to increase in FY 2020). Her analysis found that Einstein has received $292 million in CARES Act relief, including $183 million in grant money, which she calculates will improve Einstein's financial position significantly in FY 2021. *See* Hammer Rebuttal Report ¶¶ 81-83, Updated Exhibit 1 (calculating a projected FY 2021 operating *profit* of $80.0 million for Einstein).

- Defendants' apparently intend to offer their own expert's view that "there are no expected near- or long-term opportunities for Einstein to stabilize its finances as a

standalone system." Defs.' Prehearing Mem. 22. Ms. Hammer's analysis finds

otherwise. *See* Hammer Report § VI.B.3.d. ("Potential Opportunities for Financial

Improvement Absent the Proposed Transaction").

The scope of Ms. Hammer's opinions tendered at the hearing depends in large part on

what issues and evidence Defendants raise about Einstein's financial condition. As long as

Defendants intend to present evidence about Einstein's financial condition, Ms. Hammer's

opinion that Einstein is not likely to exit the market imminently is relevant.

Defendants' two proposed factual stipulations (which are still acceptable to Plaintiffs) do

not undermine the relevance of Ms. Hammer's opinions. "The fact to which the evidence is

directed need not be in dispute" to remain relevant. Fed. R. Evid. 401, Advisory Committee

Notes. Rather, "[w]hile situations will arise which call for the exclusion of evidence offered to

prove a point conceded by the opponent, the ruling should be made on the basis of such

considerations as waste of time and undue prejudice (see Rule 403), rather than under any

general requirement that evidence is admissible only if directed to matters in dispute." *Id.* As

described above, Ms. Hammer's opinions on Einstein's financial condition and Einstein's efforts

to evaluate bankruptcy are far broader than the limited factual stipulations proposed and are

"relevant to the determination of at least one material fact." *See Wichterman*, 2019 WL 2568340,

at *9.

## IV.   Ms. Hammer is qualified to opine on Einstein's failure to evaluate bankruptcy as an alternative to the challenged merger, and her opinion will likely be helpful to the Court.

Defendants' argument that Ms. Hammer "is not qualified to testify on bankruptcy matters

and . . . her opinion on this issue is not helpful to the trier of fact," Defs.' Mem. at 9, rests on an

incomplete presentation of the record. The full record on Ms. Hammer's qualifications demonstrates that Defendants' argument is without merit.

When it comes to bankruptcy evaluations, Ms. Hammer "possess[es] skill or knowledge greater than the average layman." *See Smolow v. Hafer*, 513 F. Supp. 2d 418, 426 (E.D. Pa. 2007) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)); *accord ProtoComm Corp. v. Novell Advanced Servs., Inc.*, 171 F. Supp. 2d 473, 477 (E.D. Pa. 2001)). She has the "specialized knowledge regarding the area of testimony" in question, as required under Rule 702. *See Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 335 (3d Cir. 2002) (quotation marks omitted).

First, Ms. Hammer's report and deposition testimony establish that she has extensive experience performing bankruptcy evaluations. In multiple instances, Ms. Hammer has evaluated the likelihood that companies will emerge from bankruptcy. Ex. A 56:7-20, 58:1-5. Her bankruptcy work has focused on assessing the reliability of management's profitability and cash flow projections by examining historical results, as well as management's operating and strategic plans. Hammer Report ¶ 4. She has advised clients as to whether it is likely that the client will need to enter into bankruptcy protection. Ex. A 56:7-20; 58:1-5. She has testified in bankruptcy court. *Id.* at 57:3-10. She has assisted the government in calculating funds to be distributed from a bankruptcy, *id.* at 59:7-14, and advised multiple interested parties who were stakeholders in bankruptcy proceedings, *id.* at 59:20-22. She testified about how an accountant, like herself, would be one of the advisors that a company would use to determine if it was likely to be successful in emerging from bankruptcy. *Id.* at 66:11-67:1.

Second, Defendants' objection to Ms. Hammer's "exclusive[]" reliance on the testimony of Einstein executives is similarly unfounded. Defs.' Mem at 4. There is nothing unreliable about

an expert using deposition testimony as evidence in support of her expert opinion. *See, e.g.*, *ProtoComm*, 171 F. Supp. 2d at 482–83 (finding the expert opinions of an accountant who relied on a deposition transcript and exhibits as well as the expert's personal experience and knowledge to be reliable under Rule 702); *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598, 620–21 (E.D. Pa. 2002) (accepting an expert opinion that relied on deposition testimony about due diligence in place of the due diligence documents themselves). When an expert relies on her "expertise, applied to the facts of this case, [it] renders [her] . . . opinion reliable under Rule 702." *See, e.g.*, *Wichterman*, 2019 WL 2568340, at *6.

Third, Defendants incorrectly argue that Ms. Hammer "is not qualified to offer an expert opinion on Einstein's bankruptcy related issues that goes beyond what a trier of fact can do themselves." Defs.' Mem. at 10. Her deposition testimony previews the specialized knowledge she will be able to provide the Court. For example, Ms. Hammer testified about "the key considerations that Einstein would need to look at in order to determine whether it could successfully reorganize under Chapter 11 of the Bankruptcy Act." Ex. A 64:12-65:1. These considerations include "a bankruptcy emergence plan," "projections," and "a business plan that would indicate that they could be successful after bankruptcy." *Id.* Ms. Hammer's "job as an accountant, as a managerial and financial accountant, is to evaluate their plan, . . . the data they've used, the assumptions they've made, the adequacy of the modeling they've done." *Id.* at 67:9-20. She testified that "an accountant would examine everything [and] consider everything that is in [Einstein's] reorganization plan that is an accounting or financial aspect of that plan," including pensions, the impact of a bankruptcy and reorganization on bondholders, and what the emerged debtor might look like. *Id.* at 67:9-69:2. Ms. Hammer's analysis of the record showed that "Einstein has provided no data that would allow one to evaluate, as an accountant, whether

10

or not they could successfully emerge [from bankruptcy]." *Id.* at 66:3-10. She concluded, accordingly, "that Einstein has not ruled out the possibility that it could reorganize successfully under Chapter 11 of the Bankruptcy Act." Hammer Report ¶ 217.

Fourth, Defendants object to Ms. Hammer's lack of the particular bankruptcy specialization that Defendants apparently deem most appropriate, specifically, "whether a *hospital entity* can reorganize successfully in a bankruptcy." Defs.' Mem. at 10 (emphasis added). Rule 702 requires no such hyper-specialization for expert testimony to be admissible. To the contrary, "it is an abuse of discretion to exclude testimony . . . because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook*, 80 F.3d at 782. At least one court in this district has held that a CPA with general business accounting experience, like Ms. Hammer, is qualified under Rule 702 to testify to accounting issues without needing any industry-specific accounting specialization. *See Smolow*, 513 F. Supp. 2d at 425–26; *see also ID Sec. Sys. Canada*, 198 F. Supp. 2d at 621–22 (ruling that a financing expert who was not an investment banker could opine on investment banking due diligence practices and whether a third party performed a full due diligence analysis, because the expert still had knowledge of such practices). Defendants' views on the most appropriate expert sub-specialization "relate more to the weight to be given the expert's testimony than to its admissibility." *Holbrook*, 80 F.3d at 782.

Fifth, despite their proposal to stipulate to the fact that Einstein has not considered successful bankruptcy reorganization as an option, Defendants have left themselves the option of arguing that, absent the challenged merger, Einstein will either fail completely or cease being an effective competitor due to its finances. *See supra* § III. If Defendants make good on their apparent intention to introduce evidence about Einstein's financial condition, Ms. Hammer's

testimony will help the Court evaluate those assertions in light of Einstein's failure to properly evaluate bankruptcy as a potential solution to its alleged financial issues. *See* Hammer Report § VI.C.

## CONCLUSION

Ms. Hammer is an expert in financial and managerial accounting, and she is prepared to offer reliable expert opinions about Einstein's financial condition and lackluster evaluation of bankruptcy as an option in lieu of its merger with Jefferson. Defendants' motion to exclude Ms. Hammer's expert opinions should be denied.


Dated: September 8, 2020                              Respectfully submitted,


/s/ Ryan T. Andrews                                    /s/ Abigail Wood
MARK SEIDMAN                          ABIGAIL WOOD, PA 325273
CHARLES DICKINSON                     JAMES A. DONAHUE, PA 42624
JAMES H. WEINGARTEN                   TRACY WERTZ, PA 69164
RYAN T. ANDREWS                       JENNIFER THOMSON, PA 89360
GUSTAV CHIARELLO                      STEPHEN KOVATIS, PA 209495
GUIA DIXON                            STEPHEN SCANNELL (*pro hac vice*), IL
JAMIE FRANCE                          633307
CHRISTOPHER HARRIS
ALBERT TENG                           Office of the Attorney General
JONATHAN WRIGHT                       Commonwealth of Pennsylvania
                                      Strawberry Square
Federal Trade Commission              Harrisburg, PA 17120
Bureau of Competition                 (717) 787-4530
600 Pennsylvania Avenue, NW           awood@attorneygeneral.gov
Washington, DC 20580                  jdonahue@attorneygeneral.gov
(202) 326-3570                        twertz@attorneygeneral.gov
mseidman@ftc.gov                      jthomson@attorneygeneral.gov
cdickinson@ftc.gov                    skovatis@attorneygeneral.gov
jweingarten@ftc.gov                   sscannell@attorneygeneral.gov

12

randrews@ftc.gov
gchiarello@ftc.gov
gdixon@ftc.gov
jfrance@ftc.gov
charris1@ftc.gov
ateng@ftc.gov
jwright1@ftc.gov

*Attorneys for Plaintiff Federal Trade
Commission*

*Attorneys for Plaintiff Commonwealth of
Pennsylvania*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 8th day of September, 2020, I served a copy or caused

a copy of the foregoing document to be served on counsel of record in this action via the Court's

ECF system.

<u>/s/ Ryan T. Andrews</u>
RYAN T. ANDREWS
*Attorney for Plaintiff Federal Trade Commission*